UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RANDOLPH CHASE,

                                        Petitioner,

v.                                                              9:21-cv-0473
                                                                (MAD/TWD)

JULIE WOLCOTT,

                                        Respondent.

_____

APPEARANCES:                                    OF COUNSEL:

RANDOLPH CHASE
*Petitioner, pro se*
11-A-4492
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

HON. LETITIA JAMES                              PAUL B. LYONS, ESQ.
New York State Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

*Pro se* petitioner Randolph Chase ("Petitioner") filed a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254, challenging a Tier III disciplinary hearing and resulting

imposition of sanctions which occurred while he was incarcerated at Cayuga Correctional

Facility ("Cayuga").  *See generally*, Dkt. No. 1.  For the reasons set forth below, the Court recommends the petition be denied and dismissed.

## II.    BACKGROUND

On or about October 3, 2019, Petitioner was transferred from Woodbourne Correctional Facility to Cayuga.  Dkt. No. 1 at 2.[1]  On October 16, 2019, a corrections officer conducted a search of Plaintiff's cell and confiscated a "piece of mental can lid with melted black plastic as a handle . . . ."  *Id*. at 22.  The officer issued a misbehavior report charging Petitioner with possessing a weapon, contraband, and an altered item.  *Id*. at 26.

A Tier III disciplinary hearing on the charges occurred from October 21-26, 2019, at Cayuga.  *See generally*, Dkt. No. 24-1 at 57-99.  As relevant here, Petitioner pleaded not guilty to the three charges, *id*. at 61, but the hearing officer found Petitioner guilty of possessing a weapon and imposed a sanction of 90 days in the SHU, 90 days' loss of various privileges, and loss of two months of good time credits, *id*. at 94-95.

Petitioner filed an Article 78 petition in Albany County Supreme Court, wherein he argued: (1) the hearing officer was not an impartial factfinder; (2) the misbehavior report contained inaccurate information; (3) he was improperly denied the right to be present for the search of his cell; and (4) the confidential information which prompted the search of his cell was manufactured.  *See id*. at 1-41.  The People subsequently filed an answer.  *See id*. at 42-159.  Petitioner purported to "reject" the People's answer as deficient in a reply letter.  *See id*. at 160.

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On January 19, 2021, Acting Supreme Court Justice George R. Bartlett, III dismissed the petition. *See id.* at 162-68. The court concluded Petitioner's claim concerning the hearing officer was without merit; Petitioner was not prejudiced by any errors in the misbehavior report, which provided him with sufficient information to prepare a defense; Petitioner had no right to be present for the search; and he was not prejudiced by not having access to any confidential informant. *Id.* at 165-67. The Decision/Order was entered in the Office of the County Clerk on February 11, 2021. *See id.* at 170, 172. An employee of the New York Attorney General's office served a copy of the Decision and Order on Petitioner by mail on February 25, 2021. *Id.* at 171.[2] Petitioner did not appeal Supreme Court's denial of his Article 78 petition.

Petitioner, then incarcerated at Orleans Correctional Facility, filed a petition for habeas corpus relief in the United States District Court for the Western District of New York by depositing it into a prison mailbox on March 11, 2021. *See* Dkt. No. 1 at 1, 45. On April 26, 2021, the case was transferred to the United States District Court for the Northern District of New York, Dkt. No. 5, and the undersigned subsequently ordered the Respondent to file and serve an answer, Dkt. No. 8.

On September 16, 2021, Respondent requested permission to limit its answer to the question of exhaustion asserting Petitioner failed to appeal Supreme Court's denial of his Article 78 petition to the Appellate Division, Third Department, as required to properly exhaust his claims. Dkt. No. 18 at 2-3. The Court granted Respondent's request on September 21, 2021. Dkt. No. 19 at 5.

---

[2] In a letter dated March 24, 2021, Supreme Court acknowledged a "Notice of Motion seeking Respondent to serve a verified answer with certified transcript . . . filed on November 25, 2020 . . . ." Dkt. No. 24-2 at 1. Because the petition had already been decided, Acting Justice Bartlett denied the motion as moot. *Id.*

Respondent filed an answer, supporting memoranda, and state court records. Dkt. Nos. 22, 23, 24. Petitioner then filed a traverse on February 22, 2022. Dkt. No. 36. Finally, the Court takes judicial notice of New York Department of Corrections and Community Supervision public administrative records revealing Petitioner was conditionally released to parole supervision on November 14, 2022. *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited Apr. 26, 2024).[3]

## III. PETITION

Petitioner's contentions in the instant petition are indistinguishable from his claims in the Article 78 proceeding before Albany County Supreme Court. *Compare* Dkt. No. 1 at 8-19, *with* Dkt. No. 24-1 at 10-21. Respondent avers Petitioner's claims are unexhausted, procedurally defaulted, and, in any event, are plainly meritless. *See* Dkt. No. 23 at 2; Dkt. No. 22 at 9-18. In his traverse, Petitioner asserts he was not served with the notice of entry of Albany County Supreme Court's decision denying his Article 78 petition, therefore, he was "deprived of the right to appeal the void judgment." Dkt. No. 36 at 4.

## IV. DISCUSSION [4]

As an initial matter, the Court notes Plaintiff has not filed a change of address following his release to parole supervision in November of 2022.[5] Therefore, as a result of Petitioner's

---

[3] *See also*, *e.g.*, *Gifford v. Thoms*, No. 9:19-CV-0194 (GLS/DJS), 2020 WL 5822102, at *6 (N.D.N.Y. Sept. 11, 2020) (taking notice of the petitioner's parole status using the DOCCS Inmate Lookup and noting, in light of the petitioner's release to parole, he was no longer in the respondent's custody, but treating the respondent as properly named), *report and recommendation adopted*, 2020 WL 5821609 (N.D.N.Y. Sept. 30, 2020).

[4] While Petitioner is no longer housed at a DOCCS facility, his parole supervision satisfies §2254(a)'s "in custody" requirement. *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) (citing *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963)).

[5] In his most recent filing, dated June 17, 2022, Petitioner listed "Orleans Corr. Facility . . . " as his address. *See* Dkt. No. 37 at 1.

failure to communicate with the Clerk's office, the Court does not have his current address on file.  Local Rule 10.1(c)(2) provides:

> All attorneys of record and *pro se* litigants must immediately notify the Court of any change of address and telephone number.  Parties must file the notice of change of address with the Clerk and serve the same on all other parties to the action.  The notice must identify each and every action to which the notice shall apply.

Further, Local Rule 41.2(b) states "[f]ailure to notify the Court of a change of address by counsel or pro se litigant within 14 days of a chance in accordance with L.R. 10.1(c)(2) may result in dismissal of any pending action."  Additionally, in this Court's May 24, 2021, Decision and Order, the undersigned ordered "Petitioner must also promptly notify the Clerk's Office and all parties or their counsel of any change in his address.  His failure to do so will result in the dismissal of this action."  Dkt. No. 8 at 5.

Courts in this district have dismissed actions, including habeas petitions, due to litigants' failure to abide by Local Rules or orders related to address changes.  *See Williams v. Lilley*, No. 9:20-CV-0999 (TJM/ML), 2023 WL 10365043, at *2 (N.D.N.Y. Aug. 8, 2023) (collecting cases), *report and recommendation adopted*, 2024 WL 637422 (N.D.N.Y. Feb. 15, 2024).  Accordingly, it would be an appropriate exercise of discretion to dismiss the instant petition.  *See*, *e.g.*, *Shortell v. Kickbush*, No. 9:20-CV-0062 (GLS/DJS), 2021 WL 3856738, at *2 (N.D.N.Y. Aug. 30, 2021).  However, giving due consideration to the *pro se* Petitioner's right to due process, and as all required pleadings have already been filed, the undersigned will consider the parties' arguments.

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the

rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii)-(iii). A petitioner must exhaust his claims both procedurally and substantively.

Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. In other words, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Substantive exhaustion requires a petitioner to "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

"Under New York law, the proper way to challenge the loss of good time credits is the commencement of an Article 78 proceeding and exhaustion of that proceeding in the state courts." *Kevilly v. Connell*, No. 9:09-CV-0270 (GLS), 2009 WL 2868219, at *4 (N.D.N.Y. Aug. 31, 2009) (citing *Van Gorder v. Boucaud*, No. 9:08-CV-0442 (NAM/DEP), 2008 WL 2858678, *1 (N.D.N.Y. Jul. 22, 2008)) (additional citations omitted); *see also Abreu v. Lempke*, No. 9:11-CV-0839 (LEK/CFH), 2013 WL 3475304, at *8 (N.D.N.Y. July 10, 2013) ("In New York, a challenge to a prison disciplinary disposition must be made through an Article 78 petition, ordinarily in state supreme court.") (citing N.Y. CPLR § 7802(b)) (additional citations omitted).[6]

---

[6] To the extent Petitioner challenges the hearing officer's imposition of other sanctions, namely the 90 days in the SHU and loss of recreation, packages, commissary, and phone privileges, *see* Dkt. No. 24-1 at 95, such claims are not cognizable on federal habeas review. *See Urena v. Annucci*, No. 7:17-CV-2835, 2019 WL 10947148, at *4 (S.D.N.Y. Sept. 25, 2019) (explaining "challenges to the validity of prison administrative determinations and penalties that affect the fact or duration of a prisoner's confinement may be properly brought pursuant to 28 U.S.C. § 2254 . . . . By contrast, where a petitioner is challenging actions that affect solely the *conditions* of his confinement, not the *fact* or *duration*, such claims are properly brought pursuant to 42

To properly exhaust his claims, a petitioner must appeal the adverse determination on his Article 78 proceeding to the Appellate Division and then the Court of Appeals. *See Abreu*, 2013 WL 3475304, at *8 (finding several of the petitioner's claims were "unexhausted as those claims were never raised before the Court of Appeals.").

"[P]etitioners must appeal an adverse Article 78 determination within thirty days after being served with a copy of the judgment." *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 429 (S.D.N.Y. 2005) (citing C.P.L.R. § 5513(a)-(b)); *see also*, *e.g.*, *Smith v. Smith*, No. 9:17-CV-0258 (DNH), 2018 WL 557877, at *7 (N.D.N.Y. Jan. 22, 2018). Here, Petitioner did not timely appeal the Decision/Order dismissing his Article 78 proceeding.

An affidavit of service indicates Petitioner was served Supreme Court's Decision/Order along with the Notice of Entry on February 25, 2021. *See* Dkt. No. 24-1 at 171. Petitioner appears to claim he was not able to appeal Supreme Court's adverse judgment because he was not served, *see* Dkt. No. 36 at 4, yet a true copy of the Decision/Order entered February 11, 2021, is included in the instant petition,[7] which Petitioner filed by prison mailbox on March 11, 2021, *see* Dkt. No. 1 at 45. Given that Petitioner was indisputably in possession of the judgment, his contention that he "was deprived of his right to appeal based upon no judgement being served

---

U.S.C. § 1983.") (citing *Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006); *Homen v. Hasty*, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002)) (additional citations omitted, emphasis in original), *report and recommendation adopted*, 2020 WL 6275020 (S.D.N.Y. Oct. 23, 2020); *see also Edwards v. Goord*, 362 F. App'x 195, 197 (2d Cir. 2010) (explaining "the Supreme Court has held that a prisoner has a protected liberty interest in an award of good time credits when the applicable state statutory scheme provides that credits, once awarded, may only be revoked under specific circumstances," therefore, "the arbitrary revocation of previously awarded good time credits runs afoul of the Fourteenth Amendment's guarantee of due process.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).
[7] *See* Dkt. No. 1 at 38-44.

or entered" thus rendering the state court proceedings "ineffective," *see* Dkt. No. 1 at 1, is meritless.

Where a petitioner has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the federal habeas court should consider the claim[s] to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)). Here, the 30-day time period for Petitioner to appeal Albany County Supreme Court's dismissal of his Article 78 proceeding has lapsed, therefore, he could not present his claims to the Appellate Division. *See* C.P.L.R. § 5513(a)-(b); *Scales*, 396 F. Supp. 2d at 429. Nor could Petitioner file a new Article 78 proceeding challenging the disciplinary hearing outcome at issue in this matter as the four-month limitations period to do so has similarly expired. *See* N.Y. C.P.L.R. § 217 ("Unless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner . . . ."); *see also Perry v. Woods*, No. 1:07-CV-0341, 2007 WL 2973585, at *3 (E.D.N.Y. Oct. 9, 2007) ("The state courts strictly and regularly apply the four-month limitation provision of Article 78 to proceedings seeking restoration of good time.") (citations omitted).

Because a state court would find Plaintiff's claims procedurally barred, those claims are procedurally defaulted for federal habeas purposes. "That procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748-49). Here, Petitioner has not alleged, much less established, either some external factor caused the

procedural default of his claims and prejudice resulted, or that he is actually innocent. *See generally*, Dkt. No. 36. Accordingly, Petitioner's claims are procedurally defaulted and the petition should be dismissed. *See, e.g.*, *Benjamin v. Taylor*, No. 9:05-CV-0902 (LEK/DEP), 2007 WL 2789454, at *6 (N.D.N.Y. Sept. 24, 2007) (concluding the petitioner's claims were procedurally barred and dismissing the petition where the petitioner failed to appeal his Article 78 petition to the New York Court of Appeals).

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**RECOMMENDED** that no Certificate of Appealability ("COA") shall issue because reasonable jurists would not find it debatable that Petitioner has failed to offer a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

**ORDERED** that the Clerk shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**ORDERED** that the Clerk serve a copy of the Report-Recommendation on the parties. Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: May 8, 2024
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2023 WL 10365043
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick WILLIAMS, Petitioner,

v.

Lynn J. LILLEY, Respondent.

9:20-CV-00999 (TJM/ML)
|
Signed August 8, 2023

**Attorneys and Law Firms**

FREDERICK WILLIAMS, Petitioner, Pro Se.

PAUL B. LYONS, ESQ., Assistant Attorney General,
LETITIA A. JAMES, New York State Attorney General,
Counsel for Respondent, 28 Liberty Street, New York, New
York 10005.

**REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** On August 28, 2020, Frederick Williams ("Petitioner")
filed this petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254, challenging a judgment of conviction in
Columbia County Court for burglary in the second degree,
robbery in the third degree, and burglary in the third degree,
following a jury trial in December 2013. (Dkt. No. 1 Petition
("Pet.") at 1-2.) For the reasons set forth below, I recommend
that all of Petitioner's claims be rejected and the Petition be
denied and dismissed.

**I. PETITIONER'S FAILURE TO UPDATE ADDRESS**
Petitioner commenced this habeas proceeding while
incarcerated in Woodbourne Correctional Facility
("Woodbourne") by filing a petition on August 28, 2020.
(Dkt. No. 1 at 1.) On or about February 3, 2021, Respondent
filed its answer to the Petitioner and served a copy on
Petitioner by mail sent to Woodbourne. (Dkt. No. 14.) On
February 4, 2021, this court ordered that Petitioner's traverse,
if any, be filed on or before March 8, 2021. (Dkt. No. 16.)

On March 8, 2021, Petitioner filed an extension request.
(Dkt. No. 17.) Both the letter and the mailing envelope
for this request indicate Petitioner was still incarcerated at

Woodbourne. (*Id.*) This court granted Petitioner's request on
March 9, 2021, and extended the deadline to file a traverse,
if any, to April 8, 2021. (Dkt. No. 18.) The Clerk's office sent
Petitioner a copy of this order by regular mail to his address
on file at Woodbourne. (*Id.*)

Petitioner did not file a traverse by the April 8, 2021 deadline
and did not request any further extensions. He has had no
further communications with this Court. A recent review of
the New York State Department of Corrections ("DOCCS")
website (available at https://nysdoccslookup.doccs.ny.gov/)
showed that Petitioner was released to parole as of October
14, 2021 and is no longer housed at a DOCCS facility. [1]

[1]     Although Petitioner has been released from prison,
        his post-release supervision still satisfies the "in
        custody" requirement of 28 U.S.C. § 2254(a).
        *See Earley v. Murray*, 451 F.3d 71, 75 (2d Cir.
        2006) ("Post-release supervision, admitting of the
        possibility of revocation and additional jail time,
        is considered to be 'custody.' ") (citing *Jones
        v. Cunningham*, 371 U.S. 236, 240-43 (1963)
        (holding that parole satisfies the "in custody"
        requirement of habeas petitions)); *Peck v. United
        States*, 73 F.3d 1220, 1224 n.5 (2d Cir. 1995)
        (holding that supervised release satisfies the "in
        custody" requirement of habeas petitions).

My September 1, 2020 order accepting the petition for filing
instructed Petitioner that he must "promptly notify the Clerk's
Office and all parties or their counsel of any change in his
address." (Dkt. No. 4 at 4.) That order further cautioned
Petitioner that "failure to do so will result in the dismissal of
this action." (*Id.* at 4.)

As a result of Petitioner's failure to communicate with the
Clerk's office at any time since his October 2021 release from
Woodbourne, the Court has no current address for Petitioner.
For the orderly disposition of cases, it is essential that litigants
honor their continuing obligation to keep the Court informed
of address changes. *See Shortell v. Kickbush*, No. 9:20-CV-62
(GLS/DJS), 2021 WL 3856738, at \*1 (N.D.N.Y. August 30,
2021) (citing *Michaud v. Williams*, No. 98-CV-1141 (LEK/
GLS), 1999 WL 33504430, at \*1 (N.D.N.Y. Nov. 5, 1999)).
With that goal in mind, Local Rule 10.1(c)(2) provides:

        **\*2**     [P]ro se litigants must
        immediately notify the Court of any

change of address. Parties must file the
notice of change of address with the
Clerk and serve the same on all other
parties to the action. The notice must
identify each and every action to which
the notice shall apply.

Relatedly, Local Rule 41.2(b) provides that the "[f]ailure to
notify the Court of a change of address in accordance with
L.R. 10.1(c)(2) may result in the dismissal of any pending
action." This mirrors Rule 41(b) of the Federal Rules of Civil
Procedure, which affords the court discretionary authority to
dismiss an action because of the failure to prosecute or to
comply with any order of the court. *See Link v. Wabash R.R.
Co.*, 370 U.S. 626, 633 (1962); *see also Lyell Theater Corp.
v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).

As a matter of course, courts in this District have dismissed
actions, including habeas petitions, when litigants have failed
to abide by either the Local Rules or orders related to
address changes. *See Shortell*, 2021 WL 3856738, at *2;
*Montfort v. Walsh*, No. 9:19-CV-1607 (LEK/CFH), 2020 WL
4284135, at *2-3 (N.D.N.Y. July 27, 2020); *Hill v. Donelli*,
No. 9:05-CV-1245 (GLS/GHL), 2008 WL 4663364, at *1
(N.D.N.Y. October 20, 2008). Therefore, it would be an
appropriate exercise of discretion for the district court to
dismiss Petitioner's action for his ongoing failure to notify the
court of his current address, dating back to October 2021.

However, giving due consideration to the *pro se* Petitioner's
right to due process, and as all required pleadings have
already been filed, I will evaluate the substance of Petitioner's
claims and Respondent's objections and issue a full report
and recommendation to the district court. Such action will
also allow Petitioner a short fourteen day window to comply
with his obligations to notify the Court of his address change
and to file any appropriate objections to this report. This
Court recognizes that such accommodation will likely have
no benefit to Petitioner, as his failure to provide a current
address prevents this Court from having a reliable method of
providing him a copy of this Report and Recommendation.
*See Ramadan v. Niagara Cty.*, No. 12-CV-6425, 2014 WL
2865093, at *4 (W.D.N.Y. June 24, 2014) ("The Second
Circuit has emphasized the importance of first giving the *pro
se* litigant a direct warning that his case will be dismissed for
failure to further prosecute .... However, any further attempt
to notify Plaintiff would be futile as the Court has no means
by which to contact Plaintiff.").

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

The New York State Appellate Division, Third Judicial
Department ("Appellate Division") provided a concise
summary of the undisputed facts that led to Petitioner's arrest
and conviction on burglary and robbery charges:

> In the early hours of August 2,
> 2012, [Petitioner], accompanied by
> four other individuals, drove a
> white suburban vehicle (hereinafter
> the SUV) to the home of Desiree
> Graziano. [Petitioner] parked the
> vehicle in the driveway of a nearby
> property and remained in the SUV
> as the other four individuals broke
> into Graziano's home while she and
> three others were present and stole
> money and drugs. When the police
> responded, the suspects fled the home
> and returned to the SUV. [Petitioner]
> then engaged the police in a short
> high-speed chase before he drove the
> SUV off the road where it came to
> rest in a pond. All five occupants
> exited the SUV and attempted to flee.
> [Petitioner] successfully escaped but
> was subsequently arrested.

**\*3** *People v. Williams*, 156 A.D.3d 1224, 1225 (3d Dep't
2017). (Dkt. No. 15-1 at 552-553.)

### B. New York State Proceedings

#### 1. Grand Jury Indictment

On August 30, 2012, a grand jury in Columbia County handed
up an indictment charging Petitioner and four others with one
count of burglary in the first degree (New York Penal Law
§ 140.3), and one count of robbery in the first degree (New
York Penal Law § 160.15). (Dkt. No. 15-1 at 15-16.)

Petitioner's counsel filed a motion to dismiss or reduce the
grand jury charges, but this motion was denied on April 11,

2013 by Columbia County Court Judge Richard M. Koweek, who would preside over the trial. (Dkt. No. 15-1 at 27-48, 107-119, 127-135.) Judge Koweek granted counsel's request to sever Petitioner's case from the other four defendants. (Dkt. No. 15-1 at 129-130.)

### 2. New York State Court Trial and Appeals

#### a. Three Day Trial

Petitioner's jury trial commenced in Columbia County Court on December 3, 2013 before Judge Koweek. (Dkt. No. 15-4.) Over the course of the three day trial, the prosecution presented testimony from a number of witnesses including the occupants of the Graziano residence, the Columbia County Sheriff's deputies who were first on the scene during the burglary and attempted escape, and the New York State Troopers who pursued the SUV and arrested Petitioner and the other occupants. (Dkt. Nos. 15-4 and 15-5.) The prosecution also relied upon the testimony of Joseph Speed, who was the subject of extensive cross-examination by Petitioner's counsel. (Dkt. No. 15-5 at 29-116.)

#### b. Trial Testimony of Joseph Speed

Mr. Speed testified that he had been one of the four passengers in the SUV driven by Petitioner along with individuals named Bobby Smith, Miguel Alcarez, and Jeremy Cobbins. (*Id.* at 30.) He further testified that he had been arrested and pled guilty to Robbery in the First Degree and Burglary in the First Degree in connection with the Graziano home invasion, and was awaiting sentencing at the time of Petitioner's trial. (*Id.* at 31-35, 100-102.)

In describing the events leading up to the burglary and robbery, Mr. Speed testified that the five occupants of the SUV collectively "decided to go and take drugs and money" from the Graziano residence and split any of the proceeds from the robbery. (*Id.* at 38, 43-45, 61-62.) He described Petitioner as "hesitant" and wanting to "sit outside in the car" while the other four entered the house. (*Id.* at 39.) Mr. Speed also testified that he was "pretty sure" Petitioner knew one of the occupants of the house. (*Id.* at 37.)

According to Mr. Speed, Petitioner parked the car at a "little side pull-off" down the road from the Graziano residence.

(*Id.* at 39.) He testified that the four passengers all pulled on gloves and tied bandannas around their faces while in the car with Petitioner. (*Id.* at 40-41.) The four individuals entered the house after smashing a window and chased the occupants into a bedroom. (*Id.* at 42, 65-69.) During the course of the burglary, Mr. Smith found and pocketed "about a gram" of cocaine and an envelope with cash, but he and Mr. Smith, Mr. Alcarez, and Mr. Cobbins fled the house after Columbia County Sheriff's deputies responded to a 911 call. (*Id.* at 42-43, 67, 69.)

**\*4**  Mr. Speed further testified that all four individuals ran to the SUV and repeatedly told Petitioner to "go" upon entering the vehicle. (Dkt. No. 15-5 at 46, 83-84.) He described the SUV as pulling away "sort of quickly" but did not recall any squealing or spinning tires. (*Id.* at 84.) Mr. Speed recalled hearing a gunshot as Petitioner started the SUV and drove on to the road, and believed a bullet struck the vehicle. [2] (*Id.* at 46, 86-87.) According to Mr. Speed's testimony, Petitioner sped up and was eventually pursued by a police car with its emergency lights and siren on. (*Id.* at 46, 94-95.) After a short vehicle pursuit, Petitioner veered off the road, and all five occupants "jumped out" of the SUV and separated in an attempt to escape. (*Id.* at 46-47.)

[2]     At trial, Columbia County Deputy Sheriff Kris Bauhoff testified that he had fired one shot at the SUV as it left the scene. (Dkt. No. 15-4 at 232.)

During the course of his testimony, Mr. Speed admitted that he had sent a letter to Petitioner's counsel in October 2012 regarding the Graziano burglary, stating that Petitioner "didn't have any knowledge of what was going on, and that all he knew was that we was going there to pick up money owed." (*Id.* at 49, 102-104.) He testified that he wrote this letter to "help out" a "friend" and that the statements in the letter were not true. (*Id.* at 49, 103.)

#### c. Petitioner's Trial Testimony

Petitioner testified in his own defense and contradicted key portions of Mr. Speed's testimony. (Dkt. No. 15-5 at 134-186.) Petitioner testified that he was driving Mr. Speed, Mr. Smith, Mr. Alcarez, and Mr. Cobbins in the SUV, and that the group intended to celebrate Petitioner's recent birthday. (*Id.* at 142-143.) According to Petitioner's testimony, Mr. Speed stated that he "wanted to go pick something up" from Desiree Graziano, a woman whom Petitioner had met once. [3] (*Id.* at

143, 171.) Petitioner testified that he was not a participant in this conversation but believed that Mr. Speed was referring to cocaine. (*Id.*) Petitioner further testified that the group had minimal conversation on the way to the Graziano residence, but never discussed any plans to commit burglary or robbery. (*Id.* at 144-148, 175.)

3    Petitioner also testified that he knew another woman who was present in the Graziano residence during the burglary, but that he had not known that she was staying there at the time. (Dkt. No. 15-5 at 171-172.)

Petitioner testified that he followed Mr. Speed's directions to a nearby dirt driveway and backed in so that he would be facing the street. (*Id.* at 149.) Petitioner stated that he never saw any of the passengers put on gloves or mask themselves with bandannas. (*Id.* at 148, 175-176.) According to his testimony, Petitioner reclined the driver's seat and fell asleep after the four passengers walked toward the Graziano residence. (*Id.* at 150, 177.) Plaintiff estimated that the four passengers returned to the car about a half hour later. (*Id.* at 177.) He testified that all four men "were panicking" as they entered the SUV and "kept saying: Go, go, go." (*Id.* at 150, 177.)

In his testimony, Petitioner described hearing a gunshot as he pulled out of the driveway, but the "[o]nly thought on [his] mind was just to get to safety." (*Id.* at 152, 155.) He testified that he was driving "about the speed limit" as the SUV left this area. (*Id.* at 153, 181.) Petitioner further testified that he eventually noticed an "emergency vehicle" following the SUV with lights and sirens, and followed Mr. Speed's instruction to pull over toward a field. (*Id.* at 156-157.) According to Petitioner, he was "really just panicking" during this time and "wasn't thinking straight." (*Id.* at 157.) He testified that "everybody jumped and ran" while the SUV rolled to a stop in the field. (*Id.* at 156-157, 182.) Several hours later, Petitioner was arrested while walking along a nearby road. (*Id.* at 157, 183.)

**\*5** During his testimony, Petitioner admitted that he had a prior felony conviction for burglary in the third degree, defined as entering a building with the intent to commit a crime. (Dkt. No. 15-5 at 165, 184.) Petitioner explained that he had been arrested after illegally entering a building in December 2008 while trying to fight someone inside. (*Id.* at 165-168.) Petitioner testified that he was not proud of his actions in December 2008 and had admitted guilt, but that he was innocent of the charges being presented to the jury

and had not been involved in the burglary and robbery at the Graziano residence. (*Id.* at 166-167.)

#### d. Guilty Verdict and Sentencing

On December 6, 2013, the jury found Petitioner guilty of the lesser included offenses of burglary in the second degree (New York Penal Law § 140.25(2)) and Robbery in the Third Degree (New York Penal Law § 160.05). (Dkt. No. 15-6 at 161-162.) On April 2, 2014, Judge Koweek sentenced Petitioner as a second felony offender to concurrent prison terms of twelve years for the burglary conviction with five years of post-release supervision, and 3½ to 7 years for the robbery conviction. (Dkt. No. 15-7 at 23-26.) The court also revoked defendant's probation stemming from his previous burglary conviction and resentenced him to a prison term of 2⅓ to 7 years on that conviction, to run concurrently with the sentences imposed upon the new convictions. (Dkt. No. 15-7 at 24.)

#### e. State Court Appeal

On December 28, 2017, the New York Supreme Court Appellate Division Third Department unanimously affirmed Petitioner's conviction. (Dkt. No. 15-1 at 633-42); *Williams,* 156 A.D.3d at 1231. More specifically, the Appellate Division held, *inter alia,* that Petitioner's challenge to the legal sufficiency of the evidence against him had not been preserved for appeal because Plaintiff's counsel did not renew his motion for dismissal at the close of trial, but nevertheless, the jury's verdict was supported by the weight of the evidence; that accomplice testimony offered at trial was sufficiently corroborated by other evidence, including Petitioner's own testimony; that Petitioner's challenge to the sufficiency of the grand jury testimony was precluded; that the trial court's errors with respect to its *Molineux* and *Sandoval* rulings were harmless given the overwhelming evidence of Petitioner's guilt; that the trial court did not err in its jury instructions regarding accomplice testimony; and that Petitioner's sentence was not harsh and excessive. (Dkt. No. 15-1 at 552-561.) The Appellate Division also rejected Petitioner's argument that counsel was ineffective in requesting that the trial court not instruct the jury regarding corroboration of accomplice testimony and failing to preserve Petitioner's legal sufficiency argument by moving for dismissal at the end of trial. (*Id.* at 559-60.) On April 4, 2018, the New York Court of Appeals denied leave to appeal.

(Dkt. No. 15-1 at 567-568); *People v. Williams*, 31 N.Y.3d 1018 (N.Y. 2018).

### f. State Court Motions to Vacate Conviction and Set Aside Sentence

On or about June 17, 2019, Petitioner filed *pro se* motions in the Columbia County Court[4] to vacate the judgment of conviction pursuant to New York CPL 440.10 and to set aside the sentence pursuant to CPL 440.20. (Dkt. No. 15-1 at 570-654.) In his 440.10 motion, Petitioner argued that trial counsel was ineffective because: (1) his pretrial motion to dismiss excluded sworn statements from Mr. Alcarez and Mr. Smith attesting that Petitioner had no involvement in the planning or execution of the crime; (2) he misinformed and misled petitioner about the need for an accomplice-corroboration jury charge; and (3) he failed to renew his motion for a trial order of dismissal at the close of the defense case. (Dkt. No. 15-1 at 573-575.) In the same motion, Petitioner argued that his conviction was based on legally insufficient evidence and that Petitioner was actually innocent of the crimes, as shown by new affidavits from Alcarez and Smith stating Petitioner was not involved in the planning and execution of the crimes. (*Id.* at 575-577.)

[4]    Petitioner's initial motion papers incorrectly reference Columbia County Supreme Court. (Dkt. No. 15-1 at 570.)

**\*6** Petitioner's CPLR 440.20 motion asserted that his sentence was illegal because the statute provided for a maximum sentence of twelve years imprisonment, but the trial court gave Petitioner an effective sentence of seventeen years due to the addition of five years post-release supervision. (*Id.* at 578-584, 592.) Petitioner also filed a reply in response to the government's opposition. (*Id.* at 676-682.)

Judge Koweek, the same judge who presided over Petitioner's trial, denied both motions on January 22, 2020. (*Id.* at 683-690.) Petitioner's application for leave to appeal to the Appellate Division was denied on May 18, 2020. (*Id.* at 784.) Petitioner's subsequent leave application seeking review by the New York State Court of Appeals was denied on July 29, 2020. *People v. Williams*, 35 N.Y.3d 1049 (2020); Dkt. No. 15-1 at 795.

### C. Federal Habeas Proceeding

On August 28, 2020, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus.[5] (Dkt. No. 1.) On September 1, 2020, I issued an Order granting Petitioner approval to proceed in forma pauperis, and issued a Decision and Order pursuant to Local Rules of Procedure for Section 2254 cases and Section 2255 proceedings Rule 1.1(e)[6] directing, *inter alia*, Respondent to answer the Petition. (*See generally* Dkt. Nos. 3, 4.) On November 25, 2020 and December 28, 2020, I granted Respondent's successive motions for an extension of time to answer. (Dkt. Nos. 5, 6, 7, 8.) On January 26, 2021, Respondent filed a motion seeking permission to file an oversized brief. (Dkt. No. 9.) I granted Respondent's motion on January 27, 2021. (Dkt. No. 10.)

[5]    In April 2019, Petitioner voluntarily withdrew an earlier habeas petition so that he could attempt to fully exhaust his available state court remedies. *Williams v. Lilley*, No. 9:19-CV-0384 (TJM/DJS), Dkt. Nos. 4, 5.

[6]    This was previously N.D.N.Y. L.R. 72.4(e).

On February 3, 2021, Respondent filed an answer to the Petition, a memorandum of law supporting the answer, and a compilation of the relevant state court records. (Dkt. Nos. 13, 14, 15.) On February 4, 2021, I issued an order advising Petitioner of the deadline to file a traverse or reply, if any, on or before March 8, 2021. (Dkt. No. 16.) On March 8, 2021, Petitioner filed a request for an extension of time to file his traverse. (Dkt. No. 17.) On March 9, 2021, I granted Petitioner's request and directed him to file his traverse, if any, no later than April 8, 2021. (Dkt. No. 18.)

Plaintiff did not file a traverse by the extended deadline. Therefore, the matter is considered fully briefed, and it has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

### D. Summary of Parties' Arguments

Petitioner argues that he is entitled to habeas corpus relief because (1) the evidence presented against Petitioner was legally insufficient; (2) Petitioner is actually innocent of the charges; (3) the trial court erred in allowing Petitioner's prior burglary conviction to be introduced as evidence; (4) Petitioner's trial counsel was ineffective; and (5) Petitioner's

sentence is invalid because it includes five years of post-release supervision. (Dkt. No. 1.)

Generally, Respondent makes the following arguments in support of the answer: (1) Petitioner's legal sufficiency claim is partially non-cognizable, unexhausted, procedurally barred, and meritless; (2) Petitioner's actual innocence claim is non-cognizable and meritless; (3) Petitioner's claims challenging the admission of his prior burglary conviction are unexhausted and meritless; (4) Petitioner's ineffective assistance of counsel claim is meritless; and (5) Petitioner's challenge to the inclusion of post-release supervision in his sentence is non-cognizable. (*See generally* Dkt. No. 13 at 24-52 [Resp't's Mem. of Law].)

 **\*7** Petitioner asserts that his conviction was not supported by legally sufficient evidence under both the federal and New York state constitutions. First, Respondent argues that, as a threshold matter, state constitutional claims are non-cognizable as a matter of law. (Dkt. No. 13 at 24.) Respondent further asserts that Petitioner's federal constitutional claim is unexhausted and procedurally defaulted, and thus barred from federal habeas review, because Petitioner failed to preserve the issue for appellate review at trial in accordance with state law, and further failed to raise the issue in his application for leave to appeal to the New York Court of Appeals. (*Id.* at 24-28.) Finally, Respondent argues that Petitioner's legal sufficiency claim is meritless, because the record demonstrates that the jury had more than sufficient evidence to find that Petitioner was guilty. (*Id.* at 28-33.)

Petitioner also asserts his actual innocence, framing his argument in terms of the state and federal constitution. (Dkt. No. 1 at 10-11.) Respondent again asserts that the state constitutional claim is non-cognizable in federal habeas proceeding, and further contends that the Supreme Court has not recognized federal claims asserting actual innocence in non-capital cases. (Dkt. No. 13 at 34-37.) Respondent further asserts that, if the court were to consider the actual innocence argument on its merits, it would fall far short of the high standard for such claims. (*Id.*) Specifically, Respondent contends that the jury reasonably found Petitioner guilty based on the evidence before it, and that Petitioner has not provided any credible or compelling new evidence to alter that conclusion. (*Id.* at 35-37.)

With regard to Petitioner's claims that that the trial court improperly allowed evidence of his prior burglary conviction, Respondent argues that such claims are unexhausted

and procedurally defaulted, because Petitioner had never previously raised any federal claims related to these issues. (Dkt. No. 13 at 47-48.) Respondent further argues that the claims are without merit because Petitioner has not shown any impact on the fundamental fairness of the state court proceeding. (*Id.* at 48-51.)

Respondent addresses Petitioner's ineffective assistance of counsel claim solely on the merits and asserts that Petitioner's claims of substantive legal error at the indictment, trial, and post-trial stage are inconsistent with the available record. (*Id.* at 37-46.)

Finally, Respondent contends that the court should reject Petitioner's challenge to his sentence, because the overall sentence and the post-release supervision are well within the range allowed under state law. (*Id.* at 51-52.)

### III. LEGAL STANDARDS

Many of Petitioner's claims and Respondent's arguments raise similar issues of state law, exhaustion, and procedural default. In the interest of efficiency, I will recite the generally applicable legal standards here, and apply those standards to the individual arguments as they arise.

#### A. Legal Standard Governing Review of a *Habeas Corpus* Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen, 563 U.S. at 181.* Federal habeas courts must presume

that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.' " *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

**\*8** As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

**B. Legal Standard Governing State Law Claims in Habeas Proceeding**

State courts are "the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *see also Ring v. Arizona*, 536 U.S. 584, 603, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Therefore, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Even where there has been no pertinent decision by the state's highest court, and "we are left only with the state intermediate court's interpretation of the terms in the state statute[,] ... we are bound by that interpretation." *Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir. 2002); *see, e.g., McGuire*, 502 U.S. at 66, 67–68, 112 S.Ct. 475 (rejecting federal court's holding that a state-intermediate-court error with respect to state law constituted a basis for federal habeas relief). "Simply

put, ' "federal habeas corpus relief does not lie for errors of state law." ' " *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quoting *McGuire*, 502 U.S. at 67, 112 S.Ct. at 475).

**C. Legal Standard Governing Exhaustion of Remedies**

Before seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement"). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "fairly present[ed]" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

**\*9** Significantly, "[t]he exhaustion doctrine 'requires only that a petitioner present his claim once on direct or collateral review.' " *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at \*5 (E.D.N.Y. Aug. 12, 1998) (quoting *Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y. 1992)); *see Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) ("In order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least once, on direct or collateral review."). "Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted."

*Salahuddin*, 1998 WL 812648, at *5 (citing, *inter alia*, *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989)); *see also Harvey v. Portuondo*, 98-CV-7371, 2002 WL 2003210, at *5 (E.D.N.Y. Aug. 5, 2002). Unexhausted claims are generally barred from habeas corpus review by the rules concerning procedural default. *See Aparicio*, 269 F.3d at 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

### D. Legal Standard Governing Procedural Default

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-539, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012); *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. Prejudice requires a petitioner to show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)).

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt.' " *House*, 547 U.S. at 536-37, 126 S.Ct. 2064 (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. 851); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

## IV. LEGAL FINDINGS AND ANALYSIS

For the reasons stated in Respondent's memorandum of law, I find that (1) Petitioner's legal sufficiency claim, to the extent it relies upon federal law, is unexhausted and procedurally barred, and if the Court were to consider the substance of Petitioner's arguments, meritless; (2) Petitioner's actual innocence claim is non-reviewable and, if the Court were to consider the substance of Petitioner's arguments, meritless; (3) Petitioner's challenge to the admissibility of his prior conviction for burglary is unexhausted and, if the Court were to consider the substance of Petitioner's arguments, meritless; (4) Petitioner's ineffective assistance of counsel claim is exhausted but meritless; and (5) Petitioner's excessive sentencing claim is non-reviewable. To the extent that Petitioner has attempted to raise or re-litigate state law claims in this proceeding, I find that no federal habeas relief is available. As a result, I recommend that all of his claims for habeas relief be denied and the Petition be dismissed. The analysis below is intended to supplement, but not supplant, the lengthy legal analysis provided by Respondent.

### A. Whether Petitioner's Legal Sufficiency Claim Should be Dismissed

**\*10** As discussed previously, Plaintiff contends that the evidence presented against him is legally insufficient under both the New York State and the federal constitution. After carefully considering the matter, this court recommends dismissal of Petitioner's legal sufficiency claim.

To the extent that Petitioner's legal sufficiency claim is based upon state law, that portion of his claim is non-cognizable in a federal habeas proceeding. *McGuire*, 502 U.S. at 63, 112 S. Ct. at 477, 116 L. Ed. 2d at 385. The record before this court also shows that Petitioner's federal legal sufficiency claim is unexhausted and procedurally defaulted because Petitioner did not raise the federal argument in his leave application to the Court of Appeals. (Dkt. No. 15-1 at 562-566.) Specifically, Petitioner's leave application requested review by the Court of Appeals

> of his claims that the verdict was
> against the weight of the evidence;

that County Court's agreement not to instruct the jurors on the corroboration requirement for accomplice at law testimony was a fundamental error; that he was denied his State and Federal right to the effective assistance of counsel; and that County Court's error in its *Molineux* and *Sandoval* rulings constituted reversible error.

(Dkt. No. 15-1 at 562.)

Although Petitioner made a sufficiency of the evidence claim to the Appellate Division on direct appeal, habeas review is unavailable because Petitioner's failure to "explicitly alert" the New York Court of Appeals to the issue "does not fairly present such claims." *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (holding that "counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not pointed out in the application for leave; *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (finding evidentiary issue procedurally defaulted because petitioner's correspondence to the New York Court of Appeals never raised the issue). Although Petitioner's application to the New York Court of Appeals argued that the conviction was against the weight of the evidence, there is a distinct difference between "weight of the evidence" under state law and "legal sufficiency" under federal law. *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 343 (N.Y.N.D. 2018) ("Recent cases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that "the two claims are no more than somewhat similar.") (quoting *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 512 (N.D.N.Y. 2016)), *aff'd* 711 F. App'x 67 (2d Cir. 2018). Thus, a weight of the evidence claim may not "stand in" for a legal sufficiency claim. *See Romero v. Miller*, No. 9:18-CV-381, 2019 WL 5743500, at *5-6 (N.D.N.Y. Apr. 18, 2019), *report-recommendation adopted*, 2019 WL 5703612 (N.D.N.Y. Nov. 5, 2019), *cert. of appeal. denied*, No. 19-4033, 2020 WL 2945010 (2d Cir. May 14, 2020) (collecting cases).

Because petitioner's federal legal sufficiency claim is unexhausted, petitioner has no avenue in state court to exhaust his claim. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991); N.Y. Crim. Proc. Law § 440.10 (2)(c) (barring collateral review if a claim could have been raised on direct review). Therefore, he is barred from litigating the merits of that claim in federal habeas proceedings, absent a showing of cause and prejudice. *Grey*, 933 F.2d at 121. The closest Petitioner comes to arguing cause is the ineffective assistance of counsel claim elsewhere in his habeas petition, but as discussed below (Section IV (D), *infra*), this claim is without merit and therefore cannot serve as "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wright v. LaManna*, No. 9:18-CV-1063, 2021 WL 5095292, at *8 n.5 (MAD/TWD) (N.D.N.Y. April 21, 2021), *report and recommendation adopted*, 2021 WL 4452094 (September 29, 2021) (stating principle that ineffective assistance of counsel may be sufficient to show cause only when counsel's performance was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel).

**\*11** Additionally, on the record before the Court, there is no basis to conclude that the failure to consider the merits of Petitioner's legal sufficiency claim would result in a fundamental miscarriage of justice or other prejudice. Although Petitioner raises an actual innocence claim, it is also without merit. (Section IV (B), *infra*). Accordingly, the procedural default bars federal review of Petitioner's legal sufficiency claim, and this Court recommends that portion of his Petition be denied and dismissed on this ground.

Even if this court considered Plaintiff's legal sufficiency claim on the merits, it would still recommend dismissal of this claim. A convicted defendant seeking federal habeas review for sufficiency of evidence to support a conviction bears a heavy burden. *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 822 (2d Cir. 2000); *Flowers v. Fisher*, 296 Fed App'x 208, 210 (2d Cir. 2008). A petitioner making this claim is entitled to habeas relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

When making an analysis concerning sufficiency of the evidence, the reviewing court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor[,] and must defer to the credibility assessments made by the jury without substituting its view for that of the factfinder. *Fama*, 235 F.3d at 811; *see also Jackson*, 443 U.S. at 319. Viewing the evidence in this light, the habeas court must uphold the verdict "if any rational trier of fact could have found the essential elements of the crime [of conviction] beyond a reasonable doubt. *Jackson*, 443 U.S. at 319 (emphasis in original).

Here, Petitioner's legal sufficiency argument is essentially that the jury should have believed his testimony over that of Joseph Speed. (Dkt. No. 1 at 10, 12.) Arguments that merely contest the credibility of the prosecution's evidence are insufficient to disturb a jury verdict. *See Marshall v. Lonberger*, 459 U.S. 422, 432-435 (1983) (holding that a federal court reviewing a habeas petition may not revisit the fact-finder's credibility determinations); *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (noting that a habeas court is not free to make a credibility judgment about the evidence or weight conflicting testimony). Here, as in many cases,

> the jury's decision was largely a matter of choosing whether to believe [Petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence ... We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence.

*Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981). Based on the record before this Court, it does not appear "more likely than not that no reasonable juror would have convicted. *Schlup*, 513 U.S. at 329. Accordingly, if this Court were able to consider the merits of Petitioner's legal sufficiency claim, it would still recommend dismissal.

### B. Whether Actual Innocence Claim Should be Dismissed

Petitioner claims that he is actually innocent of the burglary and robbery charges, and is thus being held in violation of the New York State and federal constitutions. (Dkt. No. 1 at 10.) As before, Petitioner's state law claim is not cognizable in this federal habeas proceeding. *McGuire*, 502 U.S. at 63, 112 S. Ct. at 477, 116 L. Ed. 2d at 385. Petitioner faces a similar obstacle to his federal claim.

**\*12** "Once guilt is ... established ... a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence ... [r]ather, a federal habeas court will review state convictions for constitutional

error." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019). The United States Supreme Court has never ruled that a freestanding claim of actual innocence may serve as a basis for federal habeas relief, so it is generally accepted that a purported error by a state court in declining to hear an actual innocence claim in a non-capital case cannot be contrary to, or an unreasonable application of, clearly established federal law. *See Cosey v. Lilley*, 62 F.4th 74, 85 n.11 (summarizing current Supreme Court caselaw). Therefore, habeas review is unavailable for Petitioner's actual innocence claim, and it should be dismissed.

Even if Petitioner's actual innocence claim were cognizable in this habeas proceeding, this court would recommend dismissal on the merits. Petitioner has presented two affidavits from two individuals, Miguel Alcarez and Bobby Smith, who were separately convicted in connection with the burglary and robbery at the Graziano residence. (Dkt. No. 1-1 at 32-33.) Using similar language, Mr. Alcarez and Mr. Smith provided sworn written testimony that Petitioner had no knowledge of any plans to commit burglary or robbery, and that when the four individuals returned to the car while fleeing from the police, their only instructions were to "Go, Go, Go." (*Id.*) Mr. Alcarez and Mr. Smith each stated that this information had been provided to Petitioner's counsel in 2012, prior to his trial. (*Id.*)

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to avoid the "expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 1927, 185 L.Ed.2d 1019 (2013). The Supreme Court cautioned, however, that "tenable actual-innocence gateway pleas are rare," and that a "petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* The Supreme Court has also made clear that if the federal courts recognized a free-standing actual innocence claim that it would impose a higher threshold, making the required showing "extraordinarily high." *See Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that, "in capital cases," "the threshold showing for [a freestanding innocence claim] would necessarily be extraordinarily high"); *House,* 547 U.S. at 520, 126 S.Ct. at 2068, 165 L.Ed.2d 1 (2006) ("whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it" ... despite having "cast considerable doubt on his guilt."). Based on that understanding, this court

is confident that Petitioner's showing here, based solely on affidavits placing Petitioner at the scene of the crime but absolving him of any criminal liability, would not meet the extraordinary high standard for a free-standing actual innocence claim. *See, e.g., Waters v. Lilley*, No. 17-CV-8258 (GHW) (RWL), 2023 WL 3592230, at *15 (co-defendant's post-conviction affidavit stating petitioner had not been part of narcotic sale did not meet "actual innocence" threshold to excuse late habeas filing); *Sabir v. United States*, 12 Civ. 8937 (LAP), 2020 WL 6131419, at *5 (S.D.N.Y. October 16, 2020) (finding that affidavits from convicted co-conspirators stating petitioner is innocent did not meet "actual innocence" standard to excuse untimely habeas filing).

Accordingly, this Court recommends that Petitioner's actual innocence claim be dismissed as non-cognizable and without merit.

### C. Whether Petitioner's *Molineux* and *Sandoval* Claims Should Be Dismissed

**\*13** Applying New York law, Judge Koweek held a pre-trial hearing to determine whether Petitioner's prior burglary conviction could be introduced as evidence for limited purposes. *People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (establishing rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts but may be used for other purposes); *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (setting out procedure under which a New York trial court determines, in advance, whether evidence of prior convictions is admissible in the event that the defendant testifies). Judge Koweek held that the prosecution could present evidence of this prior conviction only so far as it proved the element of intent, or to impeach Petitioner's testimony if he testified. (Dkt. No. 15-1 at 285-288.) At trial, the prosecution relied on the prior burglary conviction to refute Petitioner's contention that he had no knowledge of the planned burglary when he drove to the home, and to attack the credibility of Petitioner's testimony. Judge Koweek revisited this issue when he allowed the prosecution to submit a certificate of conviction for this prior burglary following Petitioner's testimony. (Dkt. No. 15-5 at 125-129.)

With the assistance of new counsel, Plaintiff challenged the trial court's *Molineux* and *Sandoval* rulings on direct appeal, arguing that the admission of his prior burglary conviction was unduly prejudicial under state law. (Dkt. No. 15-1 at 249-252.) The Appellate Division, Third Department agreed with Petitioner that the trial court's ruling violated

*Molineux* and *Sandoval*, but held that these errors were harmless, "because the evidence of [Petitioner's] guilt was overwhelming and there is no significant probability that [Petitioner] would have been acquitted in the absence of the errors." (Dkt. No. 15-1 at 778.) Petitioner challenged this conclusion in his unsuccessful application for review by the Court of Appeals. (Dkt. No. 15-1 at 563.)

Petitioner's state court appeals, and the resulting state court decision, are entirely premised on an interpretation of state law. Because the *Molineux* and *Sandoval* claims were not presented to the state courts in federal constitutional terms, neither is reviewable by this court in a habeas proceeding. *See Steinhilber v. Kirkpatrick, M.*, No. 18 CIV 1251 (VB) (JCM), 2020 WL 9074808, at *13 (S.D.N.Y. Aug. 21, 2020) (collecting cases denying *Molineux* claim as unexhausted where petitioner did not argue on direct appeal to state court that the evidentiary error violated his federal constitutional rights and noting that *Molineux* does not "call to mind a specific right protected by the Constitution"), *report and recommendation adopted*. 2021 WL 1254554, at *2 (S.D.N.Y. April 5, 2021); *Meeks v. Artus*, No. 10 Civ. 4021 (BMC), 2011 WL 703938, at * (E.D.N.Y. February 17, 2011) (finding *Sandoval* claim was unexhausted where appellate argument addressed state law issues and "never mentioned the Constitution, the Due Process clause, or any federal authority"); *see also Jackson v. Lee*, No. 10 CIV 3062, 2010 WL 4628013, at *22 (S.D.N.Y. Nov. 16, 2010) (holding that *Sandoval* claim raised entirely in state law terms is deemed exhausted but procedurally barred because "[w]hen addressing his *Sandoval* claim ... appellate counsel merely relied on two state cases and never mentioned any federal constitutional issues").

Even if this court were to consider the merits of these claims, Petitioner has not established that the evidentiary rulings denied him a fair trial under clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). The Supreme Court has not yet held that the admission of evidence of a defendant's prior crimes to show the defendant's criminal propensity violates the Due Process Clause. *See McGuire*, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *see also, e.g., Williams v. Jacobson*, No. 15-CV-5319 (ER) (JLC), 2016 WL 4154700, at *20 (S.D.N.Y. Aug. 5, 2016) ("[T]here is no clear Supreme Court precedent holding that the admission of propensity evidence (even if prejudicial) is unconstitutional."), *report*

*and recommendation adopted*, 2016 WL 7176648 (S.D.N.Y. Dec. 7, 2016); *Stenson v. Heath*, No. 11-CV-5680 (RJS) (AJP), 2012 WL 48180, at *15 (S.D.N.Y. Jan. 10, 2012) ("[E]ven assuming [the petitioner] was able to successfully argue that [the state court] misapplied New York law in allowing evidence of uncharged crimes, he still would not be eligible for habeas relief because there is no Supreme Court precedent that such evidence gives rise to a constitutional violation."), *report and recommendation adopted*, 2015 WL 3826596 (S.D.N.Y. June 19, 2015). When there is no Supreme Court holding on a given issue, 'it cannot be said that the state court unreasonably applied clearly established Federal law' within the meaning of AEDPA." *Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016).

**\*14** Petitioner has also failed to show how the admission of evidence related to his prior burglary conviction was so egregious or fundamentally unfair as to violate due process. "For an erroneous admission of ... unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan v. Keane* [7], 137 F.3d 117, 125 (2d Cir. 2009) (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)). As part of the defense case, Petitioner testified that he had pled guilty to burglary in the third degree in 2008, but the facts were readily distinguishable from the case at trial. Petitioner explained that he had been arrested after entering a building to fight someone inside. (Dkt. No. 15-5 at 164-166.) Petitioner's counsel reinforced this argument to the jury during his summation. (Dkt. No. 15-6 at 66-68.) The jury instructions also addressed the issue, explaining that the prior burglary conviction was not evidence of Petitioner's guilt or his predisposition to commit similar crimes. (Dkt. No. 15-6 at 107-108.) The Supreme Court and the Second Circuit have generally encouraged the presumption that jurors will follow the trial court's instructions. *Penry v. Johnson*, 532 U.S. 782, 799, 121 S.Ct. 1910, 1922, 150 L.Ed.2d 9 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)); *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727; *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009).

[7]    The evidentiary issue in *Dunnigan* was the admissibility of a witness's identification of petitioner as a suspect from a "highly suggestive" photo array. 137 F.3d at 129. The Second Circuit's holding on photo identification was abrogated

by the U.S. Supreme Court in *Perry v. New Hampshire*, 565 U.S. 228, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012).

Moreover, as the state appellate court found, there was considerable other evidence for a reasonable jury to conclude that Petitioner was guilty, including Joseph Speed's testimony regarding the planning and execution of the crime, the testimony of the law enforcement officers who responded to the burglary and pursued Petitioner's vehicle, and Petitioner's own testimony placing him behind the steering wheel during the planning and execution of the burglary and attempted escape. *People v. Williams*, 156 A.D.3d at 1226-1229 (Dkt. No. 15-1.)

Therefore, this court recommends dismissal of Petitioner's *Molineux* and *Sandoval* claims as unexhausted, procedurally defaulted, and meritless.

### D. Whether Ineffective Assistance of Counsel Claim Should Be Dismissed

In his brief to the Appellate Division, Third Department, Petitioner argued that his trial counsel erred by (1) failing to include statements by Petitioner's co-defendants attesting to his innocence as part of in his pre-trial dismissal motion; (2) misinforming Petitioner regarding the decision not to request an accomplice-corroboration jury charge; and (3) failing to renew Petitioner's motion for a trial order of dismissal at the close of the defense case. He repeated these claims in his application for leave to appeal to the Court of Appeals and 440.10 motion, from which the Appellate Division denied leave to appeal. (Dkt. No. 15-1 at 570-654, 785-794.) Accordingly, Petitioner adequately exhausted his ineffective assistance of counsel claims to permit this Court to review their merits.

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

> This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (quoting *Strickland*, 466 U.S. at 689) (noting the court's "scrutiny of counsel's performance must be 'highly deferential' ").

**\*15** Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that ... there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

### 1. Pre-Trial Motion

Prior to Petitioner's trial, his counsel filed a motion on his behalf seeking to have the charges dismissed or reduced. (Dkt. No. 15-1 at 27-48, 107-119, 127-135.) Counsel argued that the grand jury indictment was based on defective testimony from a state police investigator who paraphrased statements from Alcarez, Smith, and Speed in a manner that exaggerated Petitioner's role in the planning and execution of the crime, and that the evidence presented to the grand jury misrepresented Petitioner's limited role as the driver of the SUV. (*Id.* at 37-40, 109-112.) Petitioner contends that his counsel should also have included statements, purportedly provided by Alcarez, Smith, and Speed, stating that Petitioner did not know about the planned burglary and robbery and panicked when the actual home invaders raced back to the car with the police in pursuit and directed him to "Go, Go,

Go!" (Dkt. No. 1 at 5.) Failure to do so, Petitioner contends, violated his constitutional right to effective assistance of counsel.

Respondent has provided extensive caselaw demonstrating that such a motion would not have provided a legal basis for dismissal of the indictment. *See, e.g., People v. Swamp*, 84 N.Y. 2d 725, 730 (1995) (finding court considering motion to dismiss an indictment for legal insufficiency "must consider whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted – and deferring all questions as to the weight or quality of the evidence – would warrant conviction."); *People v. Galatro*, 84 N.Y.2d 160, 163 (1994) (holding that all questions as to quality or weight of the proof should be deferred until trial).

Effective assistance of counsel does not require the filing of every possible motion, rather only those that have a solid foundation. *See Carpenter v. Unger*, Nos. 9:10-CV-1240, 2014 WL 4105398, at \*24 (N.D.N.Y. August 20, 2014) (refusal of client's request to file frivolous motion was not ineffective assistance of counsel). "The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which [a p]etitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). Therefore, counsel's failure to challenge the legal sufficiency of the indictment based on the accomplice affidavits does not meet the performance prong of *Strickland*. Plaintiff has also failed to show prejudice, due to the low likelihood that the indictment would have been dismissed. *See Wynn v. Lee*, No. 9:19-CV-209 (BKS/CFH), 2022 WL 19405961, at \*17 (N.D.N.Y. December 12, 2022) (finding petitioner did not demonstrate a reasonable probability that indictment would have been dismissed but for counsel's alleged failure to investigate exculpatory evidence).

### 2. Jury Instruction Regarding Accomplice Corroboration

New York law provides that a "defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." *See N.Y. Crim. Proc. Law § 60.22(1).* An accomplice is defined as "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in ... [t]he offense charged ... or ... [a]n offense based upon the same or some of the same facts

2023 WL 10365043

or conduct which constitute the offense charged." N.Y. Crim. Proc. Law § 60.22(2); see also *People v. Caban*, 5 N.Y.3d 143, 152, 800 N.Y.S.2d 70, 833 N.E.2d 213 (N.Y. 2005) (quoting statute). "Where the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed but, if different inferences may reasonably be drawn from the proof regarding complicity ... the question should be left to the jury for its determination[.]" *Caban*, 5 N.Y.3d at 152, 800 N.Y.S.2d 70, 833 N.E.2d 213 These corroboration requirements are "minimal," requiring "only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence" that connects "the accomplice evidence to the defendant." *See Valerio v. Phillips*, No. 02-CV-901(RJA), 2008 WL 305007, at *14 (W.D.N.Y. Feb. 1, 2008) (summarizing state law regarding accomplice corroboration).

**\*16** Petitioner contends that trial counsel erred in failing to request a jury instruction addressing New York state law requirements that accomplice testimony be corroborated. (Dkt. No. 1 at 5; Dkt. No. 15-6 at 5-6.) The Appellate Division considered the identical argument during the course of Petitioner's appeal, finding that "[t]he record reflects that trial counsel and [Petitioner] requested that the court not give the charge as they were concerned that referring to Speed as an 'accomplice' would confuse the jury in light of the fact that [Petitioner] steadfastly claimed that he was an unwitting participant who was unaware of the codefendants' plan to rob Graziano." *People v. Williams*, 156 A.D.3d 1224,1230-1231 (3d Dep't 2017); Dkt. No. 15-1 at 554-557. The Appellate Division further found that Petitioner "failed to establish the absence of a strategic reason for counsel's decision," and that such decision did not constitute ineffective assistance of counsel, "in light of [the Appellate Division's] determination that the conviction was not against the weight of the evidence." *Id.*

The Appellate Division's reasoning is sound, and consistent with federal law. Trial counsel's strategic decision to avoid potential jury confusion regarding the term "accomplice," made with Petitioner's consent on the record, does not meet the performance prong of *Strickland. See Valerio*, 2008 WL 305007, at *16 (finding that trial counsel's attempt to distance client from convicted drug dealer by avoiding accomplice instruction did not render his performance objectively unreasonable); *Clark v. Sup't of Wende Corr. Fac.*, No. 6:14-CV-06070(MAT), 2015 WL 6142864, at *6 (W.D.N.Y. Oct. 19, 2015) (finding that "it was not unreasonable for counsel to decide that requesting an accomplice charge

[ ] might have undermined" other aspects of defense strategy); *Ramos v. Artuz*, 40 F.Supp.2d 206, 208 (S.D.N.Y. 1999) ("[Petitioner] quarrels with his counsel's decisions not to, for example, request an accomplice corroboration instruction .... While different strategic decisions could have been made, the ones that were made fell within the range of constitutional effectiveness. Even though counsel's strategy was ultimately unsuccessful, that fact does not render his assistance constitutionally ineffective.").

Petitioner has likewise failed to meet the prejudice prong of *Strickland,* because there was sufficient independent evidence, including Petitioner's own testimony and his behavior after the police responded to the burglary, that a jury could reasonably have relied upon to reach a guilty verdict. *See United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) (encouraging deference to "the jury's choice of the competing inferences that can be drawn from the evidence,"); *Valerio*, 2008 WL 305007, at *16 (holding that in light of substantial evidence of guilt apart from accomplice testimony, there was no "reasonable probability" that the verdict would have been favorable had the jury been instructed on New York's accomplice corroboration requirement); *Hicks v. Ercole*, No. 09–CV–2531 (AJN), 2015 WL 1266800, at *25 (S.D.N.Y. March 18, 2015) (finding no prejudice where petitioner had not shown any "reason to believe that the jury verdict would have come down differently if [his] desired instruction had been given").

### 3. Failure to Renew Motion to Dismiss

Under New York law, a defendant may move the trial court for an order of dismissal "dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense ...." *See* N.Y. Crim. Proc. Law § 290.10(1). In this case, Petitioner's counsel filed an unsuccessful motion for a trial order of dismissal at the close of the prosecution's case. (Dkt. No. 15-5 at 130-131.) He then called Petitioner as the only defense witness. (*Id.* at 135-185.) Following Petitioner's testimony, the trial court discussed the admissibility of certain defense exhibits and held a jury-charge conference. (*Id.* at 186-189.) Neither the prosecution, defense, nor the trial court recognized that defense never formally rested its case until just prior to summation before the jury. (Dkt. No. 15-6 at 19-20.) Petitioner's counsel corrected this oversight but did not renew his motion for a trial order of dismissal. (Dkt. No. 15-6 at 20.)

**\*17** Given the context, it does not appear that the failure to renew the motion for dismissal was a strategic choice. Petitioner may thus have a colorable argument that trial counsel's error meets the performance prong of *Strickland*. However, the court need not resolve the performance question before dismissing Petitioner's claim. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."). Petitioner has not shown sufficient prejudice arising from counsel's failure to renew the motion to dismiss, because there is no indication that a renewed motion would have resulted in a different trial result or that the omission deprived Petitioner of a fair trial. As discussed above, Petitioner's original motion was denied, and the only substantive new evidence presented by the defense was Petitioner's own testimony, which required a credibility evaluation by the jury. Multiple courts within this Circuit have reached the same conclusion when presented with similar facts. *See DeLee v. Graham*, No. 9:11-CV-653 (MAD/CFH), 2013 WL 3049109, at \*24 (N.D.N.Y. June 17, 2013) (rejecting ineffective assistance claim where counsel did not renew motion to dismiss and thus failed to preserve issues on appeal); *Agee v. Brandt*, No. 10-CV-06303T, 2011 WL 3800032, at \*7 (W.D.N.Y. Aug. 26, 2011) (rejecting ineffective assistance of counsel claim where significant evidence of guilt provided no basis for court to conclude that a renewed motion to dismiss would have been successful); *Delatorres v. Lempke*, No. 08–CV–0183, 2011 WL 1198565, at \*4 (W.D.N.Y. Mar. 29, 2011) (denying petitioner's ineffective assistance of trial counsel claim based upon counsel's failure to renew her motion to dismiss where petitioner failed to demonstrate that the outcome would have been different had the renewed motion been made, particular in light of other evidence including petitioner's own statements).

### E. Whether Excessive Sentencing Claim Should be Dismissed

Following the guilty verdict, Petitioner was sentenced to a determinate term of twelve years imprisonment and five years of post-release supervision. (Dkt. No. 15-7 at 24-25.) Because Petitioner had a prior felony conviction, the governing statute provided for a mandatory determinate sentence between five and fifteen years imprisonment and five years of post-release supervision. *See* N.Y. Penal Law §§ 70.06(b); 70.45(2). Therefore, the applicable sentence is within the range set by state law.

"No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *Grimes v. Lempke*, No. 9:10-CV-0068 (GLS/RFT), 2014 WL 1028863, at \*3 (N.D.N.Y. Mar. 14, 2014) ("It is well settled that the issue of whether a sentence was overly harsh or excessive is not a proper issue for review in the habeas context unless the sentence was outside of the permissible range provided for by state law.") (citing *White*, 969 F.2d at 1383).

To the extent that Petitioner's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, dismissal would still be appropriate. The length of Petitioner's sentence is not so constitutionally disproportionate as to raise Eighth Amendment concerns. *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (finding that sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft under three strikes law did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence for repeat non-violent felony offender did not constitute cruel and unusual punishment); *Watson v. Shanley*, No. 9:19-CV-00275-JKS, 2021 WL 1294107, at \*5 (N.D.N.Y. April 7, 2021) (eighteen year sentence for felony drug conviction "does not remotely approach the realm of grossly disproportionate punishments."). Accordingly, the sentence imposed on Petitioner does not create grounds for habeas relief, and this court recommends dismissal of this claim.

## V. CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; ... a court could

resolve the issues in a different manner; or ... the questions are adequate to deserve encouragement to proceed further." [8] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

[8]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue ... if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

*18  In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance

with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[9]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2023 WL 10365043

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 637422

2024 WL 637422
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick WILLIAMS, Petitioner,
v.
Lynn J. LILLEY, Respondent.

9:20-CV-00999
|
Signed February 15, 2024

**Attorneys and Law Firms**

Frederick Williams, Woodbourne, NY, Pro Se.

Paul B. Lyons, New York State Attorney General - New York Office, New York, NY, for Respondent.

### DECISION & ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Petitioner Frederick Williams, proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1 ("Petition" or "Pet."). The Hon. Miroslav Lovric, United States Magistrate Judge, reviewed the matter and recommends that the Petition be denied and dismissed, and that a certificate of appealability not issue. *See* August 8, 2023 Report-Recommendation ("Report-Recommendation"), Dkt. No. 19. There have been no objections made to the Report-Recommendation, and the time to do so has expired. For the following reasons, the Petition is dismissed and no certificate of appealability will issue.

### Failure to Update Address

On August 8, 2023, the Report-Recommendation was attempted to be served on Williams via regular mail at his last-known address at the Woodbourne Correctional Facility. *See* Dkt. No. 20. However, it was returned to the Clerk as "undeliverable" with a notation that Williams had been released from custody. *See* Dkt. No. 20. According to the NYS Department of Corrections and Community Supervision website, Williams was conditionally released from custody to parole supervision on October 14, 2021. [1]

[1]    https://nysdoccslookup.doccs.ny.gov/ (entry for "Williams, Frederick, DIN 14A1376") (accessed 1/27/24)

Williams has failed to provide the Court with a current address as required by Local Rule 10.1(c)(2). *See* N.D.N.Y.L.R. 10.1(c)(2)("**All attorneys of record and *pro se* litigants must immediately notify the Court of any change of address.**") (emphasis in original). Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address by counsel or *pro se* litigant within 14 days of a change in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." N.D.N.Y.L.R. 41.2(b). In addition, the Court issued a Decision and Order on September 1, 2020 that provides in pertinent part that "Petitioner must ... promptly notify the Clerk's Office and all parties or their counsel of any change in his address. His failure to do so will result in the dismissal of this action." *See* Dkt. No. 4, at 4.

### Failure to Prosecute under Fed. R. Civ. P. 41(b)

"Courts in this district have relied upon 'Rule 41(b) of the Federal Rules of Civil Procedure ... [to] dismiss an action[, including a habeas petition,] based upon the failure of a plaintiff to prosecute the action, or comply with any order of the court.' " *Gutierrez v. LaManna*, No. 9:19-CV-0847 (GLS/ATB), 2019 WL 3340695, at *2 (N.D.N.Y. July 25, 2019)(quoting *Rosa v. Napoli*, No. 9:09-CV-0687, 2011 WL 6103473, at *1-2 (N.D.N.Y. Dec. 7, 2011)(citing cases)). A party's failure to update address information as required by the Local Rules or a court order is deemed a failure to prosecute. *See Hill v. Donelli*, No. 9:05-CV-1245, 2008 WL 4663364, at *2 (N.D.N.Y. Oct. 20, 2008)("As a matter of course, courts in this district have dismissed actions when litigants have failed to abide by either the Local Rules or orders related to address changes, and have subsequently failed to prosecute their actions.")(collecting cases); *see also Poole v. Mazzuca*, No. 9:04-CV-1186, 2008 WL 163697, at *1 (N.D.N.Y. Jan. 14, 2008)(dismissing a petition for a writ of habeas corpus because the petitioner "failed to provide the court with a current address ... and the docket sheet notes the Report Recommendation itself was returned to the court as 'undeliverable.' "); *cf. Jackson v. Rabideau*, No. 9:04-CV-1096, 2007 WL 911846, at *1 (N.D.N.Y. Mar. 22, 2007)("United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a case.").

**\*2** In determining whether involuntary dismissal ... is appropriate, the Second Circuit considers five main factors, none of which is dispositive: (1) the duration of the plaintiff's failures; (2) whether the plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and, (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Ramadan v. Niagara County*, No. 6:12-CV-6425, 2014 WL 2865093, at \*4 (W.D.N.Y. June 24, 2014) (citing *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001)). A review of these factors supports dismissal under Rule 41(b).

Considering the first factor, Williams was released to parole supervision almost two (2) years before the Report-Recommendation was issued and the Clerk attempted to be serve it on Williams at his last known address. This almost-two-year period was more than enough time for Williams to comply with his obligation to update his address. *See Montford v. Walsh*, No. 9:19-CV-1607 (LEK/CFH), 2020 WL 4284135, at \*2 (N.D.N.Y. July 27, 2020)("Petitioner has failed to keep the Court apprised of his whereabouts for over six months. Other courts have found that delays of at least six months warrant dismissal.")(collecting cases); *Ramadan*, 2014 WL 2865093, at \*3 (holding that "[a] year is more than enough time [for petitioner] to fulfill his obligation under [the] Local Rule[s.]"). Thus, the first factor weighs in favor of dismissal.

Considering the second factor, Williams was given adequate notice of his obligation to keep his address updated or risk dismissal of the action, *see* Dkt. No. 4, at 4; N.D.N.Y.L.R. 10.1(c)(2); N.D.N.Y.L.R. 41.2(b), yet he failed to do so. Under the circumstances, any further attempt to warn Williams of the consequences of his failure to update his address would be futile. *See Ramadan*, 2014 WL 2865093, at

\*4 ("The Second Circuit has emphasized the importance of first giving the *pro se* litigant a direct warning that his case will be dismissed for failure to further prosecute ... However, any further attempt to notify Plaintiff would be futile as the Court has no means by which to contact Plaintiff.")(citations omitted); *cf. Montford*, 2020 WL 4284135, at \*2 ("With respect to the second factor, Petitioner has not been apprised of the consequences of failing to amend his petition, as he did not receive the January Order. However, this is largely Petitioner's fault, as it is impossible to notify him of these consequences without knowledge of his current address."). Thus, the second factor weighs in favor of dismissal.

Considering the third factor, "[w]ith respect to prejudice, petitioner's failure to update his address is effectively foreclosing [any possibility for r]espondent ... [to be able] to defend this lawsuit." *Ramadan*, 2014 WL 2865093, at \*4; *cf. Montford*, 2020 WL 4284135, at \*2 (" 'The inability of the Court and Respondent's counsel to communicate with Petitioner means that the matter will remain pending indefinitely without the possibility of resolution. Under the circumstances of this case, sanctions short of dismissal would obviously be meaningless.' ")(quoting *Ramadan*, 2014 WL 2865093, at \*4)(additional citation omitted). Thus, the third factor weighs in favor of dismissal.

"The fourth factor is less clear because, while it appears that '[t]he inability of the Court and respondent's counsel to communicate with petitioner means that the matter will remain pending indefinitely without the possibility of resolution,' concluding the fourth factor definitively without giving petitioner warning and an opportunity to update his address, presuming he is still engaged and actively following the court's docket," could be premature. *Gutierrez*, 2019 WL 3340695, at \*3 (quoting *Ramadan*, 2014 WL 2865093, at \*4). However, Williams was advised via court order and the Local Rules that his failure to keep his address up to date could result in dismissal of the action. Consideration of Williams's *pro se* status does not, by itself, tip this factor against dismissal. *See Jackson*, 2007 WL 911846, at \*1–3 ("Petitioner has failed to update his address as he is required to by [former] Northern District Local Rule 10.1(b)(2). Moreover, Petitioner has failed to update his address as required by this Court's Order. Petitioner is proceeding *pro se* and should be granted special lenience with regards to his compliance with procedural rules. However, his failure to update his address is no small matter ... Petitioner has known for years that he must promptly update his address whenever it changes, or risk having the action dismissed by this Court.... By failing to update his address,

Petitioner has failed to comply with this Court's Order and Local Rule 10.1(b)(2) and has frustrated this Court's ability to contact him. The Court finds that it would be futile to make any further attempts to contact Petitioner.... Petitioner's failures in this matter warrant the imposition of the sanction of dismissal.")(citations omitted); *cf. Dumpson v. Goord,* No. 00-CV-6039 CJS, 2004 WL 1638183, at *2 (W.D.N.Y. July 22, 2004)("[A] court may *sua sponte* dismiss a plaintiff's action for failure to comply with an order of the court ... Such decisions are committed to the Court's sound discretion.... *Pro se* plaintiffs are entitled to a degree of leniency, but this should not extend to the disregard of a judge's plain directives.") (citing, *inter alia, Costello v. United States,* 365 U.S. 265, 286-87 (1961); *Lucas v. Miles,* 84 F.3d 532, 538 (2d Cir. 1996)).

**\*3** Furthermore, while "[t]he Second Circuit has emphasized the importance of first giving the *pro se* litigant a direct warning that his case will be dismissed for failure to further prosecute, ... any further attempt to notify [Petitioner] would be futile as the Court has no means by which to contact [him]." *Purcelle v. Nephew,* No. 9:19-CV479 (TJM/DJS), 2020 WL 8838029, at *1-2 (N.D.N.Y. Dec. 4, 2020), *report and recommendation adopted,* 2021 WL 950407 (N.D.N.Y. Mar. 12, 2021); *see Ramadan,* 2014 WL 2865093, at *4 ("The Second Circuit has emphasized the importance of first giving the *pro se* litigant a direct warning that his case will be dismissed for failure to further prosecute ... However, any further attempt to notify [petitioner] would be futile as the Court has no means by which to contact [him] ... Plaintiff has been released from DOCCS custody and left no forwarding address. Given that the Court's recent orders have been returned as undeliverable, the Court has no means by which to effectively communicate with Plaintiff.... The Court finds that this period of noncompliance with the requirement that he notify the Clerk's Office and Defendants of his current address is a basis for dismissal.")(citations omitted). "Under the circumstances of this case, sanctions short of dismissal would obviously be meaningless.... Accordingly, having given due consideration to Petitioner's right to due process and a fair chance to be heard, the Court finds that the interests of alleviating court congestion and the inefficiency and ineffectiveness of lesser sanctions compel dismissal." *Montford,* 2020 WL 4284135, at *2 (cleaned up). Thus, the fourth factor weighs in favor of dismissal.

The fifth factor, while somewhat equivocal, weighs slightly in favor of dismissal. The Court has a vested interest in alleviating court congestion and preventing inefficiency that could prejudice the parties. As indicated above, the Respondent stands to be prejudiced by the indefinite continuation of this action, especially in light of Judge Lovric's recommendation that the action be dismissed on the merits. Because of the long period by which Williams ignored his obligation to update his address despite being instructed to do so and warned that the action could be dismissed if he did not, and factoring in the prejudice to Respondent by delay of this proceeding, the Court concludes that fifth factor weighs in favor of dismissal. *See Purcelle,* 2020 WL 8838029, at *1 ("Plaintiff has been released from DOCCS custody and left no forwarding address. Given that the Court's recent orders have been returned as undeliverable, the Court has no means by which to effectively communicate with Plaintiff. Nor does Defendants' attorney have the ability to communicate with Plaintiff to engage in discovery or defend this matter. The Court finds that this period of noncompliance with the requirement that he notify the Clerk's Office and Defendants of his current address is a basis for dismissal.") (citation omitted).

An evaluation of the totality of aforementioned factors weighs in favor of dismissal for failure to prosecute and to comply with the Court's September 1, 2020 Decision and Order to "promptly notify the Clerk's Office and all parties or their counsel of any change in his address." *See* Dkt. No. 4, at 4. Thus, the Petition is dismissed pursuant to Rule 41(b).

### *De Novo* Review

Further, even assuming Williams had objected to some or all of Judge Lovric's recommendations, upon *de novo* review the Court accepts and adopts Judge Lovric's conclusions and recommendations for the reasons stated in the Report-Recommendation.

### Conclusion

Accordingly, the Petition, Dkt. No. 1, is **DISMISSED** pursuant to Rule 41(b) for failure to prosecute and to comply with the Court's September 1, 2020 Decision and Order. Furthermore, the Court **ACCEPTS** and **ADOPTS** Judge Lovric's Report-Recommendation, Dkt. No. 19, for the reasons stated therein. Therefore, the Petition, Dkt. No.1, is **DENIED** and **DISMISSED** on the merits, and no Certificate of Appealability ("COA") will issue.

2024 WL 637422

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 637422

---

**End of Document**                                            © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3856738

2021 WL 3856738
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard B. SHORTELL, Petitioner,

v.

Susan KICKBUSH, Respondent.

9:20-cv-62 (GLS/DJS)
|
Signed 08/30/2021

**Attorneys and Law Firms**

FOR THE PETITIONER: RICHARD SHORTELL, Pro Se,
18-A-0370, Groveland Correctional Facility, 7000 Sonyea
Road, Sonyea, NY 14556.

FOR THE RESPONDENT: HON. LETITIA JAMES, New
York Attorney General, OF COUNSEL: JAMES FOSTER
GIBBONS, Assistant Attorney General, 28 Liberty Street,
New York, NY 10005.

**DECISION AND ORDER**

Gary L. Sharpe, Senior District Judge

 **\*1**  The court cannot locate *pro se* petitioner Richard B.
Shortell. Accordingly, it considers *sua sponte* petitioner's
noncompliance with this District's Local Rules by failing to
notify the court of his current address and by not prosecuting
his action.

On December 11, 2019, petitioner filed a petition for writ
of habeas corpus in the Western District of New York. (Dkt.
No. 1.) On January 16, 2020, the case was transferred to the
Northern District of New York. (Dkt. No. 4.) On January
24, 2020, Magistrate Judge Daniel J. Stewart issued an order
directing respondent to respond to the petition. (Dkt. No. 6.)
Within that order, petitioner was warned that he was required
to promptly notify the Clerk's Office and all parties or their
counsel, in writing, of any change in his address; his failure
to do so will result in dismissal of his action. (*Id.*) This District
has expended considerable effort in order to familiarize pro
se litigants with the Local Rules of Practice by reminding
them of their obligations in various documents and orders
mailed to them, and by preparing a Pro Se Handbook that is
easily accessible on the court's website. In fact, copies of the

Handbook have been provided to all prison libraries in the
Northern District.

In relevant part, Local Rule 10.1(c)(2) provides:

> **[P]ro se litigants must immediately
> notify the Court of any change of
> address.** Parties must file the notice
> of change of address with the Clerk
> and serve the same on all other parties
> to the action. The notice must identify
> each and every action to which the
> notice shall apply.

In turn, Local Rule 41.2(b) provides that the "[f]ailure to
notify the Court of a change of address in accordance with
L.R. 10.1(c)(2) may result in the dismissal of any pending
action."

In fact, while this litigation has been pending, petitioner has
acknowledged this obligation by filing or advising a change
of address on one prior occasion. (Dkt. No. 22.)

Local Rule 41.2(b) mirrors Rule 41(b) of the Federal Rules
of Civil Procedure, which affords the court discretionary
authority to dismiss an action because of the failure to
prosecute or to comply with any order of the court. *See Link
v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962); *see also Lyell
Theater Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).

On August 5, 2021, Judge Stewart issued a Report-
Recommendation and Order. (Dkt. No. 23.) Petitioner's copy
was mailed to his last known address, but was marked
return to sender, no mail receptacle, unable to forward. (Dkt.
No. 24.) The court utilized New York State Department
of Corrections and Community Supervision Inmate Lookup
website to determine that petitioner was released from
custody on June 13, 2021.

For the orderly disposition of cases, it is essential that
litigants honor their continuing obligation to keep the court
informed of address changes. *See Michaud v. Williams*, No.
98CV1141LEKGLS, 1999 WL 33504430, at \*1 (N.D.N.Y.
Nov. 5, 1999) (citing *Fenza v. Conklin*, 177 F.R.D. 126
(N.D.N.Y. 1998)).

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 32 of 85

**\*2** It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty. Corr. Facility Staff,* No. 95-CV-1525, 1996 WL 172699 (N.D.N.Y. Apr. 10, 1996) (quoting *Perkins v. King,* No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985)).

As a matter of course, courts in this District have dismissed actions when litigants have failed to abide by either the Local Rules or orders related to address changes, and have subsequently failed to prosecute their actions. *See Williams v. Faulkner,* No. 95-CV-741, 1998 WL 278288, at \*1 (N.D.N.Y. May 20, 1998); *Fenza,* 177 F.R.D. at 126; *Dansby,* 1996 WL 172699.

Although the court concludes that it would be an appropriate exercise of discretion to dismiss petitioner's action at this juncture for failure to notify the court of his address change or to prosecute his action, it nonetheless affords petitioner additional time, until September 14, 2021, to comply with this Order.

Accordingly, it is hereby

**ORDERED** that petitioner is granted until September 14, 2021 to submit his current address to the court, or verify that his mailing address is as listed in the caption of this order and file any objections to Judge Stewart's Report-Recommendation and Order, (Dkt. No. 23), and it is further

**ORDERED** that, if petitioner fails to comply, the court will *sua sponte* dismiss this action for failure to notify the court of his address change, for failure to prosecute, and failure to comply with this Order; and it is further

**ORDERED** that the Clerk serve this Decision and Order on the petitioner at his last know address and on all other parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3856738

---

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 33 of 85
Kevilly v. Connell, Not Reported in F.Supp.2d (2009)
2009 WL 2868219

2009 WL 2868219
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Roman KEVILLY, Petitioner,
v.
Susan A. CONNELL, Superintendent,
Oneida Correctional Facility, Respondent.

Civil Action No. 9:09–CV–270 (GLS).
|
Aug. 31, 2009.

**Attorneys and Law Firms**

Roman Kevilly, Rome, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General,
Thomas B. Litsky, Esq., Ass't Attorney General, New York,
NY, for Respondent.

*ORDER*

GARY L. SHARPE, District Judge.

**I. Introduction**

 **\*1** Petitioner Roman Kevilly is a New York State prison
inmate as a result of a 1996 conviction in Nassau County
Court of first degree robbery and second degree kidnapping.
He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254
in which he challenges a determination made by the Oneida
Correctional Facility's Time Allowance Committee ("TAC")
on or about February 14, 2008, to withhold six years of good
time credits. *See* Dkt. No. 1 at 2–7.

Upon review of the petition, it appeared that Petitioner's
direct appeal was still pending in state court and, accordingly,
Petitioner had not properly exhausted his claims in state
court. In an Order dated March 30, 2009, the Court directed
Respondent to file a response to the petition, limited to
whether Petitioner properly exhausted his claims. Dkt. No. 4
at 4–7. On May 29, 2009, Respondent submitted the required
response and relevant state court records. For the reasons set
forth below, the petition is **dismissed without prejudice.**

**II. Facts**

According to the record, the TAC required Petitioner to
appear before it on February 8, 2008. At the hearing, the
TAC recommended that six years of good time credits be
withheld because Petitioner failed to successfully complete
the Aggression Replacement Training program ("ART"). *See*
Dkt. No. 1, Ex. C. The Superintendent confirmed the TAC's
recommendation on February 28, 2008, and the decision was
affirmed by the Commissioner's designee on March 3, 2008.
*Id.* [1]

[1]     On June 30, 2008, Petitioner filed a federal petition
        for a writ of habeas corpus pursuant to 28 U.S.C.
        § 2254 in this Court in which he challenged the
        same loss of good time credits at issue in this
        case. *See Kevilly v. Connell,* No. 08–CV–682, Dkt.
        No. 1 (Hurd, J.). In an Order dated July 15, 2008,
        Petitioner was directed to file an amended petition
        in which he presented information demonstrating
        that he had properly exhausted his claims in state
        court. *See* Dkt. No. 3. In a letter motion dated
        July 22, 2008, Petitioner admitted that he had not
        exhausted his claim in state court. He requested
        either a stay of his petition or a dismissal without
        prejudice so that he could exhaust his claims in
        state court. *See* Dkt. No. 4. In an Order dated July
        29, 2008, Petitioner's request for a stay was denied
        because his petition was not a "mixed" petition
        containing both exhausted and unexhausted claims,
        and his motion to dismiss the petition without
        prejudice was granted. *See* Dkt. No. 5.

Petitioner filed a state *pro se* petition for a writ on habeas
corpus in Oneida County Supreme Court dated July 23,
2008. *See* Dkt. No. 1, Ex. A. Petitioner alleged that he was
denied due process and equal protection because the TAC
recommended that his good time credits be withheld without
conducting a hearing, and without bringing any charges of
misconduct against him. *Id.* at 2–4. Petitioner also stated
that his failure to complete the ART program should not
have resulted in the loss of good time credits because (1)
participation in the program violated Petitioner's right against
self-incrimination under the Fifth Amendment, and (2) the
ART program was optional, not court-mandated. *Id.* at 5–6.

The respondent answered the petition and argued that the
TAC's decision to withhold good time credits was made in
accordance with the law, and that under Correction Law §
803(1)(a), good time credits could properly be withheld based
upon an inmate's failure to complete assigned programs.

2009 WL 2868219

Resp't. Mem. at 6. Petitioner filed a Reply. *See* Dkt. No. 1, Ex. A; Dkt. No. 7, Ex. A.

Petitioner's *pro se* habeas corpus petition was apparently converted into an Article 78 proceeding. *See* Dkt. No. 1, Ex. B. In an Order dated October 7, 2008, the Oneida County Supreme Court denied the petition. *Id.*

Petitioner filed a Notice of Appeal in the Appellate Division, Fourth Department, dated October 15, 2008. *Id.* In an Order dated December 23, 2008, the Fourth Department granted Petitioner's motion to "proceed as a poor person," and ordered the Clerk of Oneida County to provide him with a stenographic copy of the minutes upon which the appeal is based. *Id.*

 **\*2**  By letter dated February 3, 2009, Principal Appellate Court Attorney Lawrence X. Dalton, of the Fourth Department, returned Petitioner's appellate briefs to him. *See* Dkt. No 7, Ex. B. Petitioner was advised in the letter that to perfect his appeal, he must "file the original stipulated or settled record, 10 copies of a brief and proof of service of one copy of the record and brief." *Id.* (citing N.Y. COMP.CODES R. & REGS tit. 22, § 1000.3(c) (2)). [2]

[2]     The Rules of the Appellate Division, Fourth Department, are codified N.Y. COMP.CODES R. & REGS. tit. 22, § 1000.1 *et seq.*

In a letter dated February 8, 2009, Petitioner wrote to the Respondent and enclosed a copy of a stipulation of the record. Dkt. No. 5, Ex. 1. Petitioner asked that the Respondent sign the stipulation and return it to him. *Id.*

In a letter dated February 12, 2009, Assistant Solicitor General Robert M. Goldfarb acknowledged receipt of Petitioner's February 8, 2009 letter and stipulation. Dkt. No. 5, Ex. 2. Goldfarb informed Petitioner that in order for him to stipulate to the record on appeal, he needed Petitioner to provide him with a "complete copy of the proposed record that [he] can review for completeness." *Id.*

On February 14, 2009, Petitioner sent to the Fourth Department "copies of the Settled Record, i.e., (Notice of Entry), and proof of service dated January 29, 2009., and 10 copies of Appellants Brief, (One Original, and 9 copies as directed by your office letter dated February 3, 2009." Dkt. No. 7, Ex. C.

By letter dated February 19, 2009, Principal Appellate Court Attorney Dalton again returned Petitioner's briefs to him. Dkt. No. 5, Ex. 3; Dkt. No. 7, Ex. D. Petitioner was informed that to perfect his appeal, he must "file the original stipulated or settled record, 10 copies of a brief and proof of service of one copy of the record and brief." *Id.* Petitioner was advised to refer to Rules 1000.3 and 1000.4 to assist him in compiling the record. *Id.*

To date, Petitioner has not perfected his appeal.

### III. *DISCUSSION*

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless there is an "absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). This statute "embodies the long-established principle that a state prisoner seeking federal habeas review of his conviction ordinarily must first exhaust available state remedies." *Daye v. Att'y Gen. of State of N. Y.,* 696 F.2d 186, 190 (2d Cir.1982) (en banc) (citations and footnote omitted). See *Jimenez v. Walker,* 458 F.3d 130, 148–49 (2d Cir.2006) (the exhaustion requirement " 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings ....") (quoting *Rose v. Lundy,* 455 U.S. 509, 518 (1982)), *cert. denied,* 549 U.S. 1133 (2007).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)); *Daye,* 696 F.2d at 191. The requirement that the state courts be given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard,* 404 U.S. at 278; *Daye,* 696 F.2d at 189–90. Finally, the petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of petitioner's claims. *Dean v. Smith,* 753 F.2d 239, 241 (2d Cir.1985); *Barton v. Fillion,* No. 03–CV–1377, 2007 WL 3008167, at *5

(N.D.N.Y. Oct. 10, 2007) (Hurd, J., adopting Report–Rec. of DiBianco, M.J.).

**\*3** In this case, the exhaustion requirement has not been met because there is nothing in the record before this Court to indicate that Petitioner has perfected his appeal of the denial of his Article 78 petition in the Appellate Division. Nonetheless, the Court must consider whether there is an absence of available State corrective process (e.g., where there is no further state proceeding for a petitioner to pursue) or whether circumstances exist that render that state court process ineffective to protect Petitioner's rights (e.g. where further pursuit would be futile). 28 U.S.C. § 2254(b) (1)(B) (i), (ii); *Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000), *cert. denied* 532 U.S. 943 (2001). [3]

[3]    Under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), in certain circumstances, federal courts have discretion to review and deny on the merits any unexhausted claims that are "plainly meritless" (*Rhines v. Weber,* 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski,* 421 F.Supp.2d 619, 621 (W.D.N.Y.2006); *Wheeler v. Phillips,* No. 05–CV–4399, 2006 WL 2357973 at \*5 (E.D.N.Y. Aug. 15, 2006); 28 U .S.C. § 2254(b)(2). Stated another way, unexhausted claims may be reviewed on the merits *only* if the habeas court is going to deny the entire petition. 28 U.S.C. § 2254(b)(2).

Petitioner argues that any further action in the state courts would be futile because: (1) the attorney general's office has refused to settle the record in this case; (2) the Appellate Division, Fourth Department, refuses to docket the case as a perfected appeal even though he sent the required copies of the appellate briefs and a Notice of Entry which "settled the record by original order"; (Dkt. No. 1, at 3 ¶ 13; Dkt. No. 7 at 5, ¶ 20); and (3) since the October 9, 2008 Order denying his petition is "incomplete in its findings, failing to address the petition of habeas corpus," it is unappealable. Dkt. No. 1 at 4, ¶ 14.

There is no evidence in the record before this Court that the New York Attorney General's Office or the state court Appellate Division have acted in a manner that would deny Petitioner access to the courts or thwart his efforts to appeal. In order to properly perfect a civil appeal in which poor person relief has been granted, in addition to filing the required appellate briefs and the complete record on appeal,

an appellant must file an "original stipulation to the record executed by all parties or their attorneys or the original order of settlement[.]" N.Y. COMP.CODES R. & REGS. tit. 22, § 1000.3(c)(2). Pursuant to section 1004.4(a)(1), parties may either stipulate to the correctness of the contents of the complete record, or, if the parties are unable to agree and stipulate, "the contents of the record [4] must be settled by the court from which the appeal is taken" and it is the obligation of the appellant to "make the application to settle the record." *Id.* at § 1000.4(a)(1)(i), (ii).

[4]    Section 1000.4(a)(2) lists the documents that comprise a "complete record on appeal." N.Y. COMP.CODES R. & REGS. tit. 22, § 1000.4(a)(2).

Petitioner forwarded a proposed copy of a stipulation to the respondent in the state court action, but he did not also provide the respondent with a complete copy of the record. *See* Dkt. No. 5, Exs. 1–2. Respondent indicated that he needed a complete copy of the proposed record in order to stipulate to it, and would promptly review the record once Petitioner forwarded him a copy. *Id.* at Ex. 2. Petitioner did not do so.

Petitioner is correct that he may submit to the Appellate Division either a stipulation to the record or an original order of settlement of the record. *See* Dkt. No. 7 at 5. However, his argument that a Notice of Entry of the judgment against him was sufficient to qualify as an original order of settlement is erroneous. As noted above, pursuant to section 1004(a)(1)(ii), if the parties cannot agree to stipulate to the contents of the record, the appellant must apply to the court from which the appeal was taken and ask the court to settle the record. N.Y. COMP.CODES R. & REGS. tit. 22 § 1004(a)(1)(ii). Petitioner did not do so in this case.

**\*4** Finally, Petitioner's argument that the October 9, 2008 Order of the Oneida County Supreme Court denying his petition is incomplete because it failed to address the petition of habeas corpus and it is therefore unappealable, is without merit. *See* Dkt. No. 1 at 4, ¶ 14. In Petitioner's state court petition for a writ of habeas corpus, he challenged the TAC's decision to withhold good time credit and sought restoration of those credits. *See* Dkt. No. 1, Ex. A. Under New York law, the proper way to challenge the loss of good time credits is the commencement of an Article 78 proceeding and exhaustion of that proceeding in the state courts. *See Van Gorder v. Boucaud,* No. 08–CV–442, 2008 WL 2858678, \*1 (N.D.N.Y. Jul. 22, 2008) (citing *Scales v. New York State Div. of Parole,* 396 F.Supp.2d 423, 428 (S.D.N.Y.2005)). If a petitioner files

an Article 70 petition for a writ of habeas corpus challenging the loss of good time credit, a state court has discretion to convert the petition into an Article 78 proceeding. *See Zaire v. West*, No. 04–CV–6217L, 2008 WL 4852677, *3 n. 3 (W.D.N.Y. Nov. 6, 2008) (citing *People ex rel. Hawkins v. Scully*, 151 A.D.2d 527, 528 (2d Dept.1989)); N.Y. C.P.L.R. § 103(c) ("a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution. If the court finds it appropriate in the interests of justice, it may convert a motion into a special proceeding[.]"). A prisoner's incarceration is not considered unlawful, thus qualifying for state habeas corpus relief, "unless and until the withheld good time is restored, which can only be obtained through Article 78. Only if release is denied after restoration of good time through an Article 78 proceeding will an Article 70 proceeding lie." *Perry v. Woods*, No. CV–07–0341, 2007 WL 2973585, *3 (E.D.N.Y. Oct. 9, 2007) (collecting state court cases). Thus, the state court's apparent conversion of Petitioner's habeas petition into an Article 78 proceeding was not procedurally erroneous under New York law. [5]

[5]     The Court makes no determination regarding the correctness of the state court's decision to deny Petitioner's claims, and also makes no determination of the merits of the claims raised by Petitioner in his pending habeas petition.

In light of the foregoing, Petitioner failed to submit the required documents necessary to properly perfect his appeal. The Appellate Division's requirement that the correct documents be submitted in order for the appeal to be perfected does not constitute a denial of access to the courts. That is especially so in light of the fact that the Appellate Division referred Petitioner to the sections of the law that governed how to properly perfect the appeal and how to compile the record. *See* Dkt. No. 5, Ex. 3; Dkt. No. 7, Exs. B, D.

Furthermore, it would not be futile for Petitioner to return to state court to perfect his appeal. Under New York law,

> A civil appeal, except an appeal taken pursuant to the Family Court Act in which this court has assigned counsel, shall be deemed abandoned and dismissed, without the necessity of an order or motion, when an appellant has failed to perfect an appeal within

nine months of service of the notice to appeal.

**\*5** N.Y. COMP.CODES R. & REGS tit. 22, § 1000.12(b). *See* Dkt. No. 6, Resp't Mem. at 11. Petitioner filed a Notice of Appeal on October 15, 2008. Dkt. No. 1, Ex. B. Since Petitioner's appeal has not been perfected, it may have been deemed abandoned under section 1000.12(b) on or about July 15, 2009. [6]

[6]     Petitioner submitted a letter to the Court dated August 27, 2009, in which he asks that the Court take notice that, by operation of law, his appeal is no longer pending because nine months have elapsed. *See* Dkt. No. 9 (citing N.Y. COMP.CODES R. & REGS. tit. 22, § 1000.12(b)). Petitioner has provided no evidence to support that assertion. Petitioner further asserts that his appellate brief was stamped "filed", and attorney Dalton thus interfered with the appellate process. *Id.* A review of the first page of the appellate brief reveals that it was stamped "received" by the Appellate Division on February 2, 2009, and it appears to be stamped "filed" on February 19, 2009–the same date upon which Petitioner's briefs were returned to him because he had not properly perfected the appeal. *Id.*

However, section 1000.12 also provides that an appellant may file a "motion to vacate such an abandonment and dismissal" pursuant to 1000.13(g), which provides:

> When an appeal has been dismissed pursuant to section 1000.12(b) of this Part or an order of this court, a motion to vacate the dismissal may be made *within one year of the date of the dismissal* . In support of the motion, the appellant shall submit an affidavit demonstrating a reasonable excuse for the delay and an intent to perfect the appeal within a reasonable time and setting forth sufficient facts to demonstrate a meritorious appeal.

N.Y. COMP.CODES R. & REGS. tit. 22, § 1000.13(g) (emphasis added). The Court recognizes that the Appellate Division ultimately might determine that Petitioner's delay in perfecting his appeal, and his corresponding conduct, constitute abandonment, leading to dismissal of the appeal, and that the Appellate Division might not vacate any finding of abandonment upon motion by Petitioner under section 1000.13(g). Nevertheless, this state court process should be pursued before this Court can find that Petitioner has exhausted available state court remedies.

Under these circumstances it might be argued that the petition should be stayed while Petitioner returns to state court. *See Rhines v. Weber,* 544 U.S. 269, 277 (2005) (stating that when a district court is presented with a "mixed petition" containing both exhausted and unexhausted claims, the court may dismiss the petition without prejudice or retain jurisdiction over the petition and stay further proceedings pending exhaustion of state remedies); *Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.2001) (district courts have authority to stay a "mixed" petition while state court remedies of unexhausted claims are pursued). Here, however, there are no exhausted claims in the petition, thus distinguishing this case from *Rhines* and *Zarvela.* This Court also agrees that federal courts should not

> be turned into a "jurisdictional parking lot" for unexhausted claims. *Baity v. McCary,* No. 02 Civ. 1817, 2002 WL 31433293, at *2 (S.D.N.Y. Oct. 31, 2002) (internal citations omitted). Such a holding would undermine the spirit of the Supreme Court's holdings in both *Coleman* and *Duncan,* which encourage habeas petitioners to exhaust their claims before coming to federal court. *Id.* at *1.

*Hust v. Costello,* 329 F.Supp.2d 377, 380 (E.D.N.Y.2004).

Additionally, the timeliness of any subsequent habeas petition under the AEDPA appears not to be a concern in this case. Under the AEDPA, federal habeas petitions challenging a judgment of a state court are subject to a one-year statute of limitations. The one-year period generally begins to run from the date on which the state criminal conviction, or, in this case,

the challenged state court decision affirming the withholding of good time credits, became final by the conclusion of direct review or by the expiration of the time to seek direct review.[7] *See* 28 U.S.C. § 2244(d) (1)(A). Petitioner's ability to pursue his appeal in the Appellate Division remains viable, and thus direct review of Petitioner's claims in the state courts has not yet concluded. Thus, the one-year statute of limitations during which to file a habeas petition would not appear to have begun to run. *Foster v. Spitzer,* No. 07–CV–0103, 2007 WL 1531904, at *2 (N.D.N.Y. Mar. 5, 2007) (Kahn, J) (citing *Rhines,* 544 U.S. at 276–78 and *Zarvela,* 254 F.3d at 378) ("[b]ased upon the information set forth [in his petition], it appears that Petitioner will have ample opportunity to timely file a § 2254 habeas Petition setting forth his claims once he has exhausted his State court remedies.").[8]

> [7] Other dates from which the limitations period may start to run are (1) the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, (2) the date on which the Supreme Court initially recognizes the constitutional right on which the petitioner bases his habeas application if the right is newly recognized and made retroactively applicable, and (3) the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). *See* 28 U.S.C. § 2244(d) (1)(B), (C), and (D).

> [8] To avoid any problems with the statute of limitations, Petitioner should file any renewed § 2254 habeas petition promptly after the final disposition of his direct appeal in state court.

**\*6** Moreover, if Petitioner's claims in the Appellate Division are unsuccessful, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. *Burton v. Stewart,* 549 U.S. 147, 155 (2007) (citing *Slack v. McDaniel,* 529 U.S. 473, 478 [ (2000) ] ("[A] habeas petition which is filed after an initial petition was dismissed *without adjudication on the merits* for failure to exhaust state remedies is not a 'second or successive' petition' as that term is understood in the habeas corpus context. (emphasis added)). *See also Gandarilla v. Artuz,* 322 F.3d 182, 185–876 (2d Cir.2003) (citing *Slack* ) and *Bell v. Murray,* 340 F.Supp.2d 323, 328 (W.D.N.Y.2004).

2009 WL 2868219

**WHEREFORE,** based upon the foregoing, it is hereby

**ORDERED,** that the Petition (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies, and it is

**ORDERED,** that the Court makes no determination regarding the merits of any of the claims raised in the petition; and it is

**ORDERED,** that no certificate of appealability shall issue; and it is

**ORDERED,** that the Clerk of the Court serve a copy of this decision and order upon Petitioner and Respondent in accordance with the Local Rules.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868219

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2858678

2008 WL 2858678
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Fred E. VAN GORDER, Petitioner,
v.
A. BOUCAUD, et al., Respondents.

No. 9:08–CV–0442 (NAM)(DEP).
|
July 22, 2008.

**Attorneys and Law Firms**

Fred E. Van Gorder, Altona, NY, pro se.

### DECISION and ORDER

NORMAN A. MORDUE, Chief Judge.

**I. Background**

 *1  The Clerk has sent to the Court an amended petition for a writ of habeas corpus brought by petitioner Fred E. Van Gorder pursuant to 28 U.S.C. § 2254. Dkt. No. 4. Plaintiff filed the amended petition in accordance with this Court's order dated May 20, 2008 ("May Order").[1] Dkt. No. 3. In his original petition, Van Gorder complained of the alleged unconstitutionality of several parole determinations arising in February of 2003, February of 2005, and February of 2007, which resulted in the denial of his parole. Dkt. No. 1 at 6–7. Additionally, plaintiff alleged that he was improperly denied five (5) years of Good Time Credit ("GTC") for refusing to participate in the Sex Offender Treatment Program. *Id* . at 7. Given that petitioner failed to contend that he commenced an Article 78 proceeding or any other state court challenge to the parole determinations or the denial of GTC, the Court advised him to file an amended petition demonstrating his attempts, if any, to exhaust his state court remedies. Dkt. No. 3 at 4. The Court further advised petitioner that his failure to file a response detailing which state court remedies he pursued, the date(s) on which he properly filed such applications, and when they were denied, would result in the dismissal of this action. *Id.*

[1]    The Court notes that Van Gorder has amended his original petition to set forth allegations purportedly

arising under both 28 U.S.C. § 2254 and 28 U.S.C. § 2241. *See* Amended Petition (Dkt. No. 4) at 1. This particular amendment, however, is not significant in terms of petitioner's overall failure to comply with this Court's May Order.

**II. Amended Petition**

In his amended petition, Van Gorder appears to concede that he indeed failed to exhaust his state court remedies prior to commencing the present action. Rather, petitioner contends that the Court should consider that his administrative appeals satisfied the exhaustion requirement because an Article 78 proceeding was not capable of providing him with the remedy he seeks, *i.e.,* release from incarceration. Amended Petition (Dkt. No. 4) at 6–9. The Court disagrees.

"To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78. If the Article 78 petition is denied, the petitioner must appeal that denial to the highest state court capable of reviewing it." *Scales v. New York State Div. of Parole,* 396 F.Supp.2d 423, 428 (S.D.N.Y.2005) (internal quotation marks and citations omitted). "The Supreme Court has cautioned that an exception to the exhaustion requirement is appropriate only where there is no opportunity to obtain redress in state court or where the state corrective procedure is so clearly deficient that any attempt to obtain relief is rendered futile." *Oliphant v. Dep't of Corr.,* No. 3:04CV470, 2006 WL 2432276, at *4 (D.Conn. Aug. 18, 2006) (citing *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981)). Indeed, as one district court within this Circuit has noted, "when a prisoner's *diligent efforts* to exhaust in the state court have been unduly frustrated ... the prisoner need not take additional steps in the state court before he may be heard in the federal courts." *Crawford v. Artuz,* 116 F.Supp.2d 442, 445 (S.D.N.Y.2000) (emphasis added).

 *2  The record is devoid of any evidence to support an exception to the exhaustion requirement in this instance. Petitioner had the opportunity to redress his parole determinations and loss of GTC through the commencement of an Article 78 proceeding but failed to make a concerted effort to this end. Initially believing that an Article 78 proceeding could grant release, petitioner indicates that he sought assignment of counsel to assist him in commencing the proceeding from the Clinton County Court, which subsequently assigned Cheryl Maxwell, Esq. to him. Amended Petition (Dkt. No. 4) at 8. According to petitioner,

Ms. Maxwell has abandoned petitioner and refuses to respond to his inquiries. *Id.* Petitioner, however, admits that he could file an Article 78 proceeding *pro se,* although he assumes that the statute of limitations has foreclosed his window of opportunity in this regard. Amended Petition (Dkt. No. 4), Attachment at 13. Whether a party ultimately prevails during the appellate process "is separate and distinct" from whether a habeas petitioner has actually attempted to exhaust his state court remedies. *Jenkins v. Duncan,* No. 02–CV–673, 2003 WL 22139796, at *5 (N.D.N.Y. Sept. 16, 2003) (Sharpe, M.J.), *adopted,* No. 02–CV–673, Dkt. No. 18 (N.D.N.Y. Jan. 20, 2004) (Kahn, D.J.). Regardless of whether Van Gorder thought the commencement of an Article 78 proceeding would be barred by the statute of limitations, it was incumbent upon him to undertake diligent efforts to initiate the proceedings prior to commencing the instant habeas petition. Petitioner has not convinced this Court that the state corrective procedure is so clearly deficient that any attempt to obtain relief would be futile. The Court therefore concludes that the circumstances in this case warrant dismissal of Van Gorder's petition for failure to exhaust his available state court remedies.

**WHEREFORE,** it is therefore hereby

**ORDERED** that Van Gorder's petition is DISMISSED, without prejudice; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the petitioner in accordance with this Court's Local Rules.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2858678

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 3475304
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Carlos ABREU, Petitioner,

v.

John LEMPKE, Superintendent, Respondent.

No. 9:11–CV–0839 (LEK/CFH).
|
July 10, 2013.

**Attorneys and Law Firms**

Carlos Abreu, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Thomas B. Litsky, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendant.

## *ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on January 23, 2013, by the Honorable Christian F. Hummel, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Dkt. No. 26 ("Report–Recommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); *see also* L.R. 72.1(c). "If no objections are filed ... reviewing courts should review a report and recommendation for clear error." *Edwards v. Fischer,* 414 F.Supp.2d 342, 346–47 (S.D.N.Y.2006); *see also Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."); *Farid v. Bouey,* 554 F.Supp.2d 301, 306 (N.D.N.Y.2008).

The Court has granted Petitioner three substantial extensions of the time period for filing objections to the Report–Recommendation. *See* Text Order dated March 28, 2013; Dkt. Nos. 30; 32.[1] Petitioner has still not filed any objections.

After a thorough review of the Report–Recommendation and the record, the Court has determined that the Report–Recommendation is not subject to attack for clear error or manifest injustice.

[1]    The most recent Order granting Petitioner an extension informed him that "no further extensions will be granted by the Court." Dkt. No. 32.

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 26) is **APPROVED** and **ADOPTED in its entirety;** and it is further

**ORDERED,** that the Amended Petition (Dkt. No. 8) for a writ of habeas corpus is **DENIED** and DISMISSED; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order on the parties in accordance with the Local Rules; and it is further

**ORDERED,** that no certificate of appealability shall be issued in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2).[2]

[2]    *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) ( "[Section] 2253 permits the issuance of a [certificate of appealability] only where a petitioner has made a 'substantial showing of the denial of a constitutional right.' " (citation omitted)).

**IT IS SO ORDERED.**

## **REPORT–RECOMMENDATION AND ORDER** [1]

[1]    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Petitioner pro se Carlos Abreu ("Abreu") is currently an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS") at Upstate Correctional Facility ("Upstate"). On May 14, 1999,

after a non jury trial in the New York County Supreme Court, Abreu was convicted of two counts of assault in the firstdegree, attempted rape in the first-degree, and reckless endangerment in the seconddegree. *See People v. Abreu,* 283 A.D.2d 194, 194 (1st Dep't 2001). Abreu was sentenced to, and is presently serving, concurrent terms of seven years for each count of assault, five years for attempted rape, and one year for reckless endangerment. *Id.* Abreu does not contest his judgment of conviction, but now seeks a writ of habeas corpus pursuant to 28 U.S .C. § 2254, challenging the loss of good time credits resulting from thirty-seven Tier III prison disciplinary hearings totaling approximately 217 months. *See* Am. Pet. (Dkt. No. 8) at 4; Pet'r's Mem. (Dkt. No. 8–1) at 4–38. For the reasons that follow, it is recommended that the amended petition be denied.

### I. Background

**\*2** In his memorandum of law in support of his amended petition, Abreu challenged thirty-seven disciplinary hearing dispositions, listing their dates along with the dates of when the Commissioner affirmed them. Abreu also submitted to the Court a list of ninety-six state court cases indicating himself as a party. While Abreu failed to inform the Court which case corresponds to which disciplinary hearing, respondent contacted DOCCS's counsel in an effort to match the Article 78 petitions to the challenged hearing dispositions. Resp't's Mem. (Dkt. No. 25) at 25. Further, respondent also conducted searches in the Office of the Attorney General's database and litigation files involving Abreu, as well as Westlaw and the New York State Unified Court System eCourts database, in an attempt to determine whether Abreu filed any actions concerning the dispositions at issue.[2] *Id.* The following incorporates respondent's findings submitted as exhibits to the Court.

[2]  NEW YORK STATE UNIFIED COURT SYSTEM, ECOURTS, http:// iapps.courts.state.ny.us/webcivil/ecourtsMain (last visited January 22, 2013).

### A. Hearing Dispositions Between
### September 18, 2002 and July 18, 2008

Abreu challenges twelve disciplinary hearing dispositions dated between September 18, 2002 and July 18, 2008. Misbehavior reports were lodged against Abreu for exhibiting

lewd conduct, harassment, assaulting a staff member, interfering with an employee, failing to follow direct orders, creating a disturbance, committing an unhygienic act, littering, and wasting food. Pet'r's Mem. ¶¶ 1–11. Abreu was found guilty of all charges and penalized with a total loss of sixty-six months of good time credits. *Id.* The Commissioner affirmed the penalties between November 14, 2002 and September 17, 2008. *Id.*

On August 26, 2008, proceeding *pro se,* Abreu filed a New York Civil Practice Law and Rules ("CPLR") Article 78 petition ("Article 78") in the Albany County Supreme Court, challenging what appears to be twenty-five prison hearing dispositions, which included the twelve dispositions mentioned above. Dkt. Nos. 22–1 at 3, 22–3 at 3. By Decision and Order, the Albany County Supreme Court dismissed the Article 78, permitting Abreu to serve an amended petition complying with pleading requirements pursuant to CPLR § 3014. Dkt. No. 22–3 at 4. On March 20, 2009, Abreu filed an amended Article 78. Dkt. No. 22–4. Although the copy of the amended Article 78 is difficult to comprehend, it appears that Abreu claimed that: (1) his due process rights under the Fifth and Fourteenth Amendments were violated because Special Housing Unit ("SHU") sentences were imposed;[3] (2) his right to be free from cruel and unusual punishment under the Eighth Amendment was violated in connection with the loss of good time credits; (3) without providing factual support, his equal protection rights under the Fourteenth Amendment were violated; and (4) the imposition of good time credit penalties was retaliatory conduct for his filing of grievances. *Id* . ¶¶ 11(C), 13, 17–19, 26.

[3]  SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y. COMP.CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

By Order dated May 29, 2009, the Albany County Supreme Court dismissed Abreu's amended Article 78 petition in its entirety. Dkt. No. 22–6. The court dismissed eleven of the twelve dispositions as untimely pursuant to CPLR § 217(1).[4] *Id.* at 5. The remaining disposition dated July 25, 2008 was dismissed because the court found that Abreu's "unspecified and conclusory allegations ... [lacked] factual support ... [and]

still d[id] not satisfy basic pleading requirements." *Id.* (citing *Johnson v. Goord,* 290 A.D.2d 844, 844–45 (3d Dep't 2002)).

| 4 | Generally, an Article 78 proceeding "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner...." CPLR § 217(1). |
|---|---|

**\*3** Abreu appealed the May 29, 2009 decision to the Appellate Division, Third Department, challenging, in relevant part, the dismissal of his petition based on timeliness and the failure to conform to statutory pleading requirements. Dkt. No. 22–7 at 3–5. By Memorandum and Order dated April 1, 2010, the Appellate Division found that Abreu's challenges to his disciplinary dispositions were properly dismissed. Dkt. No. 22–9 at 3. On a separate claim concerning the denial of Abreu's grievance challenging the unavailability of sex offender treatment programs in prison, the Appellate Division, finding that Abreu had alleged a cause of action, remitted the claim to the lower court for further disposition.[5] *Id.* Abreu appealed the decision to the New York State Court of Appeals as of right. Dkt. No. 22–10. On September 21, 2010, the Court of Appeals dismissed the appeal "upon the ground that the order appealed from does not finally determine the proceeding within the meaning of the Constitution." Dkt. No. 22–11 at 2.

| 5 | Upon the order to remit the claim to the supreme court, the supreme court found "that the denial of [Abreu's] grievance was well founded and completely rational," and that "[Abreu's] request for mental health services and counseling ha[d] been satisfied." Dkt. No. 22–13 at 3–4. For the reasons discussed *infra,* the claim is statutorily tolled. Additionally, because this claim did not affect or result in Abreu's loss of good time credits, the claim is not pertinent to Abreu's habeas petition before this Court. |
|---|---|

**B. Hearing Disposition Dated April 4, 2009**

A misbehavior report dated March 23, 2009 was lodged against Abreu for failure to follow a direct order, destruction of state property, and failure to comply with search and frisk procedures. Pet'r's Mem. ¶ 12. On April 4, 2009, Abreu was found guilty of all charges and penalized with a three-month loss of good time credits. *Id.* On May 29, 2009, the Commissioner affirmed the disposition. *Id.*

On September 10, 2009, proceeding pro se, Abreu filed an Article 78 in the Albany County Supreme Court.[6] *See* Dkt. No. 22–22. Abreu argued that his due process rights were violated because the hearing was held outside his presence. Dkt. No. 22–24 at 3. By Decision, Order, and Judgment dated February 10, 2010, the court dismissed the petition, finding that the hearing officer properly continued the hearing in Abreu's absence because Abreu had "refused to attend the ... hearing despite being advised of the consequences of not attending." *Id.* (citing *Morris v. Goord,* 50 A.D.3d 1327, 1327–28 (3d Dep't 2008) (collecting cases)).

| 6 | Respondent was unable to locate Abreu's Article 78 petition for the particular hearing disposition, nor did Abreu provide the Court with a copy of it. Resp't's Mem. at 15. However, respondent submitted to the Court filings related to the Article 78 proceeding. Dkt. Nos. 22–22, 22–23. |
|---|---|

Abreu appealed the February 10, 2010 decision to the Appellate Division, arguing that his due process rights were violated when the underlying accusations of the misbehavior report were "speculative" and he was denied: (1) an opportunity to attend it; (2) an impartial hearing officer; (3) the opportunity to present a defense at his hearing; (4) an inmate assistant to help him investigate his defense; (5) a Spanish interpreter; and (6) relevant documentary evidence.[7] Dkt. No. 22–25 at 52–64. By Memorandum and Order dated May 19, 2011, the Appellate Division found "no evidence that [Abreu] was deprived of his right to attend the disciplinary hearing[ ]. At [the] disciplinary hearing, the escort officer[ ] testified that [Abreu] refused to attend, despite being advised that the hearing[ ] would proceed in his absence." Dkt. No. 22–28 at 4 (citations omitted). Because of his failure to attend the hearing, Abreu "has failed to preserve any procedural challenges to the manner in which those hearings were conducted." *Id.* (citing *McFadden v. Dubray,* 61 A.D.3d 1170, 1171 (2009); *Cooper v. Selsky,* 43 A.D.3d 1254, 1255 (2007), *appeal dismissed,* 9 N.Y.3d 1026 (2008)).

| 7 | Abreu did not present the claim that he was denied the opportunity to call witnesses, presumably because he did not attend the hearing. |
|---|---|

**\*4** Abreu sought to appeal the Appellate Division decision to the Court of Appeals. Dkt. No. 22–31. Respondent submitted a letter to the court, arguing that Abreu's application was untimely made. Dkt. No. 22–30. By Order dated November

15, 2010, the Court of Appeals dismissed the appeal as untimely. Dkt. No. 22–31 at 2–3.

### C. Hearing Disposition Dated August 6, 2009

On August 6, 2009, Abreu was found guilty of committing an unhygienic act, making threats, and creating a disturbance. Pet'r's Mem. ¶ 13. He was penalized with a six-month loss of good time credits. *Id.* On October 23, 2009, the Commissioner affirmed the disposition. *Id.*

On February 23, 2010, proceeding *pro se,* Abreu filed an Article 78 in the Albany County Supreme Court. Dkt. No. 22–32. Abreu argued that: (1) the underlying misbehavior report contained false statements and fabricated allegations; (2) the hearing officer failed to make certain that he refused to be present during the hearing; (3) the hearing officer threatened his witnesses to not attend the hearing and testify; (4) he was denied a Spanish-speaking inmate assistant; and (5) the assistant assigned to him refused to either interview certain witnesses or provide him with statements of such witnesses. *Id.* at 11–15.

By Decision, Order, and Judgment dated July 12, 2010, the court dismissed the Article 78 because the proceeding was time-barred and Abreu had waived any right to challenge procedural irregularities when he refused to attend the hearing. Dkt. No. 22–35 at 4–5 (citing *Grant v. Senkowski,* 95 N.Y.2d 605, 607–08 (2001); *Lebron v. Goord,* 288 A.D.2d 583, 584 (3d Dep't 2001)). Further, the court found that Abreu waived any claim based on the denial of a Spanish-speaking employee assistant because the claim was not raised in his administrative appeal. *Id.* at 5. Finally, any claims concerning Abreu's inmate assistant lacked factual support based on a review of the inmate employee assistance form and the production of Abreu's requested documents. *Id.*

On October 21, 2010, Abreu moved for leave to file a late notice of appeal. Dkt. No. 22–36. By Decision and Order dated January 10, 2011, the Appellate Division denied the motion. Dkt. No. 22–37. Abreu appealed that determination to the Court of Appeals, which was dismissed on May 13, 2011 for want of prosecution because Abreu failed to timely file necessary papers pursuant to the New York Rules of Court § 500.12. [8] Dkt. No. 22–39 at 3.

[8]    In relevant part, the court rules provide that, in the absence of a scheduling letter, an appellant must serve and file his papers within sixty days after he appeals "by (1) filing a notice of appeal in the place and manner required by CPLR 5515, [or] (2) entry of an order granting a motion for leave to appeal in a civil case...." N.Y. CT. R. § 500.12(b).

### D. Hearing Disposition Dated January 15, 2011

A misbehavior report dated January 15, 2011 was lodged against Abreu for exhibiting lewd conduct. Pet'r's Mem. ¶ 21. On February 3, 2011, Abreu was found guilty of the charge and penalized with a six-month loss of good time credits. *Id.* On April 22, 2011, the Commissioner affirmed the disposition. *Id.*

On July 16, 2011, proceeding *pro se,* Abreu filed an Article 78 in the Albany County Supreme Court. Dkt. No. 22–40. Abreu contended that the hearing officer denied him a Spanish-speaking interpreter and assistant and false accusations were made against him in retaliation for his filing of grievances against corrections staff. *Id.* at 21–22, 26–27, 37. Respondent moved for an order vacating the court's prior order granting Abreu *in forma pauperis* status. Dkt. No. 22–41 at 2. By Decision and Order dated November 4, 2011, the court found Abreu's numerous submissions lengthy and meritless and vacated its prior order. Dkt. No. 22–46 at 3. Abreu was granted sixty days to obtain an attorney's certificate of merit in order to move forward on that particular petition and avoid an automatic vacation. *Id.* at 4. However, the certificate of merit was never filed. *See* Litsky Decl. (Dkt. No. 24–1) ¶ 8.

### E. Hearing Disposition Dated April 7, 2011

**\*5**  A misbehavior report dated March 17, 2011 was lodged against Abreu for interference with an employee, harassment, failing to follow a direct order, and exhibiting lewd conduct. Pet'r's Mem. ¶ 24. On April 7, 2011, Abreu was found guilty of all charges and penalized with a three-month loss of good time credits. *Id.* On May 31, 2011, the Commissioner affirmed the disposition. *Id.*

On July 3, 2011, proceeding *pro se,* Abreu filed an Article 78 in the Seneca County Supreme Court. Dkt. No. 22–47. By Order, the proceeding was transferred to the Appellate Division, Fourth Department, for it raised an issue of

2013 WL 3475304

substantial evidence. Dkt. No. 22–48 at 2. By letter, the Office of the Attorney General informed the court that Abreu's disciplinary disposition was administratively reversed. Dkt. No. 22–49 at 2. By Order dated April 20, 2012, the Fourth Department dismissed this proceeding as moot. Dkt. No. 22–50 at 2.

### F. Remaining Hearing Dispositions

Abreu challenges other disciplinary hearing dispositions dated between June 3, 3010 and November 29, 2011, all of which resulted in loss of good time credits. Pet'r's Mem. ¶¶ 14–20, 22–23, 25–36. DOCCS's Special Housing/Inmate Disciplinary Programs Office confirmed with the Office of the Attorney General that the DOCCS Commissioner had affirmed those appeals listed as "pending" in Abreu's "Inmate Disciplinary History" and referenced in ¶¶ 31–35 of Abreu's memorandum of law. Dkt. No. 8–1 at 40–49; see Litsky Decl. ¶ 8. The disposition referenced in ¶ 36 of Abreu's memorandum and dated November 29, 2011 does not correspond to any entry in the Inmate Disciplinary History. There is nothing on the list of ninety-six state court case that matches each case to the dispositions at issue.

### G. Federal Habeas Petition

On June 28, 2011, Abreu filed a habeas petition with this Court. [9] Dkt. No. 1 at 69. On December 5, 2011, Abreu filed an amended petition, on the grounds that: (1) his due process rights under the Fourteenth Amendment were violated because charges lodged against him were false, he was denied the opportunity to both call witnesses and present documentary evidence, the hearing officers failed to consider his mental health issues and failed to act impartially, he was not provided the assistance of a Spanish-speaking interpreter nor an inmate assistant, and the denial of due process was conducted in retaliation for his filing of grievances and lawsuits against prison officials; and (2) his right to be free from cruel and unusual punishment under the Eighth Amendment was violated because as a result of those hearings he suffered a loss of good time credits. [10] Am. Pet. ¶¶ 40–49, 52, 55–57; Pet'r's Mem. at 4–38.

[9]      *Pro se* petitioners are deemed to have filed their habeas petitions on the date they turned them over to prison officials for mailing. *See Houston v. Lack,*

487 U.S. 266, 270 (1988); *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001) (extending the "prisoner mailbox rule" to habeas petitioners), *cert. denied,* 534 U.S. 886 (2001). To be cautious, this Court uses June 28, 2011, the date on Abreu's original petition, as the earliest possible date upon which Abreu could have turned over the petition to prison officials for mailing.

[10]      Of the thirty-seven Tier III dispositions, Abreu challenges only his loss of good time credits. Am. Pet. at 6; Pet'r's Mem. ¶ 58. Challenges, if any, to the conditions of confinement, such as the imposition of SHU confinement, are not cognizable on federal habeas review. *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973) (holding that a writ of habeas corpus is the sole remedy for a state prisoner challenging "the very fact or duration of his physical imprisonment...."); *Welch v. Mukasey,* 589 F.Supp.2d 178, 183 n. 3 (N.D.N.Y.2008) ("[Petitioner] also alleges that he is being illegally confined in the Special Housing Unit ("SHU") ... [That] claim[ ], to the extent that [it] challenge[s] conditions of confinement, [is] not cognizable on habeas review." (citation omitted)). Thus, such sanctions are not elaborated in this Report–Recommendation.

## II. Discussion

### A. Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a one-year statute of limitations period applies to the filing of federal habeas corpus petitions "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 374, 279–80 (2d Cir.2003). The statutory limitation period begins to run from the latest of four events:

**\*6** (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "A state prisoner challenging the loss of good time credits must bring an action for habeas corpus relief under 28 U.S.C. § 2254." *McPherson v. Burge,* No. 06–CV–1076 (GTS/VEB), 2009 WL 1293342, at *4 (N.D.N.Y.2009) (citations omitted) . [11] In this context, to determine the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence, the Second Circuit has concluded that the statute of limitations runs from when the petitioner "was notified that the administrative decision ... had become final." *Cook,* 321 F.3d at 280; *McPherson,* 2009 WL 1293342, at *5.

[11]    All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

The AEDPA statutory limitation may be tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. § 2244(d)(2). "[A]n application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." *McPherson,* 2009 WL 1293342, at *5 (citations omitted). However, when the state application has achieved final review, the date from which the statute of limitations begins to run does not reset. *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000).

Here, Abreu does not challenge the judgment of his conviction, there was no state action that impeded Abreu from seeking habeas relief, and there was no issue involving the retroactive application of a newly recognized constitutional right. Thus, the statute of limitations began to run from the date on which the factual predicate of Abreu's claims could have been discovered through the exercise of due diligence, which is when Abreu was notified that the administrative decisions he challenges in this amended petition have become final.

Applying the statute of limitations in the manner as indicated above, Abreu's claims based on the six dispositions referenced in ¶¶ 1–5 are time-barred. The Commissioner affirmed the six dispositions between November 14, 2002 and April 6, 2007. While the record does not clearly inform the Court when Abreu was notified of these decisions, "there is no allegation of undue delay or any reason to believe that [Abreu] was not notified at or about the time of the decision[s]." *McPherson,* 2009 WL 1293342, at *5. Because Abreu did not file the Article 78 until August 26, 2008, more than one year after he learned of these dispositions, Abreu's claims based on these dispositions are untimely. Thus, Abreu's claims are partially time-barred.

**\*7** A petitioner who has filed a petition past the one-year statute of limitation and does not have sufficient statutory tolling may still have his petition considered through equitable tolling. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.), *cert. denied,* 531 U.S. 840 (2000). The "petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001) (internal quotation marks and citations omitted). *Pro se* status or ignorance of the law does not merit equitable tolling. *Smith,* 208 F.3d at 18. In this case, Abreu does not contend, nor does the record reflect, that an extraordinary circumstance impeded Abreu from timely filing his petition. Nor did Abreu exercise reasonable diligence throughout the relevant Article 78 proceedings when Abreu appealed the first proceeding from a non-final order, the second proceeding was dismissed as untimely, and the third proceeding was dismissed for want of prosecution. Thus, it is recommended that the Court decline to invoke equitable tolling for the hearing dispositions referenced in ¶¶ 1–5.

Accordingly, Abreu's claims based on the dispositions referenced in ¶¶ 1–5 of the amended petition should be denied as time-barred.

## B. Mootness

Article III, Section 2, Clause 1 of the United States Constitution limits the jurisdiction of federal courts to resolve "cases" or "controversies." U.S. Const. Article III, § 2, cl. 1. "[T]he mootness doctrine ensures that ... [the petitioner's] standing persists throughout the life of a lawsuit." *Amador v. Andrews,* 655 F.3d 89, 99 (2d Cir.2011) (citing *Comer*

Abreu v. Lempke, Not Reported in F.Supp.2d (2013)

2013 WL 3475304

v. Cisneros, 37 F.3d 775, 798 (2d Cir.1994)). Thus, "if the basis for the claim has been rectified or if the [petitioner] is no longer subject to the challenged conduct, the claim is moot." Id. at 99–100 (citations omitted). Abreu makes his constitutional claims, in part, based on a hearing disposition dated April 7, 2011 that was administratively reversed on April 20, 2012. Pet'r's Mem. ¶ 24. Because Abreu seeks only to restore his good time credits from the April 7, 2011 disposition, which has been reversed, resulting in Abreu no longer be subjected to such a deprivation, Abreu's claims concerning that disposition is now moot.

Accordingly, Abreu's amended petition based on the disposition referenced in ¶ 24 of the amended petition should be denied.

### C. Exhaustion

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir.2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir.2001)). Specifically, § 2254(b)(1) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> **\*8** (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B).

The exhaustion principle is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). State remedies are "properly exhausted" when the petitioner has

"fairly presented" to the state court, O'Sullivan, 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir.1982) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194. The petitioner bears the burden of proving exhaustion. Colon v. Johnson, 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

In New York, a challenge to a prison disciplinary disposition must be made through an Article 78 petition, ordinarily in state supreme court. CPLR § 7802(b); [12] see, e.g., O'Sullivan v. Fischer, 87 A.D.3d 1229, 1229 (3d Dep't 2011) (deciding an inmate's challenge to prison disciplinary determinations through an Article 78); Ifill v. Fischer, 79 A.D.3d 1322, 1322 (3d Dep't 2010) (same). Upon receiving an adverse determination, the petitioner may seek an appeal by permission from the Appellate Division. CPLR § 5701(b) (1) & (c). If the petitioner receives an adverse ruling from the Appellate Division, then he may seek leave to appeal to the Court of Appeals. CPLR § 5602(a). When an Article 78 raises a "substantial evidence issue," the Article 78 must be transferred directly to the appropriate Appellate Division. CPLR § 7804(g).

[12]  Section 7802(b), in relevant part, provides that, "a proceeding ... may be maintained against an officer exercising judicial or quasi-judicial functions...." Id.

In this case, Abreu has failed to meet his burden in satisfying exhaustion requirements. First, in addition to being partially untimely, the dispositions referenced in ¶¶ 1–11 of the amended petition are only partially exhausted. While Abreu

has presented his First and Eighth Amendment claims in his Article 78 with regard to the loss of good time credits, Abreu failed to make a due process claim based on the grounds he asserted in his amended petition. In fact, Abreu only presented to the state court a due process claim based on his SHU confinement, which is not cognizable on federal habeas review. *Preiser,* 411 U.S. at 500. Thus, Abreu has failed to satisfy his burden in proving complete exhaustion of state remedies concerning these dispositions. Second, Abreu's claims based on the dispositions referenced in ¶¶ 12, 13 and 21 are unexhausted as those claims were never raised before the Court of Appeals. In the first instance, Abreu failed to timely file an application to the Court of Appeals. In the second instance, Abreu failed to timely appeal to the Appellate Division and the Court of Appeals dismissed the appeal from the Appellate Division for want of prosecution. In the third instance, Abreu failed to file a certificate of merit to continue the Article 78 proceeding. Therefore, Abreu has failed to satisfy his burden in proving complete exhaustion of state remedies concerning these dispositions. Lastly, the dispositions referenced in ¶¶ 14–20, 22–23, 25–36 must be considered unexhausted. Abreu does not provide any evidence proving that these dispositions were exhausted and respondent's efforts to prove their exhaustion or non-exhaustion came to no avail. Because Abreu has failed to meet his burden, and the record evidence does not reflect otherwise, Abreu's claims based on these dispositions are unexhausted.

**\*9** Nevertheless, a claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (collecting cases); *Aparicio,* 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.").

Here, the Court may "deem" exhausted certain hearing dispositions above. The Article 78 connected to the dispositions in ¶¶ 1–11 was dismissed because the order from which appeal was taken was not final. The Court of Appeals dismissed the Article 78 connected to the disposition in ¶ 12 because the appeal was untimely filed and the disposition in ¶ 13 for want of prosecution. The Article 78 connected to the disposition in ¶ 21 was automatically vacated because Abreu

failed to file an attorney's certificate of merit. Because Abreu can no longer return to a state forum to exhaust these claims due to the sixmonth statute of limitations for commencing a new action based on the termination of an action, these claims are procedurally barred and deemed exhausted .[13] CPLR § 205.

[13]    No Article 78 was identified in connection with the dispositions in I(F).

Accordingly, while Abreu's claims based on the dispositions in ¶¶ 14–20, 22–23, 25–36 are unexhausted, the dispositions in ¶¶ 1–11, 12, 13, and 21 are deemed exhausted.

### D. Independent and Adequate State Law Grounds

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman,* 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); *see also Harris v. Reed,* 489 U.S. 255, 261–62 (1989); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). "This rule applies whether the state law ground is substantive or procedural." *Coleman,* 501 U.S. at 729 (citation omitted). "Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, ... such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (internal quotation marks omitted) (citing *Coleman,* 501 U.S. at 732, 735).

In addition to being "independent," the state procedural bar must also be "adequate." *Cotto,* 331 F.3d at 239. A violation of "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review. *Id.* at 239–40 (internal quotation marks omitted). In an "exceptional case[ ] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

*10 (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* at 240.

In this case, all the Article 78 proceedings commenced for the dispositions referenced in Abreu's amended petition are barred by adequate and independent state law grounds. First, the claims pertinent to ¶¶ 1–11 were dismissed as time-barred and for failure to conform to basic pleading requirements. The opinion dismissing the Article 78 petition was clear on its face in explaining the four-month limitation period as a time-bar to Abreu's claims, citing both CPLR § 217 and *Smith v. Goord,* 42 A.D.3d 839, 839 (3d Dep't 2007). *See also, Gathers v. Artus,* 59 A.D.3d 795, 795 (3d Dep't 2009) (applying § 217 in dismissing Article 78 proceedings that challenged prison disciplinary dispositions). Additionally, a federal habeas court has recognized that "[t]his limitation period has a fair and substantial basis in state law in that it is clearly codified in the C.P.L.R. and is not novel and unforeseeable." *Scales v. New York State Div. of Parole,* 396 F.Supp.2d 423, 430 (S.D.N.Y.2005) (internal quotation marks and citations omitted). Similarly, state courts regularly follow the firmly established state rule of CPLR § 3013, dismissing pleadings that do not "give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." CPLR § 3013; *see, e.g., Pettus v. New York State Dep't of Corr. Servs.,* 77 A.D.3d 996, 996 (3d Dep't 2010) (affirming dismissal of an Article 78 proceeding based on failure to conform to the pleading requirements in CPLR § 3013); *Escalera v. State,* 67 A.D.3d 1137, 1137 (3d Dep't 2009) (same). Therefore,

these independent and adequate state laws properly prevent the Court from reviewing the Article 78 for dispositions referenced in ¶¶ 1–11.

As for the remaining Article 78 petitions, they were dismissed because they were time-barred or that procedural challenges were not preserved for appeal. First, the timeliness in making an appeal is a regularly followed state rule. *People v. Nettles,* 30 N.Y.2d 841, 844 (1972) (subjecting a habeas corpus appeal to dismissal because it was untimely made). Second, it is a firmly established and regularly followed state practice that a claim must be raised at a hearing in order to preserve it on appeal. *James v. Kentucky,* 466 U.S. 341, 348–49 (1984); *Lewis v. Lape,* 90 A.D.3d 1259, 1260 (3d Dep't 2011) (inmate's contentions not raised at his prison disciplinary hearings were unpreserved for court's review); *VidalOrtiz v. Fischer,* 84 A.D.3d 1627, 1628 (3d Dep't 2011) (same); *Hamilton v. Bezio,* 76 A.D.3d 1125, 1126 (3d Dep't 2010) (same). Thus, the Court is barred from reviewing the Article 78 petitions in dispositions referenced in ¶¶ 1–11, 12, 13, and 21.

*11 A claim that is procedurally defaulted due to an adequate and independent state law ground may avoid the procedural bar if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004) (citations omitted); *Ramirez v. Attorney General of New York,* 280 F.3d 87, 94 (2d Cir.2001); *Aparicio,* 269 F.3d at 90. "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. *Levine,* 44 F.3d at 127 (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003). Here, neither cause and prejudice nor a miscarriage of justice is present in the record. There is nothing in the record indicating that an objective and external factor impeded Abreu's efforts in raising his claims in state court. Further, no new evidence tending to prove Abreu's innocence with respect to the hearing dispositions was submitted to the Court. Thus, Abreu's claims are barred from federal habeas review.

Accordingly, Abreu's amended petition should be denied because his claims are procedurally defaulted.

### E. Merits

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2), accord, Rhines v. Weber, 544 U.S. 269, 277 (2005). However, § 2254(b) (2) "does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion." Otero v. Stinson, 51 F.Supp.2d 415, 420 (S.D.N.Y.1999) (internal quotation marks omitted) (collecting cases). A majority of district courts in the Second Circuit "have expressed the test as whether the unexhausted claim is 'patently frivolous.' " Cummings v. Conway, No. 09–CV–740 (MAT), 2011 WL 2516581, at *4 (W.D.N.Y. June 23, 2011) (collecting cases). On the other hand, a minority of courts exercised discretionary review when "it [was] perfectly clear that the [petitioner] d [id] not raise even a colorable federal claim." Id. (internal quotation marks omitted) (collecting cases). Under either standard, Abreu has failed to establish that he is entitled to habeas relief.

### i. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> **\*12** (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir.2006); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir.2005).

The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1). Williams, 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412–13. As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 413. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. In addition, the statutory phrase "clearly established Federal law ... refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions...." Id. at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Smalls v. Batista, 191 F.3d 272, 278 (2d Cir.1999); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U .S.C. § 2254(e)(1); DeBerry, 403 F.3d at 66.

### ii. Fourteenth Amendment

Abreu claimed that he was denied due process at thirty-seven disciplinary hearings because: (1) the charges lodged against him were false; (2) he was denied the opportunity to call witnesses and present documentary evidence; (3) the hearing officers failed to consider his mental health issues and failed to act impartially; (4) he was not provided the assistance of a Spanish-speaking interpreter nor an inmate assistant; and (5) the denial of due process was conducted in retaliation for his filing of grievances and lawsuits against prison officials. Am. Pet. ¶¶ 40–49, 52, 55–57. In addition, Abreu contends that his equal protection rights under the Fourteenth Amendment were violated. Id. ¶ 59.

Abreu has failed to show that the state court determinations of his Article 78 petitions were either contrary to, or applied unreasonably, clearly established federal law. Rule 2(c) of the Rules Governing Habeas Corpus Cases mandates "the petitioner to specify all the grounds for relief available to [him] and to state the facts supporting each claim." Mayle v. Felix, 545 U.S. 644, 649 (2005) (internal quotations marks omitted). While Abreu cited case law and stated conclusory allegations against the respondent, Abreu does

not assert any facts "allowing [for the] application of a legal principle involving 'custody in violation of the constitution or laws or treaties of the United States,....' " *U.S. ex rel. Holes v. Mancusi,* 423 F.2d 1137, 1142 (2d Cir.1970) (citing 28 U.S.C. § 2254(a) (Supp. IV 1965–68)). As previously indicated, Abreu failed to allege which due process violation corresponds to each of the thirty-seven disciplinary dispositions. The state court decisions correctly applied federal precedent when they indicated that Abreu did not allege how any of the disciplinary charges were false, what evidence or witnesses were barred from being presented at the hearing, and why the exclusion of such evidence adversely affected either the outcome of the hearings or Abreu's ability to present a defense. *See also* Resp't's Mem. at 38. The record is devoid of any facts explaining how Abreu was entitled to have his mental health issues considered by the hearing officers or that interpretation or inmate assistance was warranted.[14] To the extent that the underlying state court proceedings did not dismiss Abreu's claims based on their merits, those claims were dismissed for procedural reasons or Abreu's failure to articulate a claim. Thus, Abreu still failed to advance anything more than conclusory allegations, which cannot stand in a habeas petition.

[14]     The only hearing transcript in the record was submitted by respondent. The transcript involved the misbehavior report connected to the disposition referenced in ¶ 12, which indicated that Abreu "shook his head no" when asked to attend his hearing. Dkt. No. 22–23 at 31–32. *See also* Inmate Refusal Forms (Dkt. No. 22–23) at 77–79 (noting that when asked to attend his hearing, Abreu "state[d] nothing, no response," "looked at officers but refused to respond," and "shook his head 'no.' ").

**\*13** Further, the same lack of support exists for Abreu's retaliation claim in connection with his due process claims. As for Abreu's equal protection claim, it resides in a single, conclusory statement, without any factual support elsewhere in Abreu's submissions to the Court. Thus, despite Abreu's vague and conclusory allegations, Abreu has failed to establish that he is entitled to habeas relief. *White v. Herbert,* No. 02–CV–0439 (NPM), 2006 WL 3728878, \*4 (N.D.N.Y. Dec. 15, 2006) (collecting cases on the dismissal of petitions containing only vague or conclusory allegations); *Skeete v. People of New York State,* No. 03–CV–2903, 2003 WL 22790079, at \*2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not

advance a viable claim for *habeas corpus* relief." (citation omitted)). Similarly, to the extent that Abreu has alleged his loss of good time credits implicated a liberty interest protected by the Fourteenth Amendment, such a claim must also fail for its vagueness and conclusory nature.[15] Therefore, in deciding Abreu's Article 78 petitions, the state courts did not render decisions that either were contrary to, or unreasonably applied, clearly established federal law and Abreu's Fourteenth Amendment claims must fail as a matter of law.

[15]     To succeed under a due process claim based on the loss of good time credits, the petitioner must establish, *inter alia,* that: (1) he was not provided a written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a nonneutral hearing body conducted the hearing; (3) he was not afforded the opportunity to present evidence and call witnesses; (4) he was not granted assistance to understand and prepare his defense; and (5) the factfinder failed to provide a written statement of the evidence relied upon in making his decision and the reasons for the decision. *See Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974). Abreu asserted no facts to establish the aforementioned elements.

Accordingly, Abreu's amended petition on these grounds should be denied.

### iii. Eighth Amendment

Abreu claimed that the good time credit penalties resulting from the hearing dispositions were so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment. In total, Abreu lost approximately 217 months of good time credits, or eighteen years.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. There is "[n]o federal constitutional issues ... [where] the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citation omitted). Under New York law, after an inmate is found guilty of the charges lodged against him at a disciplinary hearing, a hearing officer may exercise his discretion in "limit[ing] an inmate to noncontact visiting in lieu of suspending all visiting privileges" by imposing a loss of good time credits.

7 New York Codes, Rules and Regulations ("NYCRR") § 254.7(2)(d)(ix). Penalties following a disciplinary hearing run consecutively unless the hearing officer directs that the penalty should run concurrently. 7 NYCRR § 254.7(2)(d)(xi)(2). It has been concluded that

> [G]ood time credit is a creation of state law and not the federal constitution. Therefore, loss of good time credit, in the absence of due process violations does not raise a constitutional issue. In the eighth amendment context, loss of good time credit does not amount to cruel and unusual punishment.

*Miller v. Lopes,* No. H–84–1133 (TEC), 1986 WL 1707, at *3 (D.Conn. Jan. 27, 1986) (internal quotation marks omitted); *see Jackson v. Sneizek,* 342 F. App'x 833, 836 (3d Cir. Aug. 20, 2009) (per curiam) (holding that the loss of 406 days of good time credits did not amount to an Eighth Amendment violation because the penalty was within the limits prescribed for the offense at issue and not disproportionate to the severity of the offense) (citations omitted).

**\*14** In this case, the good time credit penalties were within the hearing officers' discretion to impose as prescribed under New York law and the hearing officers could certainly impose consecutive penalties. Further, because Abreu's due process claim cannot stand, the penalties that he now challenges do not constitute cruel and unusual punishment. Therefore, it cannot be said that in deciding Abreu's Article 78 petitions, the state courts rendered decisions that were either contrary, or

unreasonably applied, to clearly established federal law and Abreu's Eighth Amendment claim must fail as a matter of law. Accordingly, Abreu's amended petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that Abreu's amended petition for a writ of habeas corpus (Dkt. No. 8) be **DENIED;** AND

2. Furthermore **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Abreu's claims as Abreu has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Not Reported in F.Supp.2d, 2013 WL 3475304

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:21-cv-00473-MAD-TWD   Document 38   Filed 05/08/24   Page 53 of 85

Smith v. Smith, Not Reported in Fed. Supp. (2018)
2018 WL 557877

2018 WL 557877
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert F. SMITH, Petitioner,

v.

Brandon SMITH, Superintendent, Greene Correctional
Facility, Department of Corrections and Community
Supervision, and Board of Parole, Respondents.

9:17-CV-0258
|
Signed 01/22/2018

**Attorneys and Law Firms**

ROBERT F. SMITH, 44 Grand Street, Newburgh, New York
12550, Petitioner, pro se.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL: PAUL
B. LYONS, ESQ., Ass't Attorney General, New York State
Attorney General, 120 Broadway, New York, New York
10271, Attorneys for Respondents.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

 **\*1**  Petitioner Robert Smith ("Smith" or "petitioner") has
filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging a parole revocation determination. Dkt. No. 1,
Petition ("Pet."). Respondents initially filed a motion to
dismiss the petition without prejudice for a lack of exhaustion
or, in the alternative, permission to limit their answer solely
to the issue of exhaustion. Dkt. No. 3, Respondents' Motion
to Dismiss.

On June 22, 2017, respondents' motion to dismiss was denied
but their request to file a limited response to the petition was
granted. Dkt. No. 7. Thereafter, respondents filed an answer,
memorandum of law, and pertinent records from the state
court proceedings related to the limited issue of exhaustion.
Dkt. No. 13, Respondents' Answer; Dkt. No. 14, Respondents'
Memorandum of Law in Opposition to the Petition for a Writ
of Habeas Corpus ("R. Mem."); Dkt. No. 15, State Court
Records ("SCR"). [1]  Petitioner filed a reply. Dkt. No. 17,

Traverse; Dkt. No. 17-1, Petitioner's Memorandum of Law
(Pet. Mem.).

[1]   Petitioner filed a set of state court records with
his petition as well. Dkt. No. 3-1. It appears that
respondents' submission is more comprehensive
(Dkt. No.15, SCR) and therefore, for the sake of
clarity and efficiency, all references to the state
court records will be to that attachment filed with
the respondents' moving papers.

For the reasons that follow, Smith's petition is denied and
dismissed.

**II. BACKGROUND**

**A. Prior Conviction**

On May 10, 1993, Smith was convicted in Orange County
Supreme Court of rape in the first degree in violation of
N.Y. Penal Law § 130.35 and of criminal possession of a
weapon in the third degree in violation of § 265.02. SCR 1-2.
Petitioner was sentenced, as a second felony offender, to two
indeterminate terms of imprisonment—12.5 to 25 years on
the rape charge and 2 to 4 years on the weapons charge—to
run concurrent with one another. *Id.*

**B. Parole Proceedings**

In May 2015, Smith was released to post release supervision.
SCR 3-15. However, on October 31, 2015 a warrant was
issued and executed for petitioner's detention in connection
with several violations of petitioner's parole conditions. SCR
16; *see also* SCR 18 (Notice of Violation); SCR 19-22
(Violation of Release Report & Case Summary).

On November 9, 2015, a preliminary revocation hearing
occurred. SCR 17. Based on the proffered testimony, a
hearing officer from the Board of Parole determined that there
was sufficient evidence to establish probable cause for the
alleged violations of Smith's parole conditions. *Id.*

On April 5, 2016, a final revocation hearing was held
before a Board of Parole administrative law judge ("ALJ").
SCR 32-156. Smith was represented by counsel. *See* SCR
33 (noting appearance of counsel for parolee). The ALJ
heard testimony from petitioner (SCR 140-152), an offender
rehabilitation counselor (SCR 46-61), and two parole officers
(SCR 61-139) before reserving judgment (SCR 154-55).

In a written decision dated April 29, 2016, the ALJ held that the New York State Department of Corrections and Community Supervision ("DOCCS") had successfully met its burden of proof on four of the five charges and found that Smith violated several of his parole supervision conditions. SCR 159-65. Accordingly, petitioner's parole was revoked and he was ordered held in prison until the maximum expiration date of his sentence. SCR 164.

**\*2** The ALJ's written decision ended with a notice that was in bold font and all capital letters reading, "**NOTICE: YOU HAVE THE RIGHT TO APPEAL THIS DECISION.**" SCR 165. However, Smith did not administratively appeal the revocation of his parole. SCR 356-57.

### C. State Court Proceedings

On or about April 8, 2016, Smith filed a petition for a writ of habeas corpus with the Orange County Supreme Court. SCR 166-72. Petitioner claimed that his detention pursuant to the October 2015 parole warrant was illegal because the warrant was forged and that these actions represented several violations of various New York State laws and regulations. SCR 168.

In May of 2016, Smith filed an amended petition for a writ of habeas corpus. SCR 173-86. This petition presented the same allegations but included more detail and further exhibits. SCR 173-86. [2] Concurrently, petitioner also successfully received in forma pauperis status for his state court proceeding. SCR 201-02.

[2]    Concurrently, petitioner was also sending letters to various individuals regarding his illegal detention. SCR 181-85. Attached as exhibits to his state habeas corpus petitions are letters addressed to Sheriff Dubois and Sgt. Proscia regarding petitioner's detention and the parole warrant. *Id.*

On June 30, 2016, respondents filed a motion to change venue from Orange County Supreme Court to Greene County Supreme Court. SCR 203-08.

On July 11, 2016, Smith filed a response to the motion to change venue, proffering the same arguments set forth in his habeas petition: (1) the parole warrant was forged and, therefore, illegally executed and enforced on him; and (2) he was being illegally detained. SCR 228-62.

On July 13, 2016, respondents' motion to change venue to Greene County was granted. SCR 263-64. Thereafter, respondents argued the state petition should be dismissed because: (1) the petition failed to name a necessary party; (2) petitioner did not administratively appeal the revocation of his parole, and the time limit for such an appeal had expired; and (3) habeas corpus is an appropriate remedy only if petitioner is entitled to immediate release from custody, and in this case, petitioner would not be entitled to immediate release even if his factual allegations were true. SCR 265-94.

Smith filed a seventeen-page reply. SCR 295-311; *see* SCR 312-46 (exhibits attached to reply). Petitioner addressed each of respondents' arguments, specifically contending that the "Board of Parole ha[d] no jurisdiction for review [of the revocation decision]: ... ALJ[s] ... do not have jurisdiction over issues stemming from preliminary hearing proceedings and the matter may not be appealed...." SCR 298.

Smith further argued that the parole warrant was improperly executed in violation of New York State statutes and regulations, with one exception. SCR295-311. In one of the final paragraphs, petitioner included a citation to the Fourth and Fourteenth Amendments. SCR 310 ("There is clear evidence of PO Flynn's actions of bad faith, willful and negligent disregard of warrant requirement which has been a pattern as well as a practice of inattention to warrant requirement. U.S.C.A. Const. Amends. 4, 14; Executive Law § 259-i(3)(a)(i); 9 NYCRR 8004.2 (a, b).").

**\*3** On October 31, 2016, relying solely on state law, the Greene County Supreme Court issued a decision denying and dismissing Smith's petition in its entirety. SCR 354-59. First, the Court held that a necessary party was missing, which alone would constitute reason to dismiss. SCR 356. Second, the Court found that petitioner was not entitled to immediate release. SCR 356. Third, and most relevant to the present petition, the Court determined that petitioner failed to exhaust his administrative remedies prior to commencing suit. SCR 356. Specifically, the Court held:

Since [petitioner] has not filed an appeal or otherwise challenged the final parole revocation issued on April 5, 2016, he has failed to exhaust his administrative remedies. This result remains the same whether the action is brought as a habeas corpus or as the properly converted article 78 petition, as "[h]abeas corpus is a summary remedy; it is not an appropriate vehicle to bypass administrative remedies when there are disputed factual issues present (*see Matter of Trimaldi v. Superintendent of Washington Corr. Fac.*,

169 AD2d 960, 960-61 [3d Dept 1991] [citations omitted] ["The doctrine of exhaustion of administrative remedies would clearly bar any relief under CPLR article 78, and we see no reason for reaching a different result even if we accept petitioner's claim that habeas corpus is an appropriate remedy."] ).

SCR 357. Finally, the Court dismissed any remaining arguments on the merits. SCR 357.

It does not appear that Smith appealed from this adverse decision. Indeed, as of August 22, 2017, the Appellate Division, Third Department had no record of any appeal of the October 31, 2016 decision denying the petition. Respondents' Answer ¶ 4; *see also* Pet. ¶ 12(d)(4) & (7) (explaining the "judge rendered an arbitrary and capricious ruling that left [petitioner] with the assumption [his] ... constitutional rights would not be protected in the State Courts and [he] ... would not obtain the relief sought.")

### III. THE PRESENT PETITION

Construed liberally, Smith raises the following grounds for habeas relief in his federal habeas petition and memorandum of law:[3] (1) he was illegally detained due to a forged and invalid warrant; (2) he was subjected to an illegal, unconsented to, and warantless search; (3) the denial of his state court writ of habeas corpus was "arbitrary and capricious" and in violation of his right to equal protection; and (4) he is being unlawfully detained beyond the expiration date of his sentence. Pet. ¶¶ 9-12.

[3]     For the sake of clarity and ease of discussion, petitioner's claims have been renumbered and reorganized.

Respondents' arguments are limited to claims of exhaustion and procedural default. R. Mem. at 5-15. In his reply, Smith asserts that his arguments in the state proceeding were "premised on state statutory law, [but also] allege[d] a los[s] of liberty pursuant to an invalid warrant ... which alerts the state court of a constitutional claim." Pet. Mem. at 11.[4]

[4]     The pagination referenced herein is that generated by CM/ECF and located on the top of each document.

Further, with respect to exhaustion, Smith contends that any attempt to appeal the final revocation of his parole was not possible because the issues were not reviewable administratively and that he "attempted to exhaust available administrative remedies ... but all were indifferent to the rights of the petitioner and had not responded." Pet. Mem. at 9, 15.

### IV. DISCUSSION

As an initial matter, recent correspondence from Smith suggests that he has been released from incarceration and therefore his present petition is moot. *See Spencer v. Kemna*, 523 U.S. 1, 7-14 (1998) (holding that while "[a]n incarcerated ... parolee's challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because ... the incarceration ... constitutes a concrete injury, where the substance of the suit is parole revocation and the resulting "reincarceration that ... [occurred] as a result of that action is now over, and cannot be undone," the petitioner is required to demonstrate "collateral consequences adequate to meet Article III's injury-in-fact requirement [which] resulted from petitioner's parole revocation," in order for the petition to survive).

 **\*4**  Smith does not appear to have raised any injuries which would allow his present petition to continue under *Spencer*. However, engaging in such an analysis is fruitless because petitioner's claims were not properly exhausted and, even when deemed exhausted, are procedurally defaulted.

#### A. Exhaustion

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii).

In other words, it must first be determined whether Smith is barred from raising his claims based on a failure to present them to the highest state court capable of reviewing them or his failure to raise them in federal constitutional terms in his administrative and state proceedings before the merits of his petition can be addressed.

Importantly, a petitioner must exhaust his or her claim both procedurally and substantively. "A petitioner seeking habeas review of his parole revocation is subject to the exhaustion doctrine." *Lebron v. Annucci*, No. 9:15-CV-0829 (GLS), 2016 WL 1312564, at *2 (N.D.N.Y. Apr. 4, 2016) (citing, *inter alia, Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003)).

**1. Procedural Exhaustion**

Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Accordingly, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"The typical path for exhausting a claim concerning a petitioner's parole revocation proceeding includes both completion of the internal, administrative appeal process within the Division of Parole and, in the event of an adverse determination, commencement of a CPLR Article 78 proceeding." *McCullough v. New York State Div. of Parole*, No. 9:11-CV-1112 (DNH), 2015 WL 2340784, at *4 (N.D.N.Y. Apr. 15, 2015) (citations omitted); *see also* N.Y. COMP. CODES R & REGS tit. 9, § 8006.1.

"If the Article 78 petition is denied, the petitioner must then appeal that denial to the 'highest state court capable of reviewing it.' " *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (quoting *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003)); *see also Santiago v. Unger*, No. 1:12-CV-133, 2013 WL 227757, at *8 (W.D.N.Y. Jan. 22, 2013) (explaining that the first step after the denial of an Article 78 petition is to "then appeal the denial to New York's intermediate appellate court, the Appellate Division.").

Smith failed to procedurally exhaust any of his claims through either administrative or judicial channels. First, petitioner participated in a final revocation hearing where the ALJ ultimately revoked petitioner's parole and detained him. In that hearing decision, petitioner was specifically advised that his final parole revocation could be administratively appealed.

Regardless of whether such an administrative appeal would be ineffective, Smith was provided with information on how to challenge the revocation decision but failed to do so. As properly noted by the Greene County Supreme Court when determining petitioner's court-converted state habeas petition to an Article 78 claim, petitioner failed to administratively appeal his final parole revocation determination, rendering his claims procedurally unexhausted.

**\*5** Second, Smith failed to exhaust his claims in state court because he failed to appeal the decision on his state habeas petition-turned-Article 78 proceeding. Per respondents' answer, no appeal was filed in the Appellate Division and therefore, no appeal was taken in the case. Respondents' Answer ¶ 4. There is also nothing in the record to indicate that petitioner filed any leave application with the New York Court of Appeals. Accordingly, petitioner did not properly present the appeal to either of the next two higher level courts capable of reviewing it.

Smith contends that he successfully exhausted his claims by sending letters to individuals who he thought had the power to rectify the violations that he suffered. However, "informal communications ... [by petitioner] are insufficient to satisfy § 2254(b)(i)'s exhaustion requirement." *Owens v. New York State Parole Bd.*, No. 13-CV-8057, 2014 WL 5089364, at *3 (S.D.N.Y. Sept. 25, 2014). Accordingly petitioner has failed to appropriately exhaust his remedies in state court. *See e.g., O'Sullivan*, 526 U.S. at 845.

**2. Substantive Exhaustion**

Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (holding petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.").

"While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.' " *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Carvajal*, 633 F.3d at 104).

A petitioner satisfies the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal*, 633 F.3d at 104 (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)); *see Baldwin*, 541 U.S. at 33 ("Reese, however, has not demonstrated that

Smith v. Smith, Not Reported in Fed. Supp. (2018)

2018 WL 557877

Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim.").

Even assuming Smith procedurally exhausted his claims, he failed to fairly present his claims to any court or administrative body in federal constitutional terms. Consistently throughout his filings, petitioner has admittedly relied upon New York state statutes, regulations, and case law.

Smith did not substantively rely on any federal statutes or federal cases. In his reply, petitioner cited to *Smith v. Doe*, 538 U.S. 84 (2003) to support his argument about his incarceration's maximum expiration date. SCR 299. But *Smith* is irrelevant here—it determined whether the retroactive application of an Alaskan Sex Offender Registration Act was a punishment precluded by the *ex post facto* clause. *Id.* The issues in this petition are completely unrelated to petitioner's claims of a forged warrant and illegal detention.

**\*6** Similarly, none of the handful of state cases Smith cited utilized any type of constitutional analysis. Petitioner relied on one state case in his amended state court habeas petition (SCR176) and four additional state cases in his reply papers (SCR 308).

Two of these cases dealt with the validity of property transfers given to interested witnesses, forgeries, and other deed deficiencies. *See Armstrong v. Combs*, 15 A.D. 246 (3d Dep't 1897); *Caccippoli v. Lemmo*, 152 A.D. 650 (2d Dep't 1912).

One case determined what the New York State Legislature's statutory intent was regarding the definition of forgery and interpreted the New York State Penal Code accordingly. *People v. Abeel*, 182 N.Y. 415 (1905).

The other two cases involved attorney disciplinary matters. The first opinion was about an attorney who was censured for making misleading statements in an affidavit. *See In re Matter of Napolis*, 169 A.D. 469 (1st Dep't 1915). The second case citation was incorrect, but independent research uncovered five cases entitled "*In re Brooklyn Bar Ass'n*" or "*In the Matter of Brooklyn Bar Association.*"

All five of those decisions also related to attorney disciplinary matters. *See in re Brooklyn Bar Ass'n*, 92 A.D. 612 (2d Dep't 1904); *In re Brooklyn Bar Ass'n*, 93 A.D. 618 (2d Dep't 1904);

*In re Brooklyn Bar Ass'n*, 223 A.D. 149 (2d Dep't 1928); *In the Matter of Brooklyn Bar Ass'n*, 213 A.D. 876 (2d Dep't 1925); *In re Matter of the Brooklyn Bar Ass'n*, 217 A.D. 758 (2d Dep't 1926).

In sum, all of these cases concern state statutory and administrative issues. None of these cases included allegations of or discussions about the deprivation of constitutional rights nor did the court engage in a constitutional analysis. There has been no allegation or pattern of facts that are within the mainstream of constitutional litigation. To the contrary, Smith's claims primarily revolve around allegations of a forged warrant and resulting parole consequences, none of which were asserted in particular language reminiscent of constitutional rights.

Notably, Smith made one passing reference to two constitutional amendments in a citation in his reply papers. However, that reply was for the present petition and those references were not found in any of the paperwork that was previously filed in state court. Regardless, presentation of such issues in a reply brief is insufficient to satisfy the fair presentation requirement. *See Rustici v. Phillips*, 308 Fed.Appx. 467, 469 (2d Cir. 2009).

To the extent that Smith's arguments about the invalidity of the warrant were supposed to alert the state courts to the presence of violations of the Fourth and Fourteenth Amendments, there is no explanation in any of petitioner's state court papers as to how or why the allegedly forged warrant and subsequent detention implicates, let alone violates, the constitutional amendments identified. Accordingly, petitioner's claims are also substantively unexhausted.

### 3. Lack of Available State Remedies

In Smith's reply to respondents' motion to dismiss, petitioner argues that he was "time barred to effectively exhaust his state court remedies [and] if ... the court [should] dismiss his federal habeas petition, there is no state remedy available." Dkt. No. 8, ¶ 23.

This argument fails primarily because Smith had several options to timely exhaust his claims but simply failed to pursue any of them. *See* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented."). Accordingly, while he did not avail himself of

2018 WL 557877

those avenues of relief, the appropriate state remedies were in fact *available* to petitioner.

**B. Procedural Default**

**\*7** Smith's claims are also procedurally defaulted because petitioner now has no avenue by which to exhaust them in state court.

"[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted).

Unexhausted claims may be deemed exhausted if "it is clear that the unexhausted claim is procedurally barred by state law," rendering presentation of the claim in state court "futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). A "procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." *Aparicio*, 269 F.3d at 91 (citing *Coleman v. Thompson*, 501 U.S. 722, 748-49 (1991)).

To establish cause, petitioner must demonstrate that some objective external factor impeded his ability to comply with the procedural rule at issue. *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912, 922 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

In this case, all of Smith's claims are unexhausted and can no longer be raised in state court. "Petitioner can no longer bring an administrative appeal because he failed to file a notice of appeal within thirty days of his final parole revocation hearing [in April of 2016] ...." *Roundtree v. Bartlett*, No. 1:10-CV-633, 2011 WL 5827315, at \*4 (W.D.N.Y. Nov. 18, 2011); *see also* N.Y. COMP. CODES R. & REGS tit. 9, § 8006.1(b) ("The appeal process [from a final determination of the Board of Parole] is initiated by the filing of a notice of appeal within 30 days of the date that the inmate ... receives written notice of the final decision....").

Further, Smith can no longer bring an appeal to the Appellate Division from the dismissal of his converted state habeas petition on October 31, 2016, because the time to do so has expired. *See Scales*, 396 F. Supp. 2d at 429 ("Under New York law, petitioners must appeal an adverse Article 78 determination within thirty days after being served with a copy of the judgment.").

Moreover, Smith cannot institute a new Article 78 proceeding because such actions must be brought within four months of the conclusion of the administrative hearings, namely the parole revocation hearing; given that the revocation hearing was decided in October 2016, that time has long since expired. *See* N.Y. CPLR § 217. Because state remedies are no longer available, petitioner's claims are deemed exhausted and procedurally defaulted. *Aparicio*, 269 F.3d at 90.

Smith's claims cannot be saved from procedural default via one of the previously identified exceptions as neither has been demonstrated in this case. While petitioner has seemingly offered several different reasons for his failure to appeal his parole revocation or Article 78 dismissal, none are sufficient to establish cause and prejudice or petitioner's actual innocence.

**\*8** First, Smith conclusorily references the "[i]neffective assistance of counsel" as a reason for failing to present his claims in state and federal court. Pet. ¶ 13(b). However, it is unclear what the facts are supporting this claim as none are alleged. Further, as the Article 78 was a civil proceeding, the Sixth Amendment does not guarantee counsel and therefore there is no action for ineffective assistance of counsel associated with a petitioner's representation during the course of that proceeding. *Salahuddin v. Unger*, No. 1:04-CV-2180, 2005 WL 2122594, at \*9 (E.D.N.Y. Sept. 2, 2005) (citations omitted). Lastly, as petitioner did not articulate an ineffective assistance of counsel claim earlier in any of his filings, he cannot use that to serve as the cause to excuse his default. *See e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).

Second, Smith contends that he only learned of the forgery of the warrant during the final revocation hearing, so he was precluded from raising it as a claim because it was too late to do so; instead, the claim could only properly be raised during the preliminary revocation hearing. Pet. ¶ 12, Ground One (b). Petitioner also explains that because his state habeas petition was filed prior to the decision revoking his parole, he was unable to fairly present his claims. Pet. Mem. at 19.

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 59 of 85

Smith v. Smith, Not Reported in Fed. Supp. (2018)
2018 WL 557877

These arguments are untenable. To the extent Smith is attempting to allege that his state habeas petition was premature, which precluded his ability to advance his arguments surrounding his parole revocation, such arguments are meritless. As explained in the Greene County Court's decision, there was still an audience and opportunity for petitioner to assert these arguments via an appeal to the appropriate appellate division of the converted Article 78 dismissal. *See* SCR 356-57 (explaining that an Article 78 proceeding is the appropriate procedural vehicle to challenge a final revocation hearing—hence the conversion—but regardless petitioner failed to timely allege his claims via any avenue rendering them unexhausted); *see also McCullough*, 2015 WL 2340784, at *4 (explaining that, after exhausting all administrative appeals offered in connection with a parole revocation, the next procedural step is to file an Article 78); *Scales*, 396 F. Supp. 2d at 428 (clarifying that when an Article 78 petition is denied it too must be appealed); *Santiago*, 2013 WL 227757, at *8 (stating that an Article 78 appeal is next filed with the appropriate appellate division).

With respect to Smith's latter contention, while his state habeas petition was filed prior to the final revocation decision, he subsequently corresponded with the court—substantially so with regard to the reply he filed on August 13, 2016—which allowed ample opportunity for petitioner to address his perceived issues with the warrant and final decision.

If Smith had pursued any of the available avenues for appeal, he could have presented these arguments to any number of decision makers. However, petitioner failed to follow the directions regarding appeal that were, at a minimum, provided to him in the parole revocation decision. Petitioner contends this constitutes appropriate cause because he was barred from raising his claim. But even if this were accurate, it does not address why petitioner failed to pose his claims regarding the forgery and detention in constitutional claims in any of his filings.

Third, Smith alleges that the Greene County Supreme Court was biased and acted in an "arbitrary and capricious manner" in denying his claims and therefore petitioner was certain that his constitutional rights could not be properly protected in any state court proceedings. Pet. ¶ 12, Ground One(d)(7); ¶ 13(a) Ground Three(a).

**\*9** These claims are completely unsupported by the state court records. Regardless, "[i]t is well established that a

petitioner may not bypass state courts merely because they may be unreceptive to the claim." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted). Accordingly, Smith has not established any cause sufficient to excuse his default. [5]

[5]    Because there was no cause demonstrated, the Court need not address whether the petitioner suffered resulting prejudice. *Murray*, 477 U.S. at 496. Further, petitioner has not alleged, let alone established, that he is actually innocent.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. The petition, Dkt. No. 1, is **DENIED AND DISMISSED IN ITS ENTIRETY**;

2. No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2); [6]

[6]    *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

3. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and

4. The Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2018 WL 557877

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2973585
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Kareem S. PERRY, Petitioner,

v.

Robert K. WOODS, Respondent.

No. CV-07-0341 (BMC).
|
Oct. 9, 2007.

**Attorneys and Law Firms**

Kareem S. Perry, Malone, NY, pro se.

Jodi A. Danzig, Office of the NY State Attorney General, New York, NY, Respondent.

### *MEMORANDUM DECISION AND ORDER*

COGAN, District Judge.

**\*1** This is a habeas corpus proceeding in which petitioner, in state custody, seeks restoration of good conduct time that would lead to his immediate release. I find that the claim is unexhausted, procedurally barred, and not brought within the one-year period required by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The petition is therefore DISMISSED.

### BACKGROUND

Petitioner's claim is that while in prison for attempted murder and related crimes, a term which began no later than 1993, he entered into an agreement with the New York City Department of Investigation ("DOI") in 2005 to serve as an informant in exchange for a promise that DOI obtain restoration of his good time credit, which would have meant his immediate release. Petitioner alleges that he performed his end of the bargain, giving testimony before a Grand Jury that resulted in "the arrest and indictment of corrupt officials," but that no action was taken by DOI, and as a result, the State Department of Correctional Services ("DOCS") affirmed the

withholding of his good-conduct time on August 23, 2005. He remains in custody.

Petitioner brought two state court proceedings related to the instant habeas case. First, on or about July 12, 2006, he brought an Article 78 (state mandamus/certiorari) proceeding against the three DOI personnel with whom he had dealt (Marguarita Figueroa, Michael L. Caruso, and Michelle Flores) for a judgment "direct[ing] respondents to forward letter for release to the [Time Allowance Committee] and arrange for petitioner's immediate release." On October 16, 2006, the state court dismissed the proceeding on the ground that petitioner had never served his petition on the respondents. The court rejected his claim that his inability to leave his cell made it impossible to serve the petition, and directed him to the court's *pro se* office, providing both an address and phone number, if he wanted to recommence the proceeding.

Instead of recommencing or appealing, petitioner appears to have filed a motion for leave to appeal with the Appellate Division on or about November 14, 2006. The motion was transmitted with a cover letter to "Timothy M. Crowe" at an address of 60 Hudson Street, New York, N.Y. 10013. The letter indicates that petitioner had a personal acquaintance with Mr. Crowe, whoever he is, as it is addressed "Dear Tim" and signed, "Kareem." The letter states "[e]nclosed find a copy of my Notice of Appeal, or rather, Notice for leave to appeal .... Leave to appeal is likely to be denied. I'm merely exhausting my state remedies to prepare for the presentation of my habeas corpus in federal court."

The motion, perhaps with Mr. Crowe's assistance, found its way to the Appellate Division, which, on December 26, 2006, denied it as "unnecessary," citing petitioner to N.Y. C.P.L.R. 5701(a)(1). That statute provides: "Appeals as of Right. An appeal may be taken to the appellate division as of right in an action, originating in the supreme court or a county court ... from any final or interlocutory judgment ...." NY. C.P.L.R. 5701(a)(1) (2007). In other words, the Appellate Division was telling petitioner that he did sot need leave to appeal; he had a right to appeal. What petitioner should have done at that point was simply perfect his appeal by filing the record and brief. He never did. Instead, he claims that he sought leave to appeal to the New York Court of Appeals, but that he never received a response from that Court. [1] Respondent states that he has been unable to find any record of such a request upon inquiry to the Court of Appeals, but in any event, leave could not have been granted because petitioner never perfected his appeal to

2007 WL 2973585

the Appellate Division, and thus never obtained an Order that could have been appealed to the Court of Appeals.

1    By his letter dated September 24, 2007, petitioner requests this Court to order the Superintendent of Downstate Correctional Facility to locate and forward his property to him, so that petitioner can support his exhaustion claim with proof that he sought leave to appeal to the New York Court of Appeals. This Court does not have the authority to so order the Superintendent. In any event, as discussed herein, proof of petitioner's request would not impact this Decision and Order.

**\*2** In addition, on or about August 15, 2006 (about a month after he had commenced his Article 78 proceeding), petitioner also commenced an Article 70 (state habeas corpus) proceeding against the superintendent of his prison, seeking his release on the same grounds. On December 29, 2006, that court dismissed the proceeding, applying the state law rule that "habeas corpus is not a proper vehicle" to challenge the withholding of good conduct time. Although the court noted that it had the discretion to convert the proceeding to an Article 78, which was the proper vehicle, it declined to do so on the ground of futility, because the statute of limitations for petitioner's claim had expired on December 23, 2005, four months after DOCS' decision denying restoration of his good-conduct time. *See* N.Y. C.P.L.R. 217. Petitioner did not appeal from that judgment.

### DISCUSSION

#### I. Exhaustion
It is axiomatic "that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This requirement is codified in 28 U.S.C. § 2254(b) and (c).

To satisfy the exhaustion requirement, a defendant must "fairly present [ ]" that claim to the state courts so that the court has "a fair opportunity to consider the ... claim and to correct that asserted constitutional defect in respondent's conviction." *Picard,* 404 U.S. at 275, 276. A petitioner has "fairly presented" his claim only if he has "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Dave v. Attorney General of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). To inform

the state court of the "legal premise" of the claim, a petitioner must apprise the state court that a federal constitutional issue is at stake, either by "(a) reliance on pertinent federal cases employing constitutional analysis; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *DiSimone v. Phillips,* 461 F.3d 181, 190 (2d Cir.2006) (quoting *Daye,* 696 F.2d at 194). Exhaustion requires the petitioner to have presented his constitutional claim to the "highest state court from which a decision can be had." *Daye,* 696 F.2d at 190 n. 3.

For a number of reasons, petitioner's Article 78 proceeding is not sufficient to have exhausted his claim as it did not fairly present any constitutional claim to the state court. First, it is phrased solely in terms of a state law claim of breach of contract or, at most, a challenge to the DOI investigators' failure to contact DOCS as arbitrary and capricious. It does not refer to the Constitution or any cases discussing any constitutional provision; it is not within the "mainstream" of constitutional litigation; and it does not call to mind any constitutional provision. Second, it named only individual investigators within the DOI, not petitioner's custodian or DOCS, as the respondent. Consistent with that, it did not seek petitioner's release from custody; it merely sought to compel cooperation from the three DOI investigators to write a letter and otherwise interface with DOCS to get DOCS to obtain petitioner's release. Third, it was never served. A claim cannot be "fairly presented" to a state court if the petitioner never serves it; presentation necessarily implies notice to an adversary so that the Court may consider the claim. Finally, petitioner never pursued an appeal from the dismissal of his Article 78 petition. Although petitioner filed a motion for leave to appeal, the Appellate Division denied it as "unnecessary" because he had an appeal as of right, and petitioner never perfected that appeal. Even presuming that petitioner sought leave to appeal to the New York Court of Appeals as well, leave could not have been granted because petitioner never perfected his appeal to the Appellate Division, and thus never obtained an Order appealable to the Court of Appeals.

**\*3** Petitioner's Article 70 proceeding cured some of these problems, but petitioner never exercised his appeal as of right to the Appellate Division. He therefore failed to exhaust by not seeking to assert his claim to the "highest state court from

which a decision can be had." *Daye,* 696 F.2d at 190 n. 3. Accordingly, his claims are unexhausted.

## II. Procedural Bar

Although petitioner's claim is unexhausted, there is no point in staying this petition pending exhaustion because his claim is also procedurally barred.

In dismissing petitioner's Article 70 proceeding, the state court relied on two independent and adequate state law procedural grounds. First, it held that restoration of good-time credit could only be sought in an Article 78 proceeding, not an Article 70 proceeding. The state courts hold that a prisoner's incarceration is not "unlawful," and thus does not qualify for habeas corpus relief, unless and until the withheld good time is restored, which can only be obtained through Article 78. Only if release is denied after restoration of good time through an Article 78 proceeding will an Article 70 proceeding lie. *See People ex rel. Emm v. Hollins,* 299 A.D.2d 850, 850, 750 N.Y.S.2d 251, 252 (4th Dep't 2002); *Doolen v. Goord,* 277 A.D.2d 624, 718 N.Y.S.2d 221 (3d Dep't 2000); *People ex rel. Miranda v. Kuhlman,* 127 A.D.2d 924, 925, 511 N.Y.S.2d 981, 982 (3d Dep't 1987), *leave to app. den.,* 69 N.Y.2d 612, 517 N.Y.S.2d 1027, 511 N.E.2d 86 (1987); *Midgley v. Smith,* 63 A.D.2d 223, 227-28, 407 N.Y.S.2d 283, 286-87 (4th Dep't 1978). Although petitioner's confusion is understandable, since federal law recognizes habeas corpus when the restoration of good time would result in a prisoner's immediate release, *Preiser v. Rodriguez,* 411 U.S. 475, 482, 487-88, 93 S.Ct. 1827, 1832, 1835, 36 L.Ed.2d 439 (1973), and he cited federal habeas cases regarding loss of good time to the state court in support of his Article 70 petition, the state court properly rejected his claim under state procedural law.

Petitioner's more fundamental problem, however, was that he filed his Article 70 too late. It seems clear from the language of the state court's dismissal of his proceeding, and it is often the case when a prisoner mistakenly files an Article 70 when he should have filed an Article 78, that the Article 70 court will convert the proceeding to an Article 78 to consider the merits of the loss of good time. *See Hawkins v. Scully,* 151 A.D.2d 527, 528, 542 N.Y.S.2d 664, 665 (2d Dep't 1989); *Miranda,* 511 N.Y.S.2d at 982. Here, however, it seems likely that petitioner thought that he had one year to file his Article 70 (which should have been an Article 78); the denial of his good time was on August 23, 2005, and he filed his Article 70 proceeding one week before the expiration of one year, on August 16, 2006. But he was wrong. The state courts strictly and regularly apply the four-month limitation provision of Article 78 to proceedings seeking restoration of good time. *See, e.g., Warburton v. Department of Correctional Services,* 254 A.D.2d 659, 660, 680 N.Y.S.2d 26, 27 (3d Dep't 1998); *Miranda,* 511 N.Y.S.2d at 982. He could not avoid that by mislabeling his proceeding as an Article 70.

**\*4** Petitioner could avoid the procedural bar only upon a demonstration of cause or actual prejudice. He has not attempted to show either. Moreover, any confusion he had over the application of the four month statute of limitations is insufficient *See McKleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Accordingly, his claim before me is procedurally barred.

## III. Timeliness

Finally, petitioner's claim was not filed within the one-year time limit imposed by AEDPA, 28 U.S.C. § 2244(d) (1). He had until December 23, 2005 under state law to challenge DOCS' withholding of his good conduct credit in state court. The Supreme Court has held that when the state court proceeding is barred by the statute of limitations at the time it is brought, a toll will not be recognized. *Pace v. DiGuglielmo,* 544 U.S. 408, 417, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005). This means that petitioner's Article 70 proceeding, which the state court dismissed specifically on statute of limitations grounds, did not serve to toll the one-year period. Because he filed the instant proceeding on January 18, 2007, more than one year had elapsed from the time of the state decision that he is challenging. [2]

[2]   Arguably, since Article 78 was the proper vehicle in which to challenge the withholding of state time, petitioner's first proceeding, an Article 78, might have tolled the one-year period, even though it was untimely under state law, because the state court dismissed it on grounds other than statute of limitations. However, for the same reasons that disqualify that proceeding for exhaustion purposes, it should not be considered in determining the existence of a toll. Specifically, it did not seek relief against his custodian or DOCS, but only against the DOI investigators with whom petitioner had allegedly dealt. It did not raise the constitutional claim that petitioner seeks to raise here, but only state law claims. It was beyond the statute of limitations, even though the state court did not reach that ground in dismissing it. Finally, it

was never served. Under these circumstances, the Article 78 proceeding was not "properly filed" and does not toll the one-year period.

## CONCLUSION

The petition is DISMISSED. Because there is no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore

*in forma pauperis* is denied for the purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S.Ct. 917, 920-21, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum Decision and Order to petitioner *pro se.*

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2973585

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2789454
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James BENJAMIN, Petitioner,
v.
Justin TAYLOR, Respondent.

No. 9:05-CV-0902 (LEK/DEP).
|
Sept. 24, 2007.

**Attorneys and Law Firms**

James Benjamin, Gouverneur, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Office of the Attorney General, Bridget Erin Holohan, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Respondent.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on April 6, 2007 by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 21). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objection and supplemental objection by James Benjamin, which were filed on April 12, 2007 and April 16, 2007, respectively. Objections (Dkt. Nos.22, 23).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein. Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 21) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Petitioner's petition in this matter (Dkt. No. 1) be **DENIED** and **DISMISSED** in all respects; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, U.S. Magistrate Judge.

Petitioner James Benjamin, a New York State prison inmate as a result of a 1992 robbery conviction, has commenced this proceeding pursuant to 28 U.S.C. § 2254 seeking this court's habeas intervention on his behalf. In his petition, Benjamin challenges a determination made by the time allowance committee ("TAC") at the prison facility in which he was housed at the relevant times, withholding six years of good time credit based upon his failure to participate in certain recommended programs. Petitioner maintains that the TAC's ruling is undermined by a disciplinary determination, following a hearing, exonerating him of refusing to participate in the required programming, and additionally was in retaliation for his having engaged in protected activity including, *inter alia,* allegedly having assumed a leadership role in an inmate work stoppage at the turn of the millennium. The named respondent, petitioner's custodian at the relevant times, has opposed the petition, based both upon Benjamin's alleged failure to present his constitutional claims to the state's highest court before commencing this proceeding, and on the merits.

Because Benjamin failed to take the required steps to complete his application to the New York State Court of Appeals for leave to appeal the lower state courts' unfavorable determination regarding the TAC determination at issue, he has not fulfilled his obligation to exhaust state remedies by fairly presenting his constitutional arguments to the state's highest court before seeking federal habeas intervention. Since petitioner's time to request leave to appeal has expired, and he has offered no basis to overlook his default, he is procedurally barred from petitioning this court for relief.

## I. BACKGROUND

**\*2** At the times relevant to his claims, petitioner was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and incarcerated within the Gouverneur Correctional Facility ("Gouverneur"). Petition (Dkt. No 1) at 2. Petitioner's incarceration stems from a 1992 conviction of robbery in the first degree, for which he was sentenced as a second felony offender to an indeterminate prison sentence of between six and twelve years in duration. *See In re Benjamin v. New York State Dept. of Corr. Servs.,* 19 A.D.3d 832, 832, 796 N.Y.S.2d 747, 747 (3d Dep't 2005).

In November of 2003, following a hearing held on September 8, 2003 to address the issue, the TAC at Gouverneur issued a written determination withholding all of petitioner's good time allowance, effectively resulting in extension of his anticipated release date to coincide with the expiration of his maximum sentence.[1] Holohan Aff. (Dkt. No. 17) Exh. A (Answer to Benjamin's Article 78 Petition, hereinafter cited as "Respondent's Art. 78 Answer"), Exh. B. That determination was based upon petitioner's refusal to participate in recommended substance abuse and aggression management treatment programming and his failure to sign the requisite forms confirming that refusal. *Id.; see also Benjamin,* 19 A.D.3d at 832, 796 N.Y.S.2d at 747. In its decision, the TAC noted that petitioner could apply for reconsideration of the good time allowance deprivation following successful completion of both programs. *Id.* The TAC's determination was upheld on appeal to the facility superintendent on November 28, 2003, and later on review by the Commissioner on December 12, 2003. *Id.*

[1]    This resulting circumstance does not necessarily preclude the possibility of an earlier release for the petitioner. While Benjamin's maximum release date is currently set at February 3, 2011, he will be eligible for parole in May of 2008. *See* http:// nysdocslookup.docs.state.ny.us/ GCA00P00/WIQ3/WINQ130.

## II. PROCEDURAL HISTORY

### A. State Court Proceedings

After pursuing the matter internally through to review by the DOCS Commissioner, petitioner commenced a proceeding in Albany County Supreme Court, pursuant to Article 78 of the

N.Y. Civil Practice Law and Rules, challenging the TAC's determination and the DOCS decision internally affirming that decision. *See Benjamin,* 19 A.D.3d at 832, 796 N.Y.S.2d at 747. That application was denied by decision issued in or about July of 2004, and the resulting judgment dismissing Benjamin's Article 78 petition was affirmed on appeal to the New York State Supreme Court Appellate Division, Third Judicial Department, by memorandum decision issued on June 16, 2005.[2] *Id.* at 832-33, 796 N.Y.S.2d at 747.

[2]    Neither party to this proceeding has provided the court with the initial state court decision denying Benjamin's Article 78 petition.

In its decision, *inter alia,* the Third Department noted that good behavior allowance is properly regarded as a privilege and, correspondingly, no New York prison inmate is entitled to insist upon receiving such credit. *Id.* at 833, 796 N.Y.S.2d at 747. The court further noted that the decision of whether to grant a good time allowance is entrusted to the sound discretion of prison officials, whose determinations are not subject to judicial scrutiny provided they are made in accordance with the law. *Id.* The court went on to recognize "that an inmate's failure to participate in recommended therapeutic programs provides a rational basis for withholding a good time allowance [.]" *Id.* at 833, 796 N.Y.S.2d at 748 (citations omitted).

**\*3** On or about June 20, 2005, petitioner filed a motion seeking leave to appeal the unfavorable determination of the Third Department to the New York Court of Appeals. *See* Answer (Dkt. No. 8) Exh. 1. In response to that application petitioner received a letter dated June 24, 2005 from the court, advising that his motion for leave to appeal was deficient and requesting that he supplement the application by supplying certain missing items, including payment of the required fee or proof of exemption from that requirement. Holohan Aff. (Dkt. No. 17) Exh. B. Nothing now before the court suggests that petitioner has since complied with that directive, or that the Court of Appeals ever acted on the merits of petitioner's application.

### B. This Proceeding

Petitioner commenced this proceeding on July 20, 2005. Dkt. No. 1. As grounds for the granting of habeas relief, Benjamin's petition appears to assert the "utterly irrational misapplication of New York State law", violations of constitutionally protected due process and equal protection, and retaliation, alleging that the deprivation of good time allowance was

motivated out of retaliatory animus based upon his unpopular prison activities. *Id.* at 5. Benjamin's petition appropriately names Justin Taylor, the Superintendent at the Gouverneur Correctional Facility, the prison in which he has been held during the relevant times, as the respondent.

On October 5, 2005, represented by the Office of the New York State Attorney General, respondent submitted an answer to the petition, accompanied by a legal memorandum and supporting documents. Dkt. No. 8. In that answer respondent argues that petitioner's claims are procedurally barred by virtue of his failure to fairly present them to the state's highest court, the New York Court of Appeals, before filing his petition with this court, and additionally asserts that in any event his petition is lacking in merit. *Id.* Petitioner has since submitted a letter, which was docketed on October 12, 2005, in reply to respondent's answer. Dkt. No. 9.

On May 18, 2006 I issued an order directing the New York State Attorney General to supply the court with records relating to the underlying TAC proceeding and any additional, available information regarding petitioner's application for leave to appeal to the New York Court of Appeals. Dkt. No. 16. The requested information has since been provided, the court having received an affirmation from Assistant New York State Attorney General Bridget E. Holohan, Esq., with attached documents related to both the TAC proceeding and Benjamin's Article 78 petition to the New York State Supreme Court. Dkt. No. 17. That submission prompted the filing by petitioner of a letter dated June 16, 2006, attaching additional copies of materials related to his efforts to appeal the Third Department's unfavorable determination in connection with his Article 78 petition. Dkt. No. 18.

Benjamin's petition, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Exhaustion of Remedies*

**\*4** While the record then before the court did little to shed light on the issue, as of the time of commencement of this proceeding it appeared that petitioner had not yet completed the process of pursuing his unsuccessful Article 78 challenge through to the state's highest court, the New York Court of Appeals. The materials since received from the parties confirm this fact and reflect that the deficiency has not been cured, but instead persists. Respondent asserts that this failure precludes Benjamin from seeking habeas relief from this court.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), requires that before a state inmate may petition for habeas review under 28 U.S.C. § 2254, he or she must first exhaust all available state court remedies or, alternatively, demonstrate that "there is an absence of available State corrective process [or that] circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1); *see also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 808 (2d Cir.2000) (quoting § 2254); *see also Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269 (1995). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between two adjudicatory institutions." *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982). "Comity concerns lie at the core of the exhaustion requirement." *Galdamez v. Keane,* 394 F.3d 68, 72 (2d Cir.2005). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.* "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Glover v. Bennett,* No. 98-CV-0607, 1998 WL 278272, at \*1 (N.D.N.Y. May 21, 1998) (Pooler, D.J.) (quoting *Daye,* 696 F.2d at 192) (footnote omitted). The petitioner bears the burden of demonstrating that he or she has exhausted available state remedies before petitioning for habeas relief. *United States ex rel. Cuomo v. Fay,* 257 F.2d 438, 442 (2d Cir.1958); *Geraci v. Sheriff, Schoharie County Jail,* No. 99-CV-405, 2004 WL 437466, at \*4 (N.D.N.Y. Feb. 20, 2004) (Sharpe, J.) (citing, *inter alia, Cuomo* ); *Colon v. Johnson,* 19 F.Supp.2d 112, 119-20 (S.D.N.Y.1998) (same).

This exhaustion requirement is satisfied only after the federal claim has been "fairly presented" to the highest court of the state involved. *Fama,* 235 F.3d at 808-09 (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971)). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and rectify any violations of federal law. *Daye,* 696 F.2d at 191.

A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Id.* Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye,* 696 F.2d at 192; *Ramirez v. Attorney Gen. of New York,* 280 F.3d 87, 94-95 (2d Cir.2001); *Morales v. Miller,* 41 F.Supp.2d 364, 374 (E.D.N.Y.1999).

**\*5** In this instance, petitioner made attempts to seek leave from the New York State Court of Appeals to appeal the Third Department's unfavorable determination in connection with his Article 78 petition. Those efforts, however, were unsuccessful owing to Benjamin's apparent failure to comply with that court's requirements regarding the application, and it appears effectively to have been abandoned.

Because petitioner did not exhaust available state remedies by fairly presenting the constitutional claims raised in his habeas petition to the state's highest court before commencing this proceeding, attributable entirely to his failure to respond to a directive from the court that he supply additional, missing materials to support his application for leave to appeal, he has failed to satisfy the requirement of exhausting available state remedies before eliciting this court's habeas intervention. And, since such an application must be filed not later than thirty days following service of the adverse Appellate Division decision under challenge upon the would-be appellant, *see* N.Y. Civil Practice Law and Rules § 5513, and a litigant is permitted to file only one request for leave to appeal to the Court of Appeals from an unfavorable decision of the lower applicable court, *see Aparicio,* 269 F.3d at 91, petitioner's claim is therefore "deemed exhausted" for purposes of his habeas application. *See Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 170 (2d Cir.2000); *Seiner v. Greiner,* No. 00-CV-5673, 2002 WL 31102612, at \*10 (E.D.N.Y. Sept. 18, 2002).

### B. *Procedural Default*

While the court now considers petitioner's claims as deemed exhausted, they are also procedurally forfeited by virtue of his failure to satisfy the requirements of seeking leave to appeal from the New York State Court of Appeals. *See Aparicio,* 269 F.3d at 90; *Ramirez,* 280 F.3d at 94. Accordingly, this court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice. *Fama,* 235 F.3d at 809;

*Garcia v. Lewis,* 188 F.3d 71, 76-77 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F .3d 121, 126 (2d Cir.1995). Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986); *see also House v. Bell,* 126 S.Ct. 1064, 1076 \*2006); *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Murray,* 477 U.S. at 495, 106 S.Ct. at 2649 (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576 (1982)).

**\*6** To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566-67 (1991) (citing *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645); *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999) (citing, *inter alia, Coleman* ). Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[3] *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645.

[3]

It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error .' " *Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566-67 (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645).

The petitioner has presented the court with no basis for relieving him of the consequences of the procedural bar stemming from his failure to pursue the application for leave to appeal to the New York Court of Appeals. The petitioner's failure to properly seek that leave appears to be solely the result of his inability or unwillingness to satisfy the unfulfilled requirements drawn to his attention by that court by letter dated June of 2005. There is no intimation in anything now before the court that petitioner's efforts to satisfy his exhaustion requirement were thwarted by any actions on the part of prison officials.

2007 WL 2789454

There is also no indication, from the papers now before the court, that the petitioner was actually innocent of the conduct which gave rise to the disputed good time allowance denial. To the contrary, the court has been supplied with records from petitioner's counselors convincingly reflecting his refusal to participate in the mandated programs and to sign forms acknowledging that refusal. *See* Respondent's Article 78 Answer, Exh. C. I therefore recommend a finding that petitioner's habeas claims are procedurally barred.

IV. *SUMMARY AND RECOMMENDATION*

By not supplying this court with proof of pursuit of his claims through the state courts, to completion up to the Court of Appeals, petitioner has failed to sustain his burden of proving that he exhausted state court remedies before seeking this court's habeas intervention, and is now procedurally barred from maintaining his federal claims in this court. Accordingly, and without addressing the merits of these claims, it is hereby [4]

[4]    The court is skeptical as to whether petitioner could ultimately prevail in his claims, were the matter to go forward. It is well-established that a prison inmate lacks any constitutional expectation of release prior to his or her maximum sentence date. *See Carmona v. Ward,* 439 U.S. 1091, 1098, 99 S.Ct. 874, 879 (1979); *see also Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001).

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2789454

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)

2020 WL 5822102

2020 WL 5822102
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David G. GIFFORD, Petitioner,

v.

M. THOMS, Superintendent, [1] Respondent.

[1]
Petitioner was incarcerated at Five Points Correctional Facility at the time he filed his Petition. *See* Pet. According to the New York State Department of Corrections and Community Supervision Inmate Lookup Service, he was released to parole on July 3, 2020. *See* Inmate Lookup, DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, http://nysdoccslookup.doccs.ny.gov (last visited Aug. 6, 2020). He is therefore no longer in the custody of Respondent Thoms. At the time of filing, however, Thoms was the properly named respondent. *See Ortiz v. Martuscello*, 2018 WL 10468148, at *1 n. 1 (S.D.N.Y. Aug. 23, 2018) (collecting cases). Accordingly, the Court treats Respondent as properly named. *Id.* In addition, Petitioner's status on release to parole does not moot his *habeas* petition, as his petition could potentially impact that parole, and because he remains subject to collateral consequences from his conviction. *See id.* (collecting cases).

9:19-CV-0194 (GLS/DJS)
|
Signed 09/11/2020

**Attorneys and Law Firms**

DAVID GIFFORD, Petitioner Pro Se, 16-B-0799, Five Points Correctional Facility, Caller Box 119, Romulus, New York 14541.

OF COUNSEL: LISA FLEISCHMANN, ESQ., PAUL B. LYONS, ESQ., Assistant Attorneys General, HON. LETITIA JAMES, Attorney General of the State of New York, Attorney for Respondent, 28 Liberty Street, New York, New York 10005.

**REPORT-RECOMMENDATION and ORDER** [2]

[2]
This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DANIEL J. STEWART, United States Magistrate Judge

**\*1** *Pro se* Petitioner David Gifford was convicted of willfully violating the terms of his probation. Dkt. No. 9-1, State Court Record ("SR") at pp. 49-69. [3] Petitioner seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the ground that his "resentencing ... was illegal or otherwise inappropriate as a matter of law and violated Petitioner's Due Process Rights[.]" Dkt. No. 1, Petition ("Pet.") at p. 4. [4] Respondent has filed a Memorandum of Law in Opposition to the Petition. Dkt. No. 7, Resp. Mem. of Law. Petitioner has filed a Traverse. Dkt. No. 15, Traverse ("Trav."). For the reasons that follow, this Court recommends that the Petition be **denied**.

[3]
Citation to the state court record is in the form "SR" followed by the Bates numbering at the bottom of each page of the record.

[4]
Citations to the Petition are to the page numbers assigned by the Court's CM/ECF system.

**I. BACKGROUND**

On June 5, 2009, Petitioner was indicted by an Otsego County grand jury on one count of Driving While Intoxicated ("DWI"), a Class D felony under New York Vehicle and Traffic Law § 1992(3). SR at p. 1. Thereafter, Petitioner's counsel sent the prosecutor an offer to accept a plea to DWI as a Class E felony. *Id.* at p. 3.

On January 28, 2010, the Otsego County Court held a plea hearing at which Petitioner appeared with counsel. *Id.* at p. 4. At that hearing, Petitioner pled guilty to DWI as a Class D felony in exchange for an agreed-upon sentence of five years' probation, with the specific condition that Petitioner successfully complete the Delaware County Treatment Court. *Id.* at pp. 5 and 14. The plea agreement also provided that if Petitioner was not accepted into the drug court program or "somehow sabotaged his admission into that program," he

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 71 of 85

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)

2020 WL 5822102

would be sentenced to 1 to 3 years' imprisonment and would not be sentenced as a persistent felony offender. *Id.* at pp. 5-6. Additionally, if Petitioner was admitted into the program but failed to successfully complete it, he would be sentenced to 1-1/3 to 4 years' imprisonment. *Id.* at p. 6. After the terms of the plea agreement were set forth, Petitioner indicated that he understood the agreement, had discussed the advantages and disadvantages of the plea with his attorney, and had no further questions regarding the agreement's terms. *Id.* at pp. 6-7.

On April 9, 2010, Petitioner again appeared with counsel in County Court, this time for his sentencing. *Id.* at p. 21. At that hearing, the court ordered that Petitioner serve a period of five years' probation and that he "participate in and successfully complete a Drug Treatment Court in [his] home county[,]" which in Petitioner's case was Delaware County. *Id.* at p. 24. Petitioner indicated to the court that he had been accepted into the drug treatment program and had been attending sessions for five or six weeks. *Id.* at pp. 24-25.

On the same date, Petitioner signed the Otsego County Probation Department Order and Conditions of Adult Probation. *Id.* at pp. 16-20. That document set forth a number of conditions unrelated to the drug treatment program mandating that Petitioner, among other things, report to a probation officer as directed; receive permission before changing his mailing and physical address; and abstain from the use of narcotics, dangerous drugs, barbiturates, or marijuana. *Id.* at pp. 16-20. Importantly, the Order also provided that if Petitioner violated any of the conditions of probation, the County Court was authorized to revoke his probation and resentence Petitioner to "the maximum allowed under the law." *Id.* at p. 20.

**\*2** On April 29, 2010, the County Court sent a letter to each of the parties informing them that it had been advised that Petitioner's sentence was "in conflict with the policies of the Delaware County Treatment Court." *Id.* at p. 30. Specifically, the County Court instructed, the Delaware County Treatment Court required that participants who fail out of the program be resentenced to the maximum allowed under the law— in Petitioner's case, 2-1/3 to 7 years' imprisonment. *Id.* The terms of Petitioner's plea agreement were inconsistent with this requirement, as they promised Petitioner a sentence of 1-1/3 to 4 years' imprisonment in the event that he failed out of the Treatment Court. *Id.* Accordingly, in an effort to allow Petitioner to participate in the Treatment Court program and avoid an immediate term of imprisonment, the County Court directed Petitioner to reappear in that court "to discuss the

possibility of re-sentencing him[.]" *Id.* Petitioner's counsel responded on May 5, 2010, stating that "[a]s part of the plea bargain, I specifically negotiated the drug court contract and intentionally negotiated around the maximum sentencing provisions." *Id.* at p. 31.

Nonetheless, the County Court held two conferences to discuss the matter—the first on May 14, 2010 and the second on June 11. *Id.* at p. 189. After Petitioner failed to appear at both hearings, the County Court issued a bench warrant for his arrest. *Id.* at pp. 35-38. By Petitioner's own admission, he absconded "[o]n or about June 1, 2010[.]". Pet. at p. 5. On September 15, 2010, the County Court issued a Declaration of Delinquency for Violation of Probation, which indicated that Petitioner had violated probation by failing to report to the probation departments of either Otsego or Delaware Counties, failing to receive permission before changing his mailing and physical address or place of employment, and testing positive for marijuana use. SR at pp. 39-41.

Over five years later, on November 9, 2015, Petitioner was re-arrested pursuant to the bench warrant and arraigned on his violation of probation. *Id.* at pp. 42-45 & 183. After Petitioner rejected a plea offer to admit to the alleged violation, the County Court held a probation violation hearing, at which Petitioner testified, on January 15, 2016. *Id.* at pp. 46-69. At the conclusion of that hearing, the court found that Petitioner willfully violated the conditions of his probation by failing to: return to court as directed, keep the probation department advised of his whereabouts, and receive permission before leaving the jurisdiction. *Id.* at p. 69. Finally, on March 4, 2016, the County Court resentenced Petitioner to 2-1/3 to 7 years' imprisonment on the original DWI conviction. *Id.* at pp. 70-75.

Petitioner then filed a *pro se* motion to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20, in which Petitioner argued that: (1) he received ineffective assistance of counsel at his resentencing, and (2) his resentencing was illegal because it violated double jeopardy. *Id.* at pp. 125-38. The County Court denied Petitioner's 440.20 motion, holding that "[t]he sentence imposed did not exceed the sentence that could have been originally imposed[,]" and there was no legal support for Petitioner's claim that the sentence was illegally imposed. *Id.* at pp. 189-90.

The Appellate Division, Third Department subsequently granted leave to appeal the County Court's 440.20 order and consolidated that appeal with Petitioner's direct appeal

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)

2020 WL 5822102

from the resentencing order. *Id.* at pp. 262-64. On appeal, in addition to reasserting the arguments that he raised in his 440.20 motion, Petitioner argued that his resentencing was harsh and excessive. *Id.* at pp. 384-99. Petitioner filed a supplemental *pro se* brief, in which he argued that: (1) his due process rights were violated, and his guilty plea was not intelligent, knowing, and voluntary, because he was not informed that he could receive the maximum sentence if he violated conditions of probation; (2) his attorneys who negotiated the original plea agreement and handled the resentencing rendered ineffective assistance; and (3) his sentence was illegally imposed because it violated the terms of his initial plea agreement. *Id.* at pp. 461-78.

**\*3** On April 19, 2018, the Appellate Division unanimously affirmed the County Court's resentencing order, as well as the County Court's order denying Petitioner's 440.20 motion. *People v. Gifford*, 160 A.D.3d 1211, 1211-12 (3d Dep't 2018). The Appellate Division summarized its holding as follows:

> Contrary to [Petitioner's] argument, County Court did not impose an enhanced sentence upon his original plea but, rather, imposed a new sentence upon revoking his probation. The prior plea discussions did not bind the court, as they did not address [Petitioner's] eventual violation of conditions of probation unrelated to the drug court program.

*Id.* at 1212. The Appellate Division rejected Petitioner's argument that the sentence imposed was harsh and excessive due to its findings that "the crime at issue represents [Petitioner's] eighth conviction for driving while intoxicated, [Petitioner] absconded from the state before ever reporting for probation and he was arrested in multiple states in the interim[.]" *Id.* The Appellate Division also held that the County Court was correct to deny Petitioner's motion to set aside his sentence because "he failed to demonstrate that the sentence imposed was 'unauthorized, illegally imposed or otherwise invalid as a matter of law[.]' " *Id.* (quoting N.Y. Crim. Proc. Law § 440.20 (1995)). Finally, the Appellate Division noted that Petitioner's remaining arguments "ha[d] been examined and found to be lacking in merit." *Id.* On September 13, 2018, the New York Court of Appeals denied leave to appeal. *People v. Gifford*, 32 N.Y.3d 1003 (2018).

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at \*3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)). The standard of review under § 2254(d) is "highly deferential" and

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 73 of 85

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)

2020 WL 5822102

"demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**\*4** The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

Petitioner claims that his due process rights were violated because (1) his plea agreement was violated given the sentence imposed upon him in 2016 and (2) said sentence was harsh and excessive. *See generally* Pet. The Court will consider each argument in turn.

### A. Alleged Plea Agreement Violation

To meet his burden, Petitioner must prove that the Appellate Division's conclusion that Petitioner's resentencing did not violate the terms of his plea agreement "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see also Hawkins v. Costello*, 460 F.3d at 242.

Petitioner has failed to cite to any Supreme Court case that would entitle him to relief. *See generally* Pet., Trav. Petitioner does cite to *Santobello v. New York*, 404 U.S. 257, 262 (1971) for the proposition that "whatever promises the government makes in the course of a plea agreement to induce a guilty plea must be fulfilled." Pet. at p. 4. However, *Santobello* provides no basis for relief where, as here, the government has fulfilled all of the promises that it made to Petitioner during the course of the plea negotiations. Petitioner was informed at his plea hearing as well as at his original sentencing that as part of the plea agreement, Petitioner would be sentenced to five years' probation. SR at pp. 5 & 24. Consistent with the plea agreement, five years' probation was the sentence that Petitioner initially received upon his DWI conviction. *Id.* at p. 24.

Petitioner also cites to several Supreme Court decisions that emphasize the importance that guilty pleas be entered voluntarily and knowingly. *See* Pet. at pp. 5 & 9 (citing *Brady v. United States*, 397 U.S. 742, 748 (1970); *McMann v. Richardson*, 397 U.S. 759, 766 (1970); *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *Puckett v. United States*, 556 U.S. 129, 136-37 (2009)). Yet in arguing in opposition to vacatur of his plea, Petitioner explicitly renounces any claim that his resentencing rendered his original plea involuntary or unknowing. *Id.* at p. 9.

It is well settled that in New York, when a criminal defendant is sentenced to a term of probation pursuant to a plea deal, "[u]pon a finding that defendant has violated probation, the court is authorized to revoke probation and sentence defendant for the original crime." *People v. Barnes*, 159 A.D.3d 1001, 1002 (2d Dep't 2018) (quoting *People v. Hobson*, 43 A.D.3d 1179, 1180 (2d Dep't 2007)) (citing N.Y. Crim. Proc. Law § 410.70(5) (2014)). The parties have not identified, nor has the Court found, a Supreme Court decision rendering this rule unlawful such that would it entitle Petitioner to relief. *See* Resp. Mem. of Law at pp. 18-19. "Where, as here, none of [the Supreme Court's] prior decisions clearly entitles [Petitioner] to the relief he seeks, the 'state court's decision could not be "contrary to" any holding from [the Supreme Court].' " *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (*per curiam*) (quoting *Woods v. Donald*, 575 U.S. 312, 317 (2015) (*per curiam*)). Thus, the Appellate Division's conclusion in this case could not have been contrary to established Supreme Court precedent.

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 74 of 85

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)
2020 WL 5822102

**\*5** Even if the Appellate Division's conclusion is considered a finding of fact, Petitioner's claim still must fail because the Appellate Division's construction of the plea agreement did not constitute "an unreasonable determination of the facts in light of the evidence" before it. *See* 28 U.S.C. § 2254(d). The Appellate Division held that the resentencing court was not bound by the plea discussions relating to the drug treatment program, as those discussions "did not address [Petitioner's] eventual violation of conditions of probation unrelated to the drug court program." SR at p. 525. Petitioner now asserts that the Appellate Division erred in so holding, and that the resentencing court breached the plea agreement by sentencing Petitioner to 2-1/3 to 7 years' imprisonment rather than to 1 to 3 years' imprisonment, the sentence promised to Petitioner if he were to be rejected by the treatment program. Pet. at p. 7; Trav. at pp. 15-16. Accordingly, the issue is whether Petitioner has established by clear and convincing evidence that the County Court breached the terms of the plea agreement by resentencing Petitioner to 2-1/3 to 7 years' imprisonment. *See* 28 U.S.C. § 2254(e)(1).

Petitioner claims that his sentence was illegally imposed because he was not made aware of the possibility that he could be sentenced to 2-1/3 to 7 years if he were to violate the terms of his probation. *See* Pet. at pp. 3-4. According to Petitioner's understanding, the only terms of imprisonment that could be imposed under the plea agreement were either 1 to 3 or 1-1/3 to 4 years. *Id.* at p. 4. After indicating at his sentencing that he had no questions regarding his sentence, Petitioner proceeded to sign the conditions of probation. *Id.* at pp. 20 & 25. The conditions of probation, however, explicitly stated that if Petitioner were to violate any of the conditions, the County Court would be authorized to "revoke the sentence and re-sentence [Petitioner] to the maximum allowed under the law[,]" which in Petitioner's case was a term of imprisonment of 2-1/3 to 7 years. *Id.* at p. 20; *see also* N.Y. Penal Law §§ 70.00(1), (2)(d), (3)(b) (2019). Thus, Petitioner was put on notice that his eventual violation of probation conditions unrelated to the drug treatment program could result in a more severe punishment than the specified terms of imprisonment pertaining to the drug treatment program.

Moreover, even if Petitioner misunderstood the plea agreement, plea agreements are not construed pursuant to the subjective understanding of one of the parties. *Mask v. McGuiness*, 252 F.3d 85, 90 (2d Cir. 2001). Rather, to determine whether there has been a breach of Petitioner's plea agreement, the Court must look "to what the parties reasonably understood to be the terms of the agreement."

*United States v. Taylor*, 961 F.3d 68, 81 (quoting *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005)).

Here, the parties reasonably understood that under the terms of the plea agreement, Petitioner would be sentenced to five years' probation, with the specific condition that Petitioner complete drug Treatment Court. SR at p. 5. The plea agreement also contained specified terms of imprisonment that would be imposed if Petitioner was not admitted to the Treatment Court or failed to successfully complete the program. *Id.* at pp. 5-6. However, as the Appellate Division noted, those plea discussions did not address Petitioner's eventual violation of conditions unrelated to the drug treatment program. *Id.* at pp. 5-6 & 525. The conditions of probation that Petitioner signed at his original sentencing described a litany of possible probation violations that were wholly unconnected to Petitioner's completion of the drug court program and thus were not subject to the yearly terms related to that program but rather by "the maximum allowed under the law." *Id.* at pp. 16-20. Petitioner's counsel that negotiated the plea agreement must have understood as much, as his letter to the County Court stated, "[a]s part of the plea bargain, I specifically negotiated the drug court contract and intentionally negotiated around the maximum sentencing provisions[,]" indicating counsel's understanding that the specified sentences described in the plea discussions pertained solely to the drug treatment program and not to potential violations of other probation conditions. *Id.* at p. 31. Thus, the parties reasonably understood that under the terms of the plea agreement, Petitioner could be sentenced to a term of imprisonment that exceeded the terms mentioned in the plea discussions if he violated conditions of probation other than by failing to complete the drug court program.

**\*6** Petitioner makes much of the County Court's use of the term "sabotage" in an apparent effort to show that by absconding, Petitioner sabotaged his admission into the drug court program and therefore should have been sentenced to 1 to 3 years' imprisonment upon his re-arrest in 2015. Pet. at pp. 3-4 & 6; Trav. at pp. 7-8, 11-12 & 14-18. However, the County Court used the term "sabotage" once in an offhand remark meant to clarify the terms of the drug court contract. SR at p. 6. Importantly, as previously discussed, that plea discussion still did not address Petitioner's eventual violation of probation conditions unrelated to the drug treatment program. *Id.* at pp. 4-14. The County Court ultimately found that Petitioner willfully violated multiple conditions of his probation by failing to return to court as directed, failing to keep probation advised of his address, and leaving the jurisdiction of the court

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)

2020 WL 5822102

without permission. *Id.* at p. 69. Those violations were not governed by the specified terms of imprisonment relating to Petitioner's drug court participation, but rather were subject to "the maximum sentence allowed under the law." *Id.* at pp. 16-20. The County Court in no way indicated that if Petitioner violated one of those other conditions, such an act would be deemed the equivalent of not being admitted into the drug court program, which would have entitled Petitioner to the 1 to 3 years' imprisonment promised to him under the plea agreement. *Id.* at pp. 4-14.

Petitioner has provided no evidence, other than his own subjective understanding of the plea agreement, that the Appellate Division misconstrued the plea agreement in holding that the County Court did not breach the agreement by resentencing Petitioner to 2-1/3 to 7 years' imprisonment. Therefore, Petitioner has not rebutted the presumption that the Appellate Division's interpretation of the plea agreement is correct by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## B. Harsh and Excessive Claim

Liberally construing Petitioner's allegations, he also asserts a claim that the sentence imposed upon him in 2016 was harsh and excessive. *See generally* Pet. The Appellate Division rejected this argument on the grounds that the crime at issue constitutes Petitioner's eighth conviction for driving while intoxicated, Petitioner absconded from the state before reporting to probation, and he was arrested multiple times before eventually returning to New York. SR at p. 525.

It is well settled that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992). Here, Petitioner pled guilty to driving while intoxicated as a class D felony. SR at pp. 5 & 14. New York state law allows for a maximum penalty of 2-1/3 to 7 years' imprisonment - the sentence that Petitioner ultimately received upon revocation of his probation - for a class D felony. N.Y. Penal Law §§ 70.00(1), (2)(d), (3)(b) (McKinney 2019). *See also* SR at p. 73. Therefore, Petitioner's claim that

his sentence is harsh and excessive is not cognizable under federal habeas review. *See White v. Keane,* 969 F.2d at 1383.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[5] and it is further

[5]   *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *see also Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

## All Citations

Not Reported in Fed. Supp., 2020 WL 5822102

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Gifford v. Thoms, Not Reported in Fed. Supp. (2020)
2020 WL 5821609

2020 WL 5821609
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David G. GIFFORD, Petitioner,

v.

M. THOMS, Respondent.

9:19-cv-194 (GLS/DJS)
|
Signed 09/30/2020

**Attorneys and Law Firms**

FOR THE PETITIONER: David G. Gifford, Pro Se, 16-B-0799, Five Points Correctional Facility, Call Box 119, Romulus, NY 14541.

FOR THE RESPONDENT: HON. LETITIA JAMES, OF COUNSEL: PAUL B. LYONS, Assistant Attorney General, Attorney General of the State of New York, 28 Liberty Street, New York, NY 10005.

## **ORDER**

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following a Report-Recommendation and Order (R&R) by Magistrate Judge Daniel J. Stewart duly filed on September 11, 2020. (Dkt. No. 18.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, [1] and the court having reviewed the R&R for clear error, it is hereby

[1]    On July 27, 2020, a change of address form that had been sent to petitioner was returned to sender with the notation "paroled." (Dkt. No. 17.) A deputy clerk verified that petitioner was released on July 3, 2020. (*Id.*) Petitioner has failed to promptly notify the court and all parties or their counsel of any change in his address in compliance with the court's February 15, 2019 Order, (Dkt. No. 4), and Local Rule 10.1(c)(2). The court notes that petitioner's copy of the Report-Recommendation and Order was returned as "refused–unable to forward" for the same reason. (Dkt. No. 19.)

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 18) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the petition (Dkt. No. 1) is **DENIED** and **DISMISSED** and it is further

**ORDERED** that no certificate of appealability will be issued because petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5821609

End of Document        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 10947148

2019 WL 10947148
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Christian URENA, Petitioner,

v.

Anthony ANNUCCI, Respondent.

17 Civ. 2835 (NSR)(JCM)
|
Signed 09/25/2019

**Attorneys and Law Firms**

Christian Urena, Fallsburg, NY, pro se.

Michelle Elaine Maerov, New York State Attorney General's
Office, New York, NY, for Respondent.

**REPORT AND RECOMMENDATION**

JUDITH C. McCARTHY, United States Magistrate Judge

To the Honorable Nelson S. Román, United States District
Judge:

**\*1**  On April 19, 2017, Petitioner Christian Urena
("Petitioner"), proceeding *pro se*, filed a petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). [1]
(Docket No. 1). On June 20, 2017, Respondent Anthony
Annucci ("Respondent") opposed the Petition. (Docket No.
9). Petitioner sought two separate extensions of time to file
a reply memorandum of law, both of which were granted,
(Docket Nos. 11–14), but to date has not filed any reply.
As a threshold matter, Petitioner does not challenge his
conviction, sentence, or the effectiveness of his representation
with respect to the underlying offense for which he is
incarcerated. (Petition, *generally*). Rather, the challenges set
forth in the Petition exclusively flow from a disciplinary
hearing and its attendant penalties which occurred during
Petitioner's confinement. (*Id.*). For the reasons set forth
below, I respectfully recommend that the Petition be denied
in its entirety.

[1]    A *pro se* prisoner's papers are deemed filed at the
time he or she delivers them to prison authorities for
forwarding to the court clerk. *Houston v. Lack,* 487
U.S. 266, 276 (1988); *see also Walker v. Jastremski,*
430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston*

"prison mailbox rule"). Petitioner certified that
his Petition was placed in the mail at Sullivan
Correctional Facility on April 10, 2017. (Docket
No. 1 at 21). Respondent does not challenge this
date. Accordingly, unless otherwise noted, the
Court adopts Petitioner's dates for this filing and for
all other filings discussed herein.

**I. BACKGROUND**

**A. Crime and Conviction**
On April 26, 2001, a jury in Bronx County Criminal Court
found Petitioner guilty of second–degree murder, attempted
second–degree murder, and first–degree assault. *See People
v. Urena,* 35 A.D.3d 296 (1st Dep't 2006). Petitioner was
sentenced to consecutive terms of 25 years to life and 12 ½
to 25 years, as well as a concurrent term of 10 to 20 years,
respectively. *See id.* Petitioner sought leave to appeal from the
New York State Court of Appeals, which was denied. *See id.,
lv. denied,* 8 N.Y.3d 885 (2007).

**B. The Search**
Petitioner's disciplinary hearing and penalties arise out of a
search of Petitioner's prison cell that resulted in the discovery
of razor blades and gang material. As a result of the discovery,
Petitioner received two separate misbehavior reports and
was afforded a disciplinary hearing to adjudicate the charges
levied against him. Construing the evidence in the light most
favorable to the state, *see, e.g.,* Murden v. Artuz, 497 F.3d
178, 184 (2d Cir. 2007), the following facts were established
during Petitioner's disciplinary hearing.

On or about October 2, 2012, Sergeant ("Sgt.") Cocuzza
received an anonymous note claiming that Petitioner had
contraband and gang material in his cell. (Docket No. 9–4 at
114–16). After receiving the note, Sgt. Cocuzza authorized
Correction Officer ("CO") F. Rivers to conduct a search of
Petitioner's cell, which occurred on October 2, 2012. (Docket
Nos. 9–3 at 34, 47, 9–4 at 115). During the search, for which
Petitioner was present, CO Rivers found two razors concealed
in an Old Spice deodorant container that were "taped together
back–to–back." (Docket Nos. 9–3 at 34; 9–4 at 54–55). In
addition to the razors, CO Rivers also found five copies of
unauthorized gang material, each of which were three pages
in length. (Docket Nos. 9–3 at 35; 9–4 at 56–57).

**\*2**  Based on the discovery of these items, Petitioner received
two separate misbehavior reports, charging him with violating
the Inmate Standards of Behavior, 7 N.Y.C.R.R. § 270.2,

Urena v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 10947148

specifically rules: (1) 113.10 for possessing a weapon; (2) 114.10 for smuggling razor blades; and (3) 105.13 for possessing gang related material. (Docket No. 9–3 at 34–35). On October 3, 2012, Petitioner was served with copies of the misbehavior reports, one in English and another translated into Spanish, as Petitioner does not speak English. (Docket No. 9–3 at 33–39).

## C. The Hearing

On October 3, 2012, Hearing Officer Bruce Levine ("HO Levine") was assigned to conduct a Tier III Superintendent's hearing based on the charged violations set forth in the misbehavior reports. (Docket No. 9–3 at 42). On that same date, Assistant B. Silverio was assigned to assist Petitioner in preparing for the hearing. (*Id.* at 54–55). On October 9, 2012, Assistant Silverio met with Petitioner. (*Id.* at 56). Thereafter, Petitioner requested certain documents, such as a copy of the log book, commissary sale sheet, and a list of items received by inmates from the package room. (*Id.*). By October 18, 2012, all of those items had been provided to Petitioner. (*Id.*). As part of the hearing, Petitioner sought to have three inmates testify on his behalf, but all three refused to testify, writing on "Refusal to Testify" forms dated November 6, 2012 that they "kn[e]w nothing about the incident." (Docket No. 9–3 at 44–46).

Petitioner's disciplinary hearing spanned across eight non–consecutive days, commencing October 19, 2012 and concluding December 14, 2012. (Docket Nos. 9–4 at 27, 51, 70, 96, 109 and 9–5 at 5). At the start of the hearing, HO Levine confirmed that Petitioner received written descriptions of the charges against him in Spanish and ensured that Petitioner understood his rights during the hearing. (Docket No. 9–4 at 8–13). Petitioner pleaded "not guilty" to the three charges. (*Id.* at 18). During the course of the trial, the following eight witnesses testified: (1) CO Benetiz (Docket No. 9–4 at 29–30); (2) CO Trombley (*id.* at 39–40); (3) CO Rivers (*id.* at 46); (4) Sgt. D. Miller (*id.* at 75); (5) Paul Guarino – the mason at Greenhaven (*id.* at 80–81); (6) Sgt. Cocuzza (*id.* at 111–12); (7) CO Dangelico (*id.* at 126–27); and (8) CO Brown. (*Id.* at 134–35).

At the conclusion of the hearing, HO Levine found Petitioner guilty on all three charged violations. (Docket No. 9–3 at 31–32). HO Levine imposed a penalty of eight months in Special Housing Unit ("SHU") confinement, a loss of eight months of good time credit, as well as loss of package, commissary, and phone privileges for the same period of time. (*Id.*). On January 9, 2013, Petitioner appealed his Tier III hearing and penalty to the New York State Department of Corrections and Community Supervisions ("DOCCS"). (Docket No. 9–5 at 29–44). On February 19, 2013, the appeal was denied, and the penalty affirmed. (*Id.* at 23).

## D. Petitioner's Article 78 Petition

On June 11, 2013, Petitioner filed a Petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), challenging the outcome of the hearing and penalty imposed. (Docket No. 9–3 at 1–13). Petitioner argued his Fourteenth Amendment due process rights were violated as follows: (1) the evidence did not support the charges; (2) petitioner was denied the right to prepare a defense; (3) Petitioner was found wrongfully guilty of smuggling; (4) the hearing officer failed to make an "independent assessment of informant credibility;" and (5) Petitioner was not present during a search of his cell. (Docket No. 9–3 at 1–13). On February 14, 2013, the state answered and opposed the Article 78 Petition, requesting that it be transferred to the Second Judicial Department of the Appellate Division ("Second Department") because it raised issues pertaining to the substantiality of the evidence. (*Id.* at 19–29). By decision dated March 17, 2014, the Honorable Peter M. Forman transferred the Article 78 petition and administrative file to the Second Department, finding that because petitioner raised a "substantial evidence question" the petition "must be transferred." (Docket No. 9–5 at 47–49).

**\*3** On September 9, 2014, Petitioner filed a brief in support of his Article 78 petition to the Second Department. (Docket No. 9–5 at 51–72). On May 26, 2015 the state filed a memorandum of law in opposition, (*id.* at 73–101), and Petitioner thereafter filed a reply brief. (*Id.* at 102–119). By Decision and Order dated December 2, 2015, the Second Department denied Petitioner's Article 78 petition. *See Matter of Urena v. Annucci*, 134 A.D.3d 728 (2d Dep't 2015). The Second Department found no due process violations, holding that the "two misbehavior reports [were] sufficiently specific to apprise [Petitioner] of the charges against him so as to enable him to prepare an adequate defense" and that the remaining contentions were without merit. *Id.* at 728. The Second Department further found that substantial evidence existed to support the hearing officer's determination. *Id.* at 728–29.

On March 3, 2016, Petitioner sought leave to appeal the Second Department's decision to the New York State Court of Appeals. (Docket Nos. 9–5 at 120–21, 9–6 at 1–3). On June 2, 2016, the Court of Appeals denied Petitioner leave to

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 79 of 85

Urena v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 10947148

appeal and, on October 25, 2016, denied Petitioner's request for reargument. *See Matter of Urena v. Annucci,* 27 N.Y. 3d 907 (2016) *reconsideration denied,* 28 N.Y.3d 1060 (2016).

**E. Petitioner's Prior Federal Lawsuit**
On December 14, 2016, Petitioner commenced an action in this Court pursuant to 42 U.S.C. § 1983 alleging violations of his Fourteenth Amendment rights by Defendants Anthony Annucci, Sergeant R. Coccuza, Sergeant Malark, Correctional Officer F. Rivers, Correctional Officer Dangelico, Correctional Officer Tromble, Correctional Officer B. Anspach, Superintendent William A. Lee, Hearing Officer B. Levine, and Correctional Lieutenant Wilson. *See Urena v. Annucci,* No. 16–cv–9708 (NSR), 2018 WL 3863454 (S.D.N.Y. Aug. 14, 2018). Specifically, Petitioner alleged that his Fourteenth Amendment due process rights were violated as follows: (1) the record lacked sufficient evidence to support the charges in the misbehavior reports; [2] (2) Petitioner was denied the right to prepare a defense or challenge the evidence against him; (3) the hearing officer failed to make an independent assessment of the informant's credibility; and (4) plaintiff was not present during the search of his cell. *Urena,* 2018 WL3863454 at *5. These grounds mirror those presented in the instant Petition. *Compare Urena,* 2018 WL 3863454 at *2–5 *with* Petition at 6–16.

[2]    The court also noted that while Petitioner did not explicitly challenge his smuggling charge, it was likely encompassed in his first claim, which the court found precluded by the Second Department's decision. *See Urena,* 2018 WL 3863454 at *5 n. 9.

Defendants Annucci, Coccuza, Malark, Rivers, Dangelico, Tromble, Anspach, Lee and Levine (collectively "Moving Defendants") moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint. *Urena,* 2018 WL 3863454 at *1. By Opinion and Order dated August 14, 2018, the Honorable Nelson S. Román granted Moving Defendants' motion in its entirety and dismissed the Complaint. *See, id., generally.* [3] The court found that Petitioner's § 1983 claims were untimely in their entirety and, even had they been timely filed, would have been barred by collateral estoppel. *Id.* at 4–5. In finding that Petitioner's claims were barred by collateral estoppel, the court noted that Petitioner's due process claims were "identical to the issues presented in the [Article 78] Petition and were reviewed and necessarily decided by the Second Department." *Id.* Specifically, the court noted that the Second Department's

determination precluded Petitioner's violations of due process on the "basis that he was denied evidence and that the hearing officer should have assessed the credibility of the informant" as well as his claims that he should have been present during the search of his cell and that the evidence was insufficient to support the charged violations. *Id.* at 5–6.

[3]    Defendant Wilson was not served with the Complaint until after the Moving Defendants already began briefing the motion to dismiss. However, upon being served, he also moved to dismiss, which the court granted for the same reasons set forth in the Opinion and Order. *Compare Urena v. Winston,* No. 16-cv-9708 (NSR), 2018 WL 5113954 (S.D.N.Y. Oct. 19, 2018) *with Urena v. Annucci,* No. 16–cv–9708 (NSR), 2018 WL 3863454 (S.D.N.Y. Aug. 14, 2018).

**F. Petitioner's Prior Habeas Petition Challenging His Conviction**
 **\*4** On February 28, 2011, Petitioner filed a writ of habeas corpus challenging his April 26, 2001 conviction and sentence. *See Urena v. Lee,* No. 11 Civ. 1595 (PAC)(DF), 2011 WL 8955841 (S.D.N.Y. Dec. 9, 2011) (*adopted by* 2012 WL 3871354 (S.D.N.Y. Sept. 5, 2012)). On December 9, 2011, the Court denied the Petition as untimely. *See Urena,* 2011 WL 8955841 at *6.

**G. Petitioner's Instant Federal Habeas Corpus Proceeding**
Petitioner filed the instant petition for writ of habeas corpus on April 10, 2017. (Docket No. 1 at 21). On July 20, 2017, the state opposed the Petition. (Docket No. 9). To date, Petitioner has not filed any reply memorandum of law in further support of the Petition. (Docket Sheet, *generally*).

**II. APPLICABLE LAW**
"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter,* 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state court criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh,* No.

Case 9:21-cv-00473-MAD-TWD    Document 38    Filed 05/08/24    Page 80 of 85

Urena v. Annucci, Not Reported in Fed. Supp. (2019)
2019 WL 10947148

10 Civ. 4160 (ER) (PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013). [4]

> [4]    In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other cases, *infra*, that are unpublished or only available by electronic database, accompany this Report and Recommendation and shall be simultaneously delivered to *pro se* Petitioner.

It is well-established in this Circuit that challenges to the validity of prison administrative determinations and penalties that affect the fact or duration of a prisoner's confinement may be properly brought pursuant to 28 U.S.C. § 2254. *See Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973)). By contrast, where a petitioner is challenging actions that affect solely the *conditions* of his confinement, not the *fact* or *duration*, such claims are properly brought pursuant to 42 U.S.C. § 1983. *See Homen v. Hasty*, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002). To be clear, "any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999).

The Supreme Court in *Muhammad v. Close*, 540 U.S. 749 (2004), explained the distinction between cases challenging confinement versus those challenging duration, holding that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad*, 540 U.S. at 750 (internal citations omitted). In circumstances where a petition presents a "mixed case" involving both challenges to the conditions and duration of confinement, the Second Circuit has instructed that a petitioner may proceed with his § 1983 claim only "if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement." *Peralta*, 467 F.3d at 104.

## III. DISCUSSION

**\*5**  Construing the Petition broadly, [5] the Court determines that Petitioner moves to have his conviction and judgment following the prison disciplinary proceedings vacated and his record expunged. (Petition at 21). The Petition presents five separate grounds in support of this relief: (1) the evidence presented during his disciplinary hearing fails to support the charges; (2) Petitioner was denied his "right to prepare a defense" and to challenge the evidence against him; (3) Petitioner's due process rights were violated when he was charged with and found guilty of smuggling; (4) the hearing officer failed to make an independent assessment of the informant's credibility; and (5) Petitioner was denied due process when he was not permitted to be present during the search of his prison cell. (Petition at 8–16). For the reasons set forth below, the Petition fails to raise a cognizable issue for federal habeas review.

> [5]    "Because [Petitioner] is proceeding *pro se*, his Petition must be read liberally." *Williams v. Breslin*, 274 F. Supp. 2d 421, 425 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

The Petition appears to present both issues that relate to the conditions and to the fact or duration of Petitioner's confinement. (Petition, *generally*). Specifically, among other penalties received, Petitioner lost eight months of good time credit. (Petition at 2; Docket No. 9-3 at 31). Generally, a loss of good time credits affects the fact or duration of a prisoner's term, and thus presents a cognizable issue for federal habeas review. *Peralta*, 467 F.3d at 102. However, because Petitioner is serving a prison sentence with a maximum term of life, he is not eligible to earn good time credit. *See People v. Urena*, 35 A.D. 3d 296 (1st Dep't 2006) (*lv. denied*, 8 N.Y.2d 885 (2007)); *see also* N.Y. Corr. Law § 803(1)(a). New York Correction Law § 803(1)(a), in relevant part, states:

> Every person confined in an institution of the department or a facility in the department of mental hygiene serving an indeterminate or determinate sentence of imprisonment, *except a person serving a sentence with a maximum term of life imprisonment*, may receive time allowance against the term or maximum term of his sentence imposed by the court.

N.Y. Corr. Law § 803(1)(a) (emphasis added). Based on Petitioner's ineligibility to earn good time credit, any loss suffered by Petitioner "is meaningless." *Gomez v. Kaplan*,

Case 9:21-cv-00473-MAD-TWD   Document 38   Filed 05/08/24   Page 81 of 85

Urena v. Annucci, Not Reported in Fed. Supp. (2019)
2019 WL 10947148

No. 94 Civ. 3292 (CSH), 2000 WL 1458804 at *12 (S.D.N.Y. Sept. 29, 2000). Thus, "[s]ince Petitioner was not eligible to receive good time credit in the first place, he cannot now challenge the hearing officer's decision to take away good time credit." *Colon v. Superintendent*, No. 9:12–CV–321 (MAD/ATB), 2013 WL 1785531 at *4 (N.D.N.Y. Apr. 25, 2013); *see also Parra v. Fischer*, No. 11–CV–6518 (MAT), 2012 WL 3069952 at *2-3 (W.D.N.Y. July 27, 2012) (finding petitioner's challenge to a hearing officer's recommended loss of good time credit not cognizable under 28 U.S.C. § 2254 where petitioner was serving a life sentence and not eligible to earn good time credit). Accordingly, because Petitioner's sentence renders any challenge to his loss of good time credit effectively meaningless and by definition incapable of altering the duration of his confinement, this does not present a cognizable issue for federal habeas review under 28 U.S.C. § 2254.

In addition to the lost good time credits, HO Levine also recommended that Petitioner be reassigned to SHU and lose telephone, commissary, and package privileges. (Docket No. 9–3 at 31–32). Given that the length of Petitioner's confinement is fixed – thereby nullifying any cognizable challenge to his lost good time credits – the Petition effectively " 'becomes a pure conditions of confinement case by default,' [rendering it] actionable, if at all, under 42 U.S.C. § 1983." *Parra*, 2012 WL 3069952 at *3 (quoting *Gomez*, 2000 WL 1458804 at *12). [6] As the only remaining challenges are the loss of privileges (Petition at 6–16), these are not properly brought in a habeas corpus petition and would be more appropriately presented in a § 1983 action. *See Muhammad*, 540 U.S. at 750; *see also Homen*, 229 F. Supp. 2d at 295; *Bloomer v. Costello*, No. 00 Civ. 5691 (GEL), 2001 WL 62864 at *1 (S.D.N.Y. Jan. 24, 2001) (prisoner's denial of adequate medical and dental assistance are not cognizable on habeas corpus).

[6]     Although federal prisoners may challenge their conditions of confinement under § 2241, Petitioner cannot because he is confined to a New York state prison. *See Burns*, 2019 WL 1900344 at *2 (citing *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008)); (Petition at 2).

*6 In similar circumstances, some courts in this Circuit have converted writs of habeas corpus that raise issues pertaining to conditions of confinement, as opposed to duration, into § 1983 actions. *See, e.g.*, *Burns v. Orange County Supreme Court*, 19-CV-2247 (CM), 2019 WL 1900344 at *1 (S.D.N.Y.

Apr. 29, 2019) (converting a § 2241 petition alleging that petitioner was forcibly medicated to a § 1983 action alleging that his rights under the Due Process Clause of the Fourteenth Amendment were violated). Other courts have declined to do so, especially where a separate § 1983 action is pending. *See, e.g.*, *Booker v. Chappius*, No. 16-CV-446 (LJV), 2016 WL 8668511 at *2 (W.D.N.Y. Nov. 18, 2016) (declining to convert habeas petition to § 1983 action where the petitioner had a separate § 1983 action pending in another federal district court); *cf.*, *Ford v. Krusen*, No. 9:06–CV–890 (FJS/DEP), 2008 WL 2073942 at *1–2 (N.D.N.Y. May 14, 2008) (declining to recharacterize a habeas petition as a § 1983 action where petitioner was solely challenging his placement in SHU, but permitting plaintiff to file an amended complaint asserting § 1983 claims).

Here, Petitioner previously brought a § 1983 lawsuit in this court that was dismissed in its entirety. *See, generally Urena v. Annucci*, 2018 WL 3863454 (S.D.N.Y. Aug. 14, 2018). [7] As discussed *supra* Section I.E., Petitioner's prior § 1983 action presented alleged violations of Petitioner's Fourteenth Amendment due process rights that are virtually identical to those asserted in the instant habeas Petition. (*Compare Urena*, 2018 WL 3863454 at *2 *with* Petition at 6–16). Thus, similar to the petitioner in *Booker* who had a pending § 1983 action arising out of the same circumstances as the petition, Petitioner herein brought a separate, but similar, § 1983 action, albeit one that has already been dismissed. *Booker*, 2016 WL 8668511 at 2. Thus, given the court's dismissal of Petitioner's § 1983 action, this Court respectfully recommends not converting the instant habeas Petition into what would effectively resemble a second, virtually identical, § 1983 action. *See Urena*, 2018 WL 3863454. Moreover, the Court notes that even if Petitioner's remaining cognizable claims were converted into a § 1983 action, this Court would respectfully recommend arriving at the same conclusion as Your Honor did in Petitioner's previous § 1983 action. *See Urena v. Annucci*, 2018 WL 3863454 (S.D.N.Y. Aug. 14, 2018); *see also Urena v. Winston*, 2018 WL 5113954 (S.D.N.Y. Oct. 19, 2018).

[7]     The court also dismissed Petitioner's § 1983 lawsuit against Defendant Wilson, who was served later than the other Defendants and moved solely on his own behalf. *See Urena v. Winston*, No. 16-cv-9708 (NSR), 2018 WL 5113954 (S.D.N.Y. Oct. 19, 2018).

2019 WL 10947148

Accordingly, the Court respectfully recommends that the Petition be denied in its entirety because it fails to present cognizable grounds for habeas corpus review.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be denied in its entirety. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The Clerk of Court is requested to mail a copy of this Report and Recommendation to the *pro se* Petitioner.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections. If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d). Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

**\*7** Requests for extensions of time to file objections must be made to the Honorable Nelson S. Román and not to the undersigned. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 10947148

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.  6

Urena v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 6275020

2020 WL 6275020
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Christian URENA, Petitioner,

v.

Commissioner Anthony ANNUCCI, New
York State Department of Corrections &
Community Supervision, Respondent.

17-cv-2835 (NSR) (JCM)
|
Signed 10/23/2020

**Attorneys and Law Firms**

Christian Urena, Fallsburg, NY, pro se.

Michelle Elaine Maerov, New York State Attorney General's
Office, New York, NY, for Respondent.

ORDER ADOPTING REPORT
AND RECOMMENDATION

NELSON S. ROMÁN, United States District Judge:

 **\*1** Christian Urena ("Petitioner"), proceeding *pro se*, seeks
a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1,
Petition.) Petitioner does not seek to challenge his conviction,
sentence or effectiveness of his legal representation which
resulted in his detention. Rather, seeks to challenge penalties
incurred following a disciplinary hearing which occurred
during his confinement at Green Haven Correctional Facility.
*Id.* Now pending before the Court is a Report and
Recommendation ("R & R"), dated September 25, 2020,
issued by Magistrate Judge Judith C. McCarthy ("MJ
McCarthy"), pursuant to 28 U.S.C. § 636(b) and Federal Rule
of Civil Procedure 72(b), recommending that the petition be
denied in its entirety. (ECF No. 16.) Petitioner has filed no
objections to the R & R. For the following reasons, the Court
adopts the R & R, and the petition is DENIED.

BACKGROUND

The Court presumes familiarity with the factual and
procedural background of this case, including the underlying
criminal proceedings and Petitioner's appellate challenges to

his conviction. Further details can be found in the R & R,
which this Court adopts.

Petitioner was convicted following a jury trial on April 26,
2001, in N.Y.S. Supreme Court, Bronx County, of second
degree murder, attempted second degree murder, and first
degree assault. See *People v. Urena*, 35 A.D. 3d 296 (1st Dept.
2006). Petitioner was sentenced to consecutive terms of 25
years to life and 12 ½ to 25 years, as well as a concurrent term
of 10 to 20 years, respectively. *Id.* Petitioner sought leave to
appeal from the New York State Court of Appeals, but was
denied. *People v. Urena*, 8 N.Y.3d 885 (2007).

During his detention, Petitioner was charged with possession
of razor blades and gang material following a search of his
cell. Petitioner received two separate misbehavior reports
which resulted in disciplinary charges and a hearing. The
hearing was conducted by Hearing Officer Bruce Levine
("HO Levine"). Petitioner was assisted by Assistant B.
Silverio. Petitioner requested and was provided certain
documents. Petitioner requested that three inmates testify
on his behalf, but all three refused. All three submitted
Refusal to Testify forms, dated November 6, 2012, wherein
they indicated they knew nothing about the incident. Upon
completion of the hearing, HO Levine found Petitioner guilty
on all charges and imposed a penalty of eight months in
Special Housing Unit ("SHU") confinement, a loss of eight
months of good time credit, as well as loss of package,
commissary, and phone privileges for the same period of time.
Petitioner appealed his Tier III hearing and penalty to the
New York State Department of Corrections and Community
Supervisions ("DOCCS"). On February 19, 2013, his appeal
was denied, and the penalty affirmed.

STANDARDS OF REVIEW

*Habeas Petition Review*

"Habeas review is an extraordinary remedy." *Bousley v.
United States*, 523 U.S. 614, 621 (1998). When a claim has
been adjudicated on the merits in a state court proceeding,
a prisoner seeking habeas relief must establish that the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or "was based
on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding." 28 U.S.C.
§ 2254(d)(1), (d)(2); *Cousin v. Bennett*, 511 F.3d 334, 337
(2d Cir. 2008). A state court's findings of fact are presumed

2020 WL 6275020

correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).

### *Magistrate Judge's Report and Recommendation*

**\*2** A magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings or recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b); *accord* Fed. R. Civ. P. 72(b)(2), (3). However, " '[t]o accept the report and recommendation of a magistrate, to which *no timely objection* has been made, a district court need only satisfy itself that there is *no clear error* on the face of the record.' " *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (emphasis added) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); *accord Feehan v. Feehan*, No. 09 Civ. 7016 (DAB), 2011 WL 497776, at \*1 (S.D.N.Y. Feb. 10, 2011)); *see also* Fed. R. Civ. P. 72 advisory committee note (1983 Addition, Subdivision (b)) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

### DISCUSSION

Here, the R & R was issued on September 25, 2019, and Petitioner had fourteen days from receipt of the R & R to file an objection(s). *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). To date no objections have been filed. Since no objection was filed, the Court reviews MJ McCarthy's R & R for clear error and has found none.

Construing the Petition broadly, Petitioner seeks to challenge his conviction and judgment following the prison disciplinary proceeding. Petitioner asserted five separate grounds in support of the relief requested, namely: (1) the evidence presented during his disciplinary hearing was insufficient to support the charges; (2) Petitioner was denied his "right to prepare a defense" and to challenge the evidence against him; (3) Petitioner's due process rights were violated when he was charged with and found guilty of smuggling unlawful items; (4) the hearing officer failed to make an independent assessment of the informant's credibility, which formed the basis for the search of his cell; and (5) Petitioner was denied due process when he was not permitted to be present during the search of his prison cell. (Petition at 8–16). As outlined in the R & R by MJ McCarthy, Petitioner's claims lack merit. MJ McCarthy determined that given Petitioner's sentence, any loss suffered by the penalty imposed, loss of good time credit, was meaningless. Petitioner's claim(s) involving loss of privilege are more appropriately presented in a 42 U.S.C. § 1983 action. Petitioner previously brought a 42 U.S.C. § 1983 lawsuit in this court, alleging similar claims, that was dismissed in its entirety. *See Urena v. Annucci*, No. 16-CV-9708 (NSR), 2018 WL 3863454, at \*6 (S.D.N.Y. Aug. 14, 2018).

### CONCLUSION

**\*3** For these reasons, the Court adopts MJ McCarthy's R & R in its entirety. The petition for a writ of habeas corpus is therefore denied. The Clerk of Court is directed to enter judgment accordingly and close this case.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 225, 259–60 (2d Cir. 1997). The Court certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the

2020 WL 6275020

purposes of an appeal. *See Coppedge v. United States*, 369
U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6275020

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.